UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                           :
PAVLE ZIVKOVIC, *on behalf of himself and others* : 
*similarly situated*, : 
                                           :
                               Plaintiff, :
                                           :
                  -against - :
                                           :
LAURA CHRISTY LLC d/b/a VALBELLA, :
LAURA CHRISTY MIDTOWN LLC, DAVID :
GHATANFARD, and GENCO LUCA, :
                                           :
                             Defendants. :
------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  11/30/2018

1:17-cv-553-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

The Valbella restaurants are trendy, upscale eateries with three locations in New York and Connecticut.  Plaintiffs in this action are former and current "front-of-the-house" employees of the Valbella restaurants in the Meatpacking District and Midtown neighborhood of Manhattan. Plaintiffs commenced this wage and hour litigation against Defendants Laura Christy LLC d/b/a Valbella, Laura Christy Midtown LLC, David Ghatanfard, and Genco Luca for alleged violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Before the Court is Plaintiffs' motion for class certification with regard to the NYLL claims.  Concurrently with their motion for class certification, Plaintiffs have filed a motion for partial summary judgment on the issue of whether Laura Christy LLC and Laura Christy Midtown LLC are a single, integrated enterprise for FLSA and NYLL purposes.  Recognizing that the resolution of that question might impact class certification, Plaintiffs request that the Court instead certify two subclasses for the purposes of this motion, one for each Valbella location.  Because Plaintiffs have met all of Rule 23's class certification requirements for each of the subclasses, their motion for class certification is

granted.

## II.    BACKGROUND

This matter arises from alleged wage and hour violations of federal and New York state employment laws.  Plaintiffs, former and current employees of the Valbella Meatpacking and Valbella Midtown restaurants, assert that Defendants maintained company-wide policies that resulted in minimum wage and overtime violations of the FLSA and minimum wage, overtime, spread of hours, and wage notice violations of the NYLL.  Compl. (Dkt. No. 1) at 9–14.  Specifically, Plaintiffs claim Defendants paid their employees the "tip credit" minimum wage but that they were not entitled to do so because they did not give employees the required notice; that Defendants failed to pay employees overtime rates and the spread of hours premium for days that employees worked double shifts; that Defendants did not provide employees with the pay rate notices required by law; and that the paystubs utilized by Defendants did not include all hours worked, overtime rates, or mention tip credits.  *Id.* at ¶¶ 34–39.

All members of the proposed class were employed at one or both of the Valbella restaurants as tipped, "front-of-the-house" employees, including captains, servers, bussers, runners, bartenders and barbacks (the "Tipped Employees").  Pls.' Memo. at 2, 16–17.  Pavle Zivkovic, the named plaintiff, was an employee of both restaurants.  Pls.' Memo iso Mot. for Class Cert. (Dkt. No. 19) ("Pls.' Memo") at 18; Zivkovic Decl. iso Mot. for Class Cert. (Dkt. No. 120) ("Zivkovic Decl.") ¶¶ 1–2.  Zivkovic alone raises two additional claims:  a claim that he was discriminated against on the basis of his national origin in violation of the New York City Human Rights Law, and a claim that Luca committed common law battery against him and that the remaining Defendants are liable under the doctrine of respondeat superior.  Compl. ¶¶ 78–92.

Laura Christy LLC operates the Valbella location in the Meatpacking District of Manhattan ("Valbella Meatpacking").  *Id.* at ¶ 3.  Laura Christy Midtown LLC operates the Valbella location in

Midtown Manhattan ("Valbella Midtown").  Compl. at ¶ 4.  David Ghatanfard is the owner and

operator of each of the Laura Christy defendants and the Valbella location managed by each.  *Id.* at ¶

6.  Genco Luca is the executive chef at Valbella Midtown.  *Id.* at ¶ 10.

 Defendants Laura Christy Midtown, Ghatanfard, and Luca have raised a counterclaim solely

against Zivkovic.  Defs. Laura Christy Midtown, Ghatanfard, and Luca's Ans. Counterclaim, and

Aff. Defenses (Dkt. No. 13) ("Midtown, Ghatanfard, and Luca Ans.") at 13–14.  They allege that

Zivkovic engaged in fraudulent conduct involving "various unauthorized transactions" in which he

"zeroed out" checks that had been paid in cash and kept the money for himself to the detriment of

Valbella Midtown and his fellow Tipped Employees.  *Id.*  Laura Christy Midtown, Ghatanfard, and

Luca assert that Zivkovic was unjustly enriched by those transactions and request that his profits be

disgorged and returned to Valbella Midtown.  *Id.*

 Concurrently with their motion for class certification, Plaintiffs filed a motion for partial

summary judgment on the issue of whether Laura Christy LLC and Laura Christy Midtown LLC are

a single, integrated enterprise for the purpose of analyzing their claims under the FLSA and NYLL.

Pls.' Mot. for Summ. J. (Dkt. No. 114).  Recognizing that the resolution of that question might

impact class certification, Plaintiffs request that the Court certify two subclasses for the purposes of

this motion, one for each Valbella location.[1]  Pls.' Memo. iso Mot. to Cert. Class (Dkt. No. 119)

("Pls.' Memo.") at 3.  The proposed subclasses are defined as follows: the "Valbella Meatpacking

Subclass" consists of "all employees who worked as captains, servers, runners, bussers, and

bartenders at Laura Christy LLC ('Valbella Meatpacking') from January 25, 2011 through the

present";  the "Valbella Midtown Subclass" consists of "all employees who worked as captains,

---

[1] The Court denied Plaintiff's motion for partial summary judgment on the issue on November 20, 2018, Dkt. No. 146. As a result, the question of whether Defendants are joint employees will be resolved at trial.

servers, runners, bussers, and bartenders at Laura Christy Midtown from January 25, 2011 through the present." Pls.' Memo. at 3

## III.    PROCEDURAL HISTORY

On January 25, 2017, Pavle Zivkovic brought this lawsuit against Defendants Laura Christy LLC, Laura Christy Midtown LLC, David Ghatanfard, and Genco Luca.  Compl.  Defendant Laura Christy LLC answered the complaint on March 30, 2017.  Dkt. No. 11.  On the same day, Defendants Laura Christy Midtown LLC, Ghatanfard, and Luca answered the complaint and asserted a counterclaim against Zivkovic.  Midtown, Ghatanfard, and Luca Ans.  On June 20, 2018, Defendant Laura Christy amended its answer to include an affirmative defense based on a recent decision by New York's Appellate Division First Department regarding employer liability for wage notice requirements.  Dkt. No. 101 ("Meatpacking's Am. Ans."); *see* Memo. iso Defs.' Mot. to Am. Ans. (Dkt. No. 88).  The following day, Defendants Laura Christy Midtown LLC, Ghatanfard, and Luca amended their answer for the same reason.  Dkt. No. 103 ("Midtown, Ghatanfard, and Luca's Am. Ans.").

On August 10, 2018, Plaintiffs filed a motion for partial summary judgment on the issue of whether Defendants Laura Christy LLC and Laura Christy Midtown LLC are a single integrated enterprise under the FLSA and NYLL.  Pls.' Mot. for Summ. J.  On September 17, 2018, Defendants filed their opposition.  Dkt. No. 135.  On October 10, 2018, Plaintiffs filed their reply. Dkt. No. 139.  The motion was denied on November 20, 2018, Dkt. No. 146.

On August 10, 2018, concurrently with their motion for partial summary judgment, Plaintiff filed this motion, seeking class certification for their NYLL claims.  Dkt. No. 118.  Defendants filed their opposition on September 14, 2018.  Dkt. No. 130.  Plaintiffs' filed their reply on October 10, 2018.  Dkt. No. 140.

## IV.    LEGAL STANDARD

"A plaintiff seeking certification of a Rule 23(b)(3) class action bears the burden of satisfying

the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of

representation—as well as Rule 23(b)(3)'s requirements:  (1) that 'the questions of law or fact

common to class members predominate over any questions affecting only individual members' (the

'predominance' requirement); and (2) that 'a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy' (the 'superiority' requirement)."  *In re Petrobras Sec.*,

862 F.3d 250, 260 (2d Cir. 2017) (quoting Fed. R. Civ. P. 23(a) and (b)(3)).  In addition to the

express requirements of Rule 23, the Second Circuit has recognized an implied requirement that the

class be ascertainable, that is, "defined using objective criteria that establish a membership with

definite boundaries."  *Id.* at 264.

"Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 350 (2011).  "The party seeking class certification bears the burden of establishing by a

preponderance of the evidence that each of Rule 23's requirements have been met."  *Johnson v. Nextel*

*Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015); *see also In re Am. Int'l. Grp., Inc. Sec. Litig.*, 689 F.3d

229, 237–38 (2d Cir. 2012) ("The party seeking class certification must affirmatively demonstrate . . .

compliance with the Rule, and a district court may only certify a class if it is satisfied, after a rigorous

analysis, that the requirements of Rule 23 are met." (internal quotation marks and citation omitted)).

"The ultimate question is not whether the plaintiffs have stated a cause of action or will prevail on

the merits but whether they have met the requirements of Rule 23."  *Gortat v. Capala Bros.*, 257

F.R.D. 353, 362 (E.D.N.Y. 2009) (citing *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194,

203 (E.D.N.Y. 2005)).

The district court is afforded broad discretion in class certification questions because it is

often in the best position to assess the propriety of the class action.  *Sumitomo Copper Litig. v. Credit*

*Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001).  However, the Second Circuit has emphasized

that Rule 23 should be given "liberal rather than restrictive construction," *Marisol A. v. Giuliani*, 126

F.3d 372, 377 (2d Cir. 1997) (quoting *Sharif ex rel. Salahuddin v. New York State Educ. Dep't.*, 127

F.R.D. 84, 87 (S.D.N.Y. 1989)), and "it seems beyond peradventure that the Second Circuit's general

preference is for granting rather than denying class certification." *Gortat*, 257 F.R.D. at 361.  "[I]f

there is to be an error made, let it be in favor and not against the maintenance of the class action, for

it is always subject to modification should later developments during the course of the trial so

require." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 340 (S.D.N.Y. 2015)

(quoting *Green v. Wolf Corp.*, 406 F.2d 291, 298 & n. 10 (2d Cir. 1968));

As such, the court has the ability to "alter or modify the class, create subclasses, and

decertify the class whenever warranted." *Sumitomo*, 262 F.3d at 139; *see also* Fed. R. Civ. P.

23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before

final judgment.").  In order to "implement management strategies tailored to the particularities of

each case," "district courts can . . . bifurcate the proceedings to home in on threshold class-wide

inquiries; sever claims not properly adjudicated on a class-wide basis to isolate key common issues;

or certify subclasses that separate class members into smaller, more homogenous groups defined by

common legal or factual questions." *Petrobras*, 862 F.3d at 274 (citing Fed. R. Civ. P. 23(c)(4), (c)(5));

*see also Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) ("[U]nder Rule 23(c)(1), courts are

'required to reassess their class rulings as the case develops.'" (quoting *Barnes v. Am. Tobacco Co.*, 161

F.3d 127, 140 (3d Cir. 1998))).  The same class certification requirements apply to the certification of

subclasses:  "a court must assure itself that each subclass independently meets the requirements of

Rule 23." *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 362 (S.D.N.Y. 2014) (citations omitted); *see*

Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each

treated as a class under this rule.").

6

## V.      DISCUSSION

### A.   The Proposed Class Satisfies the Numerosity Requirement

To satisfy Rule 23(a)(1)'s numerosity requirement, Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  In this Circuit, numerosity is presumed when the putative class has at least forty members.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Though plaintiffs are not required to present a precise calculation of the number of class members, they must show some evidence that provides the Court with a reasonable estimate. *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004).

In this matter, Defendants have produced a list of Tipped Employees for each Valbella location for the time period relevant to the claims.  In reviewing these lists, it is clear there are over forty potential class members in each of Plaintiffs' proposed subclasses.  The Valbella Meatpacking list identifies more than 90 potential class members.  Ex. N to Nussbaum Decl. iso Pls.' Mot. to Cert. Class. (Dkt. No. 125) ("Valbella Meatpacking Class List").  Similarly, there are more than 100 potential class members on the Valbella Midtown list.  Ex. O to Nussbaum Decl. iso Pls.' Mot. to Cert. Class. (Dkt. No. 125) ("Valbella Midtown Class List").  Thus, the numerosity requirement is satisfied for each subclass.

### B.   The Proposed Class Satisfies the Commonality Requirement

Rule 23(a)(2) requires there to be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  A question of law or fact is common to the class if it is "capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. 338, 350 (2011).  "The claims for relief need not be identical for them to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson*, 780

7

F.3d at 137 (citing Joseph M. McLaughlin, McLaughlin on Class Actions § 4:7 (11th ed. 2014)).

"Where the same conduct or practice by the same defendant gives rise to the same kind of claims

from all class members, there is a common question." *Id.* (quoting *Suchanek v. Sturm Foods, Inc.*, 764

F.3d 750, 756 (7th Cir. 2014)).  "In wage cases, the commonality requirement is usually satisfied

where the plaintiffs allege that defendants had a common policy or practice of unlawful labor

practices." *Spencer v. No Parking Today, Inc.*, No. 12-cv-6323 (ALC)(AJP), 2013 WL 1040052, at *15

(S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted* No. 12-cv-6323, 2013 WL 2473039

(S.D.N.Y. June 7, 2013) (citing *Poplawski v. Metroplex on the Atl., LLC*, No. 11-cv-3765, 2012 WL

1107711, at *7 (E.D.N.Y. Apr. 2, 2012)).

    Here, Plaintiffs raise common questions relating to the Defendants' payroll practices,

overtime policy, and compliance with minimum wage requirements.  The issues here—whether

Defendants illegally took the tip credit, whether the class members were paid spread of hours pay

when entitled to it, and whether the class members received wage notices and statements that were

in compliance with the law—will produce answers that apply to all plaintiffs within each subclass

and drive the resolution of this litigation.  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234,

252 (2d Cir. 2011) (affirming class certification where the class members' claims "all derive[d] from

the same compensation policies and tipping policies" and "all [arose] under the same statutes and

regulations."); *see also Canelas v. World Pizza, Inc.*, No. 14-cv-7748 (ER), 2017 WL 1233998, at *5

(S.D.N.Y. March 31, 2017) (finding commonality where the class members' claims arose from the

same wage and hour policies).

    In their opposition to Plaintiffs' motion for class certification, Defendants rely heavily on the

landmark case of *Wal-Mart Stores, Inc. v. Dukes*, in which the Supreme Court reversed the class

certification of 1.5 million former Wal-Mart employees because they had failed to meet the

commonality requirement.  *Dukes*, 564 U.S. 338.  In *Dukes*, the plaintiffs brought the action on

behalf of a class comprised of female employees who had faced gender discrimination at thousands of Wal-Mart locations across the nation, alleging that the "corporate culture" made each woman "the victim of one common discriminatory practice." *Dukes*, 564 U.S. at 345.  The Supreme Court held that the *Dukes* class failed to meet the commonality requirement because there were "literally millions of employment decisions" made by Wal-Mart managers across 50 states, and the class did not demonstrate that one common policy had resulted in the disparate treatment alleged.  *Id.* Defendants assert that Plaintiffs here, like those in *Dukes*, have failed to identify a company-wide policy or practice, primarily because the Valbella locations are managed separately by several managers.  Defendants' Opp. to Mot. to Cert. Class (Dkt. No. 135) ("Defs.' Opp.") at 5.

The present case is markedly different from *Dukes*.  Here, there are only two locations at issue, which notably shared many of the same employees.  More importantly, Ghatanfard, owner and operator of the two Valbella locations at issue, has admitted that the employees of each restaurant were all subject to the same management and time policies of that location.  See Ex. C to Nussbaum Decl. iso Pls.' Mot. to Cert. Class. (Dkt. No. 125) ("Ghatanfard Dep.") 133:6–25; 134:2– 135:7.  Whether Laura Christy LLC and Laura Christy Midtown LLC operated as a single entity is a matter reserved for trial, but, as Plaintiffs have suggested, this issue does not preclude class certification.  The use of separate subclasses here for each Valbella location will address any differences in their management or policies.

Furthermore, Defendants' position that commonality is not met here because there exist individual questions regarding each employee's schedules and compensation is incorrect.  *See* Defs.' Opp. at 5.  Those issues should be addressed with respect to damages and do not defeat class certification.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001).  The fact that the amount of damages class members can recover—if any—may differ does not bear weight in the commonality inquiry.  *Vargas v. Howard,* 324 F.R.D. 319, 326 (S.D.N.Y. 2018) ("'[T]he

differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual may be entitled if and when liability is found,' and not whether there are common questions of law and fact." (quoting *Ansoumana*, 201 F.R.D. at 86)).

Because the record demonstrates that the subclass members' claims are derived from the same compensation policies and arise under the same laws, the Court concludes that the central questions driving the resolution of this litigation will raise common answers for each subclass member. Therefore, both proposed subclasses satisfy the commonality requirement.

C. The Proposed Class Satisfies the Typicality Requirement

Pursuant to Rule 23(a)(3), Plaintiffs must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol*, 126 F.3d at 376 (citing *In re Drexel Burnham Lambert Grp.*, Inc., 960 F.2d 285, 291 (2d Cir. 1992)); *see also Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 654 (S.D.N.Y. 2013) (finding typicality satisfied where the representative plaintiff's claims were "clearly based on the same legal theory and [arose] from the same practice or course of conduct as the other class members") (quoting *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998) (internal quotation marks omitted)). "[P]laintiff's claim and the class claims must be so interrelated that the interests of the class members will be fairly and adequately protected in their absence," though they need not be identical for typicality to be satisfied. *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008) (citing *Marisol*, 126 F.3d at 376) (internal quotation marks and punctuation omitted). "Rather than focusing on the precise nature of plaintiffs' injuries, the typicality requirement may be satisfied where 'injuries derive

from a unitary course of conduct by a single system.'" *Floyd v. City of New York*, 283 F.R.D. 153, 161 (S.D.N.Y. 2013) (quoting *Marisol*, 126 F.3d at 377).

In the Second Circuit, analysis of Rule 23(a)(3)'s typicality requirement often converges with that of commonality. *See Marisol*, 126 F.3d at 376 (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). Therefore, typicality, like commonality, has been found where plaintiff's claims arise from the same unlawful practices or legal theories. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (finding the commonality and typicality requirements to be met where class members were subject to the same employment policies).

Here, for substantially the same reasons that the commonality requirement is satisfied, the Court finds that Zivkovic's claims and defenses are typical of the class. As discussed above, the members of the putative subclasses were subject to the same policies regarding tip credits, overtime, spread of hours pay, and wage notices and statements. Zivkovic worked as a Tipped Employee at both Valbella locations within the defined class period, and therefore has claims common to both subclasses. *See* Zivkovic Decl. ¶¶ 1–2. Zivkovic's claims, like the claims of the absent class members, arise from Defendants' policies that governed the ways in which Tipped Employees were paid for their labor. *See* Zivkovic Decl. ¶¶ 3–6. Zivkovic, like the absent class members, asserts that Defendants were not entitled to take the tip credit, that Defendants failed to pay spread of hours pay, and that Defendants did not meet the wage notice and pay stub requirements under the NYLL. *Id.* "Their claims, therefore, arise from the same course of events, and they will make similar legal arguments to prove Defendant's liability—the crux of the typicality analysis." *LoCurto v. AT&T Mobility Servs. LLC*, No. 13-cv-4303(ATKNF), 2018 WL 4519201, at *14 (S.D.N.Y. Sept. 20, 2018).

As with commonality, small variances in the employees' hours do not defeat typicality.  *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) (finding typicality satisfied despite "differences in departments, job duties, and [] factual variations in plaintiffs' claims" where all plaintiffs claimed they were denied overtime pay while working for defendant).

Because all employees of Valbella Meatpacking and Valbella Midtown were subject to the same policies at their respective locations, Zivkovic, as an employee of both restaurants, raises claims based on the same allegedly unlawful conduct which are thus typical of the class. Accordingly, the Court finds that each subclass has met the typicality requirement.

D.  The Proposed Class Representatives Satisfy the Adequacy Requirement

Rule 23(a)(4), the adequacy requirement, states that class representatives must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4).  "Adequacy of representation is evaluated in two ways:  (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (citing *Flores v. Anjost Corp.*, 284 F.R.D. 112, 128–29 (S.D.N.Y. 2012)).  With respect to the latter, to satisfy Rule 23(a)(4), "the named plaintiffs must possess the same interests and suffer the same injuries as the class members." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (internal punctuation omitted)).  "Adequacy is twofold:  the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). In evaluating this requirement, courts consider whether the class representatives are familiar with the action and "whether they are of sufficient moral character to represent a class." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011).  In addition, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation,"

certification of the class is not appropriate because the representative cannot act in the best interest of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (internal citation and quotation marks omitted).[2]

Under the conflict of interest inquiry, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (citation omitted). "The conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental, and speculative conflict should be disregarded at the class certification stage." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (citation omitted), *overruled on other grounds by In re IPO*, 471 F.3d 24 (2d Cir. 2006). Courts must "be wary of a defendant's efforts to defeat representation of a class [on] grounds of inadequacy when the effect may be to eliminate any class representation." *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 140 (S.D.N.Y. 2015), *aff'd*, 656 F. App'x 555 (2d Cir. 2016) (*In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 100 (E.D.N.Y. 2012)). However, they should "it is important for a court to thoroughly vet any putative class representative." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968). "[I]f, for some reason it is later determined by the court that the representative Plaintiffs are inadequate, the court could substitute another class plaintiff for the representative plaintiff in question . . . ." *Shahriar*, 659 F.3d at 253 (citing *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck–Medco Managed Care, LLC*, 504 F.3d 229, 241 (2d Cir. 2007).

### 1. Adequacy of Named Plaintiff Pavle Zivkovic

In this action, Zivkovic is the only named plaintiff. He was an employee at both restaurants and was therefore subject to the employment policies of each. Pls.' Memo. at 18; Zivkovic Decl. ¶¶ 1–2. Zivkovic is the only plaintiff whom the Defendants have countersued, alleging that Zivkovic

---

[2] While the Court here addresses whether the availability of unique defenses defeat the adequacy requirement of class certification, the Court notes that "courts routinely consider that argument under the typicality, commonality, and/or the adequacy prongs of Rule 23(a)." *Lapin*, 254 F.R.D. at 179 (collecting cases).

engaged in fraudulent behavior while employed with Valbella Midtown to the detriment of the restaurant and his fellow employees. Midtown, Ghatanfard, and Luca Ans. at 13–14. Specifically, Zivkovic is accused of "zeroing out" checks that were paid in cash and keeping the money for himself. *Id.* In addition, Defendants allege that Zivkovic has material credibility issues because he has a "long disciplinary history" at both Valbella locations and told a Valbella manager he would "take care of him" if the manager helped him with the lawsuit. Defs.' Opp. at 9; *see* Alavian Decl. iso Defs.' Mot. to Cert. Class (Dkt. No. 132) ("Alavian Decl.") ¶ 18. For these reasons, Defendants claim that Zivkovic is an inadequate representative because he lacks credibility and will have to devote substantial time to defending himself from the counterclaim raised by Defendant, creating a conflict of interest. *Id.*

The Court must "be mindful that a mere charge is not proof, and that we ought not encourage the filing of counterclaims which could serve, in some cases, merely as strategic ploys to impede progress of litigation." *Schlick v. Penn-Dixie Cement Corp.*, 551 F.2d 531, 533 (2d Cir. 1977). As Plaintiffs highlight, Defendants have not provided any support for their position that the counterclaim disqualifies Zivkovic from serving as class representative. Pls.' Memo. at 7–8. In their briefing on the issue, Defendants bizarrely cite to their own Answer and Counterclaim rather than to any evidence. *Id.* In the record, a sole affidavit from a former manager of Valbella Midtown asserts that Zivkovic voided orders and ordered complimentary desserts without permission. Alavian Decl. ¶¶ 14–16. Thus, the Court does not believe that the counterclaim, even if founded, would require Zivkovic to "devote considerable time" and effort to rebut the allegation. *Lapin*, 254 F.R.D. at 179.

Furthermore, Defendants here have "fail[ed] to identify anything about plaintiff's defense to the counterclaim that would be inconsistent with the proposed class's interests." *Paguirigan v. Prompt Nursing Employment Agency LLC*, No. 17-cv-1302 (NG) (JO), 2018 WL 4347799, at *6 (E.D.N.Y. Sept. 12, 2018) (further holding that "because the counterclaim is a minor issue in comparison to the

main issues in this case that are common," plaintiff was an adequate representative of the class).  As a result, the existence of this unique counterclaim does not defeat the Court's finding that Zivkovic is an adequate class representative and the Court declines to deny class certification on such speculative grounds.

Defendants' assertions that Zivkovic has "credibility issues" which render him unable to serve as a class representative must also fail.  Even if Defendants' assertions regarding Zivkovic's alleged disciplinary history at the restaurants were supported by record evidence, the assertions do not "touch upon the prosecution of the lawsuit," and have no bearing on whether Defendants failed to comply with tip credit, spread of hours, or wage notice and statement requirements  *See Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 211 (E.D.N.Y. 2015) (internal quotation marks omitted) (noting that a "class representative need not be morally upstanding; rather, he or she must not have damaged his or her credibility regarding those issues that are central to the action"); *see also Gucciardo v. Titanium Constr. Servs., Inc.*, No. 16-cv-1113 (LGS), 2017 WL 3738777, at *5 (S.D.N.Y. Aug. 30, 2017) ("Even if Defendants' assertions regarding Named Plaintiff's indiscretions are true, they do not touch upon the prosecution of the lawsuit, which at its core is about Defendants' alleged policy of failing to pay overtime wages"); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010) ("[T]he inquiry . . . into the representative's personal qualities is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit."); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 372 (S.D.N.Y. 2007) (finding that "the circumstances of [plaintiff's] termination are [not] relevant to whether he was paid overtime wages or less than the minimum wage during the period while he was employed").  The Court is understandably reluctant to disqualify a representative plaintiff because the defendants characterize his story as incredible.

Finally, although Defendants fail to raise this issue in their opposition to Plaintiffs' motion,

the Court does not find that the Zivkovic is subject to unique defenses that would become the focus of the litigation and thereby render him unable to defend the interests of the class.  In order for a unique defense to defeat class certification, "[t]he defendant need not show at the certification stage that the unique defense will prevail, only that it is meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense."  *Lapin*, 254 F.R.D. at 179 (quoting *Hallet v. Li & Fung Ltd.,* No. 95-cv-8917, 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997)).  Moreover, "[t]he rule barring certification of plaintiffs subject to unique defenses is not 'rigidly applied in this Circuit;' in fact, 'a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him [or her] that would not impact other class members."  *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997) (quoting *Langner v. Brown,* No. 95-cv-1981 (LBS), 1996 WL 709757, at *3 (S.D.N.Y. Dec. 10, 1996)).

Accordingly, the Court finds that Zivkovic is an adequate representative to advance the interests of each of the subclasses.

## 2.   Adequacy of Alternative Plaintiffs

The Court similarly finds that the proposed alternative class representatives are equally capable as serving as adequate representatives of the class.  The Class has additionally proposed opt-in plaintiffs Knezevic and Sanchez, who, like Zivkovic, have worked at both locations and can represent both subclasses.[3]  Pls.' Memo. at 18; Knezevic Decl. iso Mot. to Cert. Class (Dkt. No. 122) ("Knezevic Decl.") ¶¶ 1–2; Sanchez Decl. iso Mot. to Cert. Class (Dkt. No. 123) ("Sanchez Decl.") ¶¶ 1–2.  Plaintiff Marin, an employee of the Meatpacking location is prepared to act as a representative for the Meatpacking Subclass and Plaintiff Boyodjan was employed at the Midtown

---

[3] Defendants assert that Knezevic was only employed by Valbella Midtown.  Ghatanfard Decl. iso Defs.' Opp. to Pls.' Mot. to Cert. Class. (Dkt. No. 131) ¶ 22.  Because Knezevic can still serve as a representative for the Midtown Subclass if this is true and the Court finds Zivkovic to be an adequate representative for both subclasses, the Court need not dive further into such claims.

location and is willing to serve as class representative for the Midtown Subclass. Marin Decl. iso Mot. to Cert. Class (Dkt. No. 124) ("Marin Decl.") ¶¶ 1–2; Boyodjan Decl. iso Mot. to Cert. Class (Dkt. No. 121) ("Bojodyan Decl.") ¶¶ 1–2. All four proposed alternative representatives worked as Tipped Employees for Defendants and were subject to the same policies. *See* Boyodjan Decl. ¶¶ 1–2; Knezevic Decl. ¶¶ 1–2; Sanchez Decl. ¶¶ 1–2; Marin Decl. ¶¶ 1–2. All have substantially the same claims against Defendants, and all assert that they were not provided with proper notices regarding tip credits or wages. *See* Boyodjan Decl. ¶¶ 3, 6; Knezevic Decl. ¶¶ 3–4; Sanchez Decl. ¶¶ 3–4; Marin Decl. ¶¶ 3–4. Because they share their claims with absent class members, the Court concludes that these representatives are capable of vigorously pursuing the claims of the subclasses. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class."). In addition, all class representatives have sat for depositions and submitted declarations in support of the motion for class certification, indicating they are familiar with the case and are actively pursuing their claims.

Defendants assert that the alternative class representatives, like Zivkovic, are inadequate due to credibility issues. However, the bases for this argument similarly do not "touch[ ] upon the very prosecution of the lawsuit." *Jane B. by Martin v. New York City Dept. of Social Services,* 117 F.R.D. 64, 71 (S.D.N.Y. 1987). Defendants' claims that the alternate plaintiffs have proffered inconsistent testimony or had performance issues while employed with Defendants are unsubstantiated and cannot unilaterally force the conclusion that these alternate plaintiffs are inadequate. Regardless, the Court has determined that Zivkovic is an adequate representative. The proposed alternative plaintiffs are adequate representatives for the subclasses, though not necessary for Plaintiffs to satisfy this requirement.

3.   <u>Adequacy of Class Counsel</u>

The Court is also required to consider the adequacy of class counsel in its class certification

decision. *Marisol*, 126 F.3d at 378 (2d Cir. 1997)("Rule 23(a)(4) requires that plaintiffs demonstrate

that "class counsel is qualified, experienced, and generally able to conduct the litigation.").  The

Court is satisfied that the attorneys of Joseph & Kirschenbaum LLP have the requisite experience

and qualifications to represent the class.  Josef Nussbaum graduated from law school in 2009 and

joined Joseph & Kirschenbaum in 2011, a firm that deals almost exclusively with employment

litigation including wage and hour suits such as this one.  Nussbaum Decl. iso Mot. to Cert. Class

(Dkt. No. 125) ("Nussbaum Decl.") ¶¶ 20–21.  D. Maimon Kirschenbaum, a named partner of the

firm, has been a practicing attorney for thirteen years and manages the firm's food service wage and

hour department.  Nussbaum Decl. ¶¶ 23–24.  The majority of Mr. Kirschenbaum and Mr.

Nussbaum's dockets are related to class and collective action lawsuits against New York restaurants

for wage and hour violations.  Nussbaum Decl. ¶¶ 22, 25.  Furthermore, the attorneys of Joseph &

Kirschenbaum have substantial experience as lead or co-lead class counsel in wage and hour actions

in this District.  Nussbaum Decl. ¶¶ 20, 26–27.  Defendants do not challenge the adequacy of

Plaintiffs' counsel.  In light of Plaintiffs' counsel's experience, compounded by their efforts in the

case to date, the Court finds that Joseph & Kirschenbaum, LLP can adequately represent the class.

E.   <u>The Proposed Class Satisfies the Predominance Requirement.</u>

In addition to the four prerequisites of Rule 23(a), Plaintiffs must also satisfy the

requirements of Rule 23(b)(3), the first of which is that "the questions of law or fact common to the

class members predominate over any questions affecting only individual members."  Fed. R. Civ. P.

23(b)(3).  The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  As such, the

requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class

member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547–48 (2d Cir. 2010) (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). Although "commonality, typicality, and predominance overlap," *Wynn v. N.Y.C. Hous. Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016), predominance is "even more demanding" than the Rule 23(a) requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Thus, courts are required "to take a 'close look' at whether common questions predominate over individual ones." *Comcast,* 569 U.S. at 33 (quoting *Amchem*, 521 U.S. at 615).

Here, the class's common questions predominate over any individual ones because each subclass member was subject to the same policies as her fellow subclass members and "substantial elements of the claims against [Defendants] may be established by generalized, rather than individualized, proof." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010). Defendants assert that Plaintiffs are unable to meet the predominance requirement because the Valbella Meatpacking and Midtown locations had different policies regarding timekeeping and the procedures changed at each restaurant throughout the relevant time period. Defs.' Opp. at 11–13. Defendants therefore claim that the Court will need to undertake highly individualized analyses for each class member to evaluate the overtime and tip credit violations. *Id.* at 11–12. However, the issues raised by Defendants can be resolved by the Court dividing the Class into subclasses, split by restaurant, as it is doing here. Ghatanfard admitted that the employees of Valbella Midtown who worked during the same time period were all subject to the same policy, paid the same way, participated in the same tip pool, received the same hourly wage, and the same hiring documents. Ghatanfard Dep. 133:6–25. Similarly, the employees of each restaurant all received the same wage stubs, as testified by Valbella Meatpacking's Fed. R. Civ. P. 30(b)(6) witness, Director of Operations Laura DeMarco. Ex. E to Nussbaum Decl. (Dkt. No. 125) ("DeMarco Dep.") 64:15–19. This is

consistent with the testimony of Valbella Meatpacking manager Lindsay Heuschneider, who confirmed that all Tipped Employees were subject to the same payroll and spread of hours practices. Ex. D to Nussbaum Decl. (Dkt. No. 125) ("Heuschneider Dep.") 35:9–24; 139:2–9.

Where plaintiffs' claims arise from a common policy and rely on a common legal theory, the predominance requirement is satisfied because "[t]he need for individualized determinations of the putative class members' damages does not, without more, preclude class certifications." *Romero v. La Revise Assocs., LLC,* 58 F. Supp. 3d 411, 419 (S.D.N.Y. 2014) (quoting *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 382 (S.D.N.Y. 1996)). Whether Valbella Meatpacking and Valbella Midtown maintained unlawful common payment policies are questions common to all members of each subclass and predominate any individual damages assessments. The question of whether class members were properly paid can be addressed by class-wide proof regarding the defendants' payroll records, financial records, and testimony. Indeed, courts in this District have found that the types of individual questions that exist in wage-and-hour cases, such as the hours worked or the exact damages to which each plaintiff might be entitled, "[are] inevitable and do[ ] not defeat the predominance requirement." *Iglesias-Mendoza*, 239 F.R.D. at 373 (holding that questions of liability concerning whether class members were supposed to be paid the minimum wage and for overtime "are about the most perfect questions for class treatment"); *see also Espinoza*, 280 F.R.D. at 128 ("Courts have often found the predominance requirement satisfied despite individual differences in the amount of damages.").

Accordingly, the predominance requirement is satisfied here.

F.   The Proposed Class Satisfies the Superiority Requirement

The proposed class action must also satisfy the second prong of Rule 23(b)(3), which requires a court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In analyzing this requirement, the

court must consider:  "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).  Together, the predominance and superiority requirements were designed to "cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated."  *Amchem*, 521 U.S. at 615.

　　Plaintiffs have easily met the superiority requirement here.  It is unlikely that the class members would engage in individual action because the amount of potential recovery is low and likely to be outweighed by the individual cost of litigation.  Pls.' Memo. at 22.  The fact that class members are still currently employed by Defendants and concerned about potential retaliation further diminishes the likelihood of individual action.  *Id.* at 23.  Courts in this District have consistently held that "a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants."  *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014); *see, e.g., Trinidad v. Breakaway Courier Sys., Inc.*, No. 05-cv-4116 (RWS), 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007) (finding class action litigation to be superior where the average claim was $560 and some class members currently worked for the defendant); *Torres v. Gristede's Operating Corp.*, No. 04-cv-3316 (PAC), 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (finding the superiority requirement was met where litigation costs were likely to exceed any recovery and some class members were still employed with the defendants).

　　 In addition, because the class is composed of individuals who worked in New York City,

adjudication of the claims in this forum is appropriate.  Finally, the Court does not foresee any difficulties in managing this class action; damages for absent class members can be determined using standard statistical sampling techniques.  *See Rosario v. Valentine Ave. Disc. Store, Co., Inc.,* No. 10-cv-5255 (ERK)(LB) 2013 WL 2395288, at \*9 (E.D.N.Y. May 31, 2013), *report and recommendation adopted,* 2013 WL 4647494 (E.D.N.Y. Aug. 29, 2013) ("The question of whether class members were properly paid can be addressed by class-wide proof regarding the accuracy of defendants' payroll records, defendants' financial records, and testimony.").

Accordingly, the Court finds that the superiority requirement is satisfied.

G.   The Proposed Class is Ascertainable

The Second Circuit has recognized that there is an additional implied Rule 23 requirement that there be an identifiable class.  *Petrobras,* 862 F.3d at 269.  As the Second Circuit explained, ascertainability is a "modest threshold requirement" that precludes certification only if a "proposed class definition is indeterminate in some fundamental way."  *Id.*  "[A] class must be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member'; a class must be 'defined by objective criteria' so that it will not be necessary to hold 'a mini-hearing on the merits of each case.'"  *Id.* at 266–67 (quoting *Brecher v. Republic of Argentina,* 806 F.3d 22, 24 (2d Cir. 2015)).  The standard for ascertainability "is not demanding.  It is designed only to prevent the certification of a class whose membership is truly indeterminable." *Stinson v. City of New York,* 282 F.R.D. 360, 373–74 (S.D.N.Y. 2012) (internal citations omitted).

In employment matters such as this one, courts in this District have found that a class is ascertainable where its members can be determined using objective documentation, such as Defendants' employment records.  *See, e.g., Flores,* 284 F.R.D. at 123; *Gucciardo v. Titanium Constr. Servs., Inc.,* No. 16-cv-1113 (LGS), 2017 WL 3738777, at \*6 (S.D.N.Y. Aug. 30, 2017); *Fonseca v. Dircksen & Talleyrand Inc.,* No. 13-cv-5124 (AT), 2015 WL 5813382, at \*5 (S.D.N.Y. Sept. 28, 2015);

22

*Spencer v. No Parking Today, Inc.*, No. 12-cv-6323 (ALC) (AJP), 2013 WL 1040052, at *24 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, No. 12-cv-6323 (ALC) (AJP), 2013 WL 2473039 (S.D.N.Y. June 7, 2013).  However, the objective criteria must be sufficiently specific as to "establish the definite boundaries of a readily identifiable class."  *Brecher*, 806 F.3d at 25 (holding that plaintiffs failed to meet the ascertainability requirement where the objective criteria used ("those wearing blue shirts") was broad and placed no limit on time or context).

Here, Plaintiffs have provided objective definitions for each subclass with clear temporal limitations that easily allow the identities of potential class members to be determined.  The subclass definitions are unambiguous: the suit was brought on behalf of "all tipped employees including captains, servers, runners, bussers, and bartenders" who worked at Valbella Meatpacking and Valbella Midtown from May 25, 2014 through July 24, 2017.  Pls.' Memo. at 2.  Furthermore, Defendants have produced a list of all individuals employed by the restaurants within the relevant time period, and class membership can be ascertained by reviewing those lists.  *See* Valbella Meatpacking Class List; Valbella Midtown Class List; *see also Vargas,* 324 F.R.D. at 330 ("Defendants have produced a list of all PTSTs employed after June 30, 2009; membership of both the class and the WTPA subclass of PTSTs employed after April 9, 2011 can be ascertained from that list."); *Masoud v. 1285 Bakery Inc.*, No. 15-cv-7414 (CM), 2017 WL 448955, at *4 (S.D.N.Y. Jan. 26, 2017) ("Defendants produced a document listing the banquet servers who worked at Pulse from September 18, 2009, onward . . .  Class membership can definitely be ascertained by analyzing this document.").  Accordingly, the Court finds that Plaintiffs have met this requirement, along with the others under Rule 23, and certifies the proposed subclasses.

## VI.   APPOINTMENT OF CLASS COUNSEL

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g).  In considering such an appointment, the Court must consider:

(i)      the work counsel has done in identifying or investigating potential claims in the action;

(ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g)(1)(a). Given that plaintiffs' counsel has extensive experience litigating

employment law cases in this District, including class actions, and they have taken this case through

the discovery process, the Court appoints Joseph & Kirschenbaum, LLP as class counsel.

## VII.    CONCLUSION

For the reasons stated above, Plaintiff's motion for class certification is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 118.

SO ORDERED.

Dated: November 30, 2018
      New York, New York

_____
GREGORY H. WOODS
United States District Judge