UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAVLE ZIVKOVIC, on behalf of himself and
others similarly situated,

        Plaintiff,

   v.

LAURA CHRISTY LLC d/b/a VALBELLA,
LAURA CHRISTY MIDTOWN LLC, DAVID
GHATANFARD, and GENCO LUCA,

        Defendants.

17-CV-00553 (GHW)

---

## JOINT [PROPOSED] REQUESTS TO CHARGE

---

**For Plaintiff, Opt-in Plaintiffs and the Fed. R. Civ. P. Rule 23 Subclasses:**

JOSEPH & KIRSCHENBAUM LLP

D. Maimon Kirschenbaum
Josef Nussbaum
Lucas Buzzard
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640
Fax: (212) 688-2548
maimon@jk-llp.com
jnussbaum@jk-llp.com
lucas@jk-llp.com

**For Defendant Laura Christy Midtown LLC:**

HAROLD, SALANT, STRASSFIELD & SPIELBERG

Leonard I. Spielberg
81 Main St, Suite 205
White Plains, NY 10601
Tel: (914) 683-2500
Fax: (914) 683-1279
lenspielberg@gmail.com

**For Defendant Laura Christy LLC:**

DEALY, SILBERSTEIN & BRAVERMAN, LLP

Milo Silberstein
Maria Louisa Bianco
Amanda E. Maguire
225 Broadway, Suite 1405
New York, NY 10007
Tel: (212) 385-0066
Fax: (212) 385-2117
msilberstein@dsblawny.com
mbianco@dsblawny.com
amaguire@dsblawny.com

**For Defendants David Ghatanfard and Genco Luca:**

NEAL S. COMER, ATTORNEY AT LAW

Neal S. Comer
81 Main St, Suite 205
White Plains, NY 10601
Tel: (914) 683-5400
Fax: (914) 683-1279
comeresq@aol.com

**TABLE OF CONTENTS**

I. PRELIMINARY INSTRUCTIONS ........................................................................... 1

   A. Overview of Claims in the Case ................................................................. 1

   B. General Preliminary Instruction ................................................................ 3

   C. What is Evidence ....................................................................................... 3

   D. Direct and Circumstantial Evidence ......................................................... 4

   E. Burden of Proof and Preponderance of the Evidence ............................... 5

   F. Taking Notes .............................................................................................. 5

   G. Course of the Trial ..................................................................................... 6

   H. Conduct of the Jury ................................................................................... 6

   I. Charts and Summaries ................................................................................ 7

   J. Representative Testimony ........................................................................... 7

II. TRIAL INSTRUCTION ...................................................................................... 8

   A. Stipulated Facts ......................................................................................... 8

III. FINAL INSTRUCTIONS/DELIBERATIONS ................................................... 8

   A. Beginning Deliberations/Copy of Jury Instructions ................................. 8

   B. Duties of the Jury ....................................................................................... 8

   C. Conduct of the Jury During Deliberations ................................................ 9

   D. What is/is not Evidence ........................................................................... 10

   E. Direct & Circumstantial Evidence ........................................................... 10

   F. Credibility of Witnesses ........................................................................... 11

   G. Bias of Witnesses/Interest in Outcome ................................................... 12

   H. Burden of Proof ....................................................................................... 12

   I. Right to See Exhibits and Hear Testimony; Communications with Court .............. 13

   J. Representative Testimony ......................................................................... 13

IV. SPECIFIC INSTRUCTIONS ON PLAINTIFFS'/SUBCLASS MEMBERS' CLAIMS 14

   A. General Instruction - Summary of Claims and Defenses ......................... 14

   B. Tip Credit - General ................................................................................. 15

   C. Written Notices Required to Apply a Tip Credit ..................................... 15

   D. Overtime Wage Rates .............................................................................. 16

   E. Spread of Hours ....................................................................................... 17

F.    **Accurate Time Records** ................................................................................ 17

G.    **Consequences of Incomplete Time Records** ................................................ 18

H.    **Liquidated Damages** ................................................................................... 19

I.    **New Hire Notice Requirements** .................................................................. 20

J.    **Wage Statement Requirements** ................................................................... 20

K.    **Affirmative Defense** ................................................................................... 21

L.    **Joint Employer Status** ................................................................................ 22

M.    **Defendant Ghatanfard's Employer Status** ................................................ 22

N.    **Single Integrated Employer Status** ............................................................. 24

O.    **Employees Cannot Waive Protections of Wage and Hour Laws** ................ 25

P.    **Calculating Damages** .................................................................................. 25

V.    **SPECIFIC INSTRUCTIONS ON PLAINTIFFS' DISCRIMINATION CLAIMS** ...... 26

A.    **National Origin Discrimination – New York City Law** ............................... 26

B.    **Discrimination – Damages** ......................................................................... 27

C.    **Compensatory Damages** ............................................................................. 27

D.    **Punitive Damages** ...................................................................................... 28

E.    **Employer Responsibility for Discrimination by its Employees or Agents** ... 29

F.    **Battery** ....................................................................................................... 30

G.    **Respondeat Superior** ................................................................................. 31

H.    **Battery - Damages** ..................................................................................... 31

**[PROPOSED] JURY INSTRUCTIONS**

Pursuant to Fed. R. Civ. P. 51, and in accordance with Section 5 of the Individual Rules of Practice in Civil Cases of the Honorable Gregory H. Woods's, Plaintiff Pavle Zivkovic, on behalf of himself and the Fed. R. Civ. P. Rule 23 Subclasses, and Defendants Laura Christy LLC d/b/a Valbella, Laura Christy Midtown LLC d/b/a Valbella, David Ghatanfard, and Genco Luca (the "Parties") hereby submit the following proposed requests to charge and proposed verdict forms.

*    *    *

## I.  PRELIMINARY INSTRUCTIONS

### A.  Overview **of Claims in the Case**

Ladies and gentlemen of the jury. Now that you have been sworn in, I need to explain some basic principles about a civil trial and your duty as jurors.  These are preliminary instructions.  I will give you more detailed instructions at the end of the trial.  Before we review the instructions, I would like to provide you with a brief overview of the claims in the case that you will be hearing about during trial.

Plaintiff Pavle Zivkovic alleges that he and other similarly situated tipped food-service workers who were employed at Laura Christy LLC and Laura Christy Midtown LLC were subject to certain wage and hour violations during the time they worked at the restaurants.  Throughout these instructions, I will refer to Laura Christy LLC as "Valbella Meatpacking" and to Laura Christy Midtown LLC as "Valbella Midtown," and I will also refer to them together as the "Corporate Defendants."

Plaintiff Zivkovic alleges:

1) that Valbella Meatpacking and Valbella Midtown paid him and the other food-service workers below the minimum wage because the Corporate Defendants improperly applied a "tip credit" to food-service workers' wages;

2) that Valbella Meatpacking and Valbella Midtown failed to pay tipped food-service employees the appropriate overtime rates when they worked more than 40 hours in a week;

3) that Valbella Meatpacking and Valbella Midtown failed to pay tipped food-service employees the spread of hours premium when the length of these employees' workdays spanned more than ten hours; and

4) Valbella Meatpacking and Valbella Midtown failed to provide the food-service workers with the appropriate wage notices and wage statements.

Plaintiff Zivkovic bring these claims on his own behalf as well as on behalf of a class of tipped food-service employees who worked at these two restaurants between January 2011 and December 2018. I have already certified this case as a class action with two subclasses, one of tipped food-service employees who worked at Valbella Meatpacking and the other of tipped food-

service employees who worked at Valbella Midtown. I will refer to these classes as the "Subclasses" and will refer to the individuals in the Subclasses as "Subclass Members" or "Plaintiffs." In a few minutes, I will explain what it means to bring claims on behalf of a class. Before that, I will provide you with a brief overview of what you will be considering in each of the above-mentioned claims.

New York State law requires employers to pay their employees a minimum hourly rate. Under certain circumstances, such as where employees receive tips from customers, an employer may pay the employees below the minimum wage.[1] However, in order to do so certain requirements must be met. Specifically, for an employer to lawfully pay their tipped employees below the minimum wage, they must first provide those employees with written notices that includes specific information that describes how the employees will be paid and that they will be paid below the full minimum wage. You will be asked to decide whether or not Valbella Meatpacking and Valbella Midtown provided employees with those written notices.

Similarly, employers are required to provide their employees with certain notices when the employee is first hired as well with paystubs, sometimes called "wage statements," together with each payment of wages the employee receives. New York State law prescribes specific information that must be included in these notices and wage statements. You will be asked to decide whether or not the food-service employees at Valbella Meatpacking and Valbella Midtown received these notices and wage statements and, if they did, whether or not the notices and wage statements included all the information prescribed by New York State law. As the amount of penalties an employee would be entitled to if their employer did not properly provide them with these "notices" and/or "wage statements" is dependent on the number of days and weeks that the employee worked, you will be hearing testimony as to the total number of days and weeks that the Subclass Members worked at the Valbella restaurants.

New York State law requires employers to pay certain employees an extra hour's pay when the employee's "spread of hours" is more than 10 hours. This is called "spread of hours" pay. Spread of hours pay is defined as the interval between the beginning and end of an employee's workday. You will be asked to decide whether the food-service employees at Valbella Meatpacking and Valbella Midtown worked shifts that spanned more than 10 hours in one workday and, if so, whether they were paid the required spread of hours pay for those shifts.

Finally, New York State law mandates the minimum hourly rates that employers must pay their employees when the employees work more than 40 hours in a workweek. You will be asked to decide whether Valbella Meatpacking and Valbella Midtown always paid the food-service employees the appropriate overtime rates when applicable.

In addition to the class claims, Plaintiff Zivkovic also brings claims on his own behalf. Specifically, Mr. Zivkovic claims that a chef at Valbella Midtown, Defendant Genco Luca, discriminated against him on the basis of his national origin and that Valbella Midtown and its owner, Defendant David Ghatanfard, should be responsible for all of these allegedly discriminatory actions. Mr. Zivkovic also alleges that he was physically assaulted by Defendant Luca during the time he worked at Valbella Midtown.

---

[1] **Defendants believe using the term "below the minimum wage" has a negative connotation. Defendants suggest that instead the description is changed to say "a reduced rate."**

Valbella Midtown and Valbella Meatpacking deny that the Subclass Members are entitled to the damages and penalties they seek in this case as they maintain that, at all relevant times, the restaurants complied with New York's wage and hour laws.[2]

## B. General Preliminary Instruction[3]

I will now explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I will give you more detailed instructions at the end of the trial.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

## C. What is Evidence[4]

You must decide this case based only on the evidence presented in the courtroom. The evidence from which you are to find the facts consists of the sworn testimony of the witnesses, the documents and other things received as exhibits, and any facts that are stipulated—that is, formally agreed to by the Parties.

During the trial, you will hear certain things that are not evidence and therefore should not play a role in your deliberations. These include the lawyers' opening statements and closing arguments. While these remarks may help you follow each side's arguments and presentation of evidence, they are not evidence and should not play a role in your deliberations.

Similarly, the lawyers' questions to witnesses and objections are not evidence. Only the witnesses' answers are evidence. There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should

---

[2] **Valbella Midtown and Valbella Meatpacking deny that the class members are entitled to the damages sought payment in this case because the New York Labor Law was amended in 2015 and provides a defense to these class members claims. The New York Labor Law provides that it shall be an affirmative defense to wage notice and wage statement claims that an employer made complete and timely payment of wages to the employee. Similarly, courts have held that the affirmative defense applies to minimum wage claims for failure to provide written notice of the tip credit. Valbella Midtown and Valbella Meatpacking also contend that the Affirmative Defense provided by the New York Labor Law applies retroactively and covers the entire Relevant Time Period.**

[3] Adapted from Third Circuit Model Civil Jury Instructions, General Instructions For Civil Cases, Preliminary Instructions 1.1, *available at* https://www.ca3.uscourts.gov/model-civil-jury-table-contents-and-instructions (hereinafter "Third Circuit").

[4] Adapted from Third Circuit, Preliminary Instructions 1.5.

not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other and ignore the objection. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

You must make your decision based only on the evidence that you see and hear in court. You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion. However, do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

### D.  Direct and Circumstantial Evidence[5]

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness, him or her self has seen, felt, touched or heard or did. For example, if a witness testified that he saw it raining outside, and you believed her, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. A simple example of circumstantial evidence that is often used in the courtroom goes like this: assume that when you came to the courthouse this morning the sun was shining, and it was a nice day. Now assume that the courtroom blinds were drawn during the trial so you could not see outside. Sometime later, a person walks into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella. Now remember, the blinds are drawn, so you cannot see whether or not it is raining outside. So you have no direct evidence of that fact. But because you saw a person enter the courtroom wearing a wet raincoat and carrying a wet umbrella, it would be logical to conclude that it had in fact been raining outside. The wet raincoat and wet umbrella are circumstantial evidence from which you could reasonably conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

---

[5]  Adapted from Third Circuit, Preliminary Instructions 1.6.

### E. Burden of Proof and Preponderance of the Evidence[6]

This is a civil case. Plaintiffs and the Subclass Members are the parties who bring the claims in this lawsuit. Defendants are the parties against whom the lawsuit was filed. Plaintiffs therefore have the burden of proving their overall case by what is called the preponderance of the evidence. That means Plaintiffs have to prove to you, in light of all the evidence, that what they claim is more likely so than not so. To say it differently: if you were to put the evidence favorable to Plaintiffs and the evidence favorable to Defendants on opposite sides of the scales, Plaintiffs would prevail if the scales tip in their favor, no matter by how much or how little. If the scales do not tip in Plaintiffs' favor, then the verdict must be for Defendants. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

A "preponderance of the evidence" simply means the greater weight of the evidence. The party who bears the burden of proof on an issue must demonstrate, in light of all the evidence, that what he or she claims with respect to that issue is more likely so than not so. In my instructions, I will tell you whether Plaintiffs or Defendants have the burden of proof as to a particular issue. In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies to criminal cases only. It does not apply in civil cases such as this one. So you should put it out of your mind.

On certain issues, called affirmative defenses, the Defendants have the burden of proving the elements of the defense by a preponderance of the evidence. I will instruct you on the facts that will be necessary for you to find on this affirmative defense. An affirmative defense is proven if you find, after considering all evidence in the case, that Defendants have succeeded in proving that the required facts are more likely so than not so. In other words, in the case of an affirmative defense, Defendants must make the scales tip in their favor to prevail on that defense.

### F. Taking Notes[7]

If you wish, you may take notes during the presentation of the evidence to help you remember the evidence. I am going to give each of you a notebook on which you may take notes. If you do take notes, please do not share them with anyone, including other members of the jury. Do not let note-taking distract you from carefully listening to and observing the witnesses. We will collect the notebooks at the end of each day and give them back to you in the morning. No one will read your notes. Whether or not you take notes, you should rely on your own memory of the

---

[6] Adapted from Third Circuit, Preliminary Instructions 1.10.

[7] Adapted from Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, General Instructions For Civil Cases, Preliminary Instructions 1.18, *available at* https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf (hereinafter "Ninth Circuit").

evidence. The notes are only to assist your memory. You should not be overly influenced by your notes.

### G. Course of the Trial

Let's walk through what will happen during this trial. First, the lawyers for each will make opening statements. Remember, an opening statement is not evidence – it is simply an outline of what each party intends to prove during the trial.

Next, Plaintiffs' will present their witnesses and ask them questions. After Plaintiffs' lawyer questions a witness, Defendants' lawyer may ask the witness questions. This is called "cross examining" the witness. Then Defendants will call their witnesses and Plaintiffs may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all of the evidence is in, the Parties' lawyers will present their closing arguments to summarize the evidence and provide their interpretation of that evidence. Then I will give you instructions on the law and you will go to the jury room to deliberate on whether the parties have met their respective burdens of proof.

### H. Conduct of the Jury[8]

Now, a few words about your conduct as jurors.

First, during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you may not to discuss the case with anyone, not even among yourselves. This includes discussing the case in person, in writing, by phone or electronic means, via text messaging, email, Facebook, Twitter, or any other social media service. If any lawyer, party, or witness you see in this courtroom does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either. There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence.

If anyone should try to talk to you about the case, including a fellow juror, you should respond that you have been instructed by the judge not to discuss the matter, and you should bring it to my attention promptly.

Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean do not try to do any independent research or investigation on your own on matters relating to the case or this type of case. Do not do any research on the internet, for example. You are to decide the case upon the evidence presented at trial. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims or defenses until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

---

[8] Adapted from Third Circuit, Preliminary Instructions 1.3.

### I.  Charts and Summaries[9]

Charts and summaries may be admitted into evidence to illustrate information brought out in the trial or they may be presented to you without being admitted into evidence. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

### J.  Representative Testimony

Federal law allows employees to pursue their wage and hour claims as a group in one lawsuit, called a "class action," instead of filing many separate individual lawsuits.[10]   Here, Plaintiff Zivkovic brings claims on his own behalf as well as on behalf of all other tipped food-service employees who worked at Valbella Midtown and Valbella Meatpacking between January 25, 2011 and December 3, 2018.   I have already certified this case as a class action and I have certified two Subclasses, one of tipped food-service employees who worked at Valbella Meatpacking and the other of tipped food-service employees who worked at Valbella Midtown.[11]

The Plaintiffs who will testify during this trial are representatives of the other Plaintiff Subclass Members who did not testify.  This is allowed because the Court has already determined that their claims and experiences are so similar that those who testify may do so in their representative capacity.[12] You may, therefore, rely on the testimony given by the representative Plaintiffs, along with the other evidence offered, to support your verdict for all Plaintiff Subclass Members who are part of this case.[13] In other words, if the evidence presented by the Plaintiffs who testified shows that they are entitled to compensation for unpaid wages or to penalties from

---

[9] Ninth Circuit, Civil Instructions 2.14.

[10] Fed. R. Civ. P. 23.

[11] *See* Dkt. No. 147 (class certification order).

[12] *See generally Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1043, 194 L. Ed. 2d 124 (2016) (allowing representative proof that "included employee testimony" to establish liability in an FLSA action); *see also Morgan v. Family Dollar*, 551 F.3d 1233, 1280 (11th Cir. 2008) ("For the same reasons that the court did not err in determining that the Plaintiffs were similarly situated enough to maintain a collective action, it did not err in determining that the Plaintiffs were similarly situated enough to testify as representatives of one another.")

[13] *See, e.g., Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 391 (S.D.N.Y. 2014) ("It is well-settled that . . . employee plaintiffs may use representative, as opposed to individualized, proof . . . . This evidence may, for example, consist of testimony from representative employees. . . . ."); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994) ("Courts commonly allow representative employees to prove violations with respect to all employees."); *Martin v. Selker Brothers, Inc.,* 949 F.2d 1286, 1298 (3d Cir. 1991) ("It is not necessary for every single affected employee to testify in order to prove violations or recoup back wages."); *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 356 (S.D. Ohio 2006) ("It is generally recognized that, at trial, the testimony of 'fairly representative employees' may form the basis for a determination of liability and back wages, even in the absence of testimony from all employees."); *accord Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1247, 1263 (11th Cir. 2008) (affirming FLSA plaintiffs' verdict after collective action trial in which seven plaintiffs testified in representative capacity on behalf of 1424 opt-in plaintiffs); *Dole v. Snell*, 875 F.2d 802, 803 (10th Cir. 1989) (testimony from only one of thirty-two employees who held identical job titles); *Stillman v. Staples, Inc.*, 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) (upholding FLSA plaintiffs' jury verdict after collective action trial in which 13 plaintiffs testified in representative capacity on behalf of 342 opt-in plaintiffs); *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir. 1982) (testimony from only 6 of 44 restaurants); *Maynor v. Dow Chemical Co.*, 671 F. Supp. 2d 902, 912 (S.D. Tex. 2009) (testimony of 12 of 129 opt-in plaintiffs); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 531-33, 536 (S.D. Tex. 2008) (collecting cases).

Defendants, then those Plaintiffs that you did not hear from are also deemed by inference to be entitled to similar compensation and/or penalties.[14]

## II.  TRIAL INSTRUCTION

### A.  Stipulated Facts[15]

The Parties have agreed that the following stipulated facts should be accepted as true: [==set forth stipulated fact or facts==]. You must therefore treat [==state facts==] as having been proved for the purposes of this case

## III.  FINAL INSTRUCTIONS/DELIBERATIONS

### A.  Beginning Deliberations/Copy of Jury Instructions[16]

Members of the jury:

Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case. Each of you will receive a copy of these instructions that you may take with you to the jury room to consult during your deliberations. You may also take with you any notes you took during the course of the trial.  When you get to the jury room, you should select one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in open court.

### B.  Duties of the Jury[17]

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  You are the sole and exclusive judge of the facts. You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the witness testimony. You draw the reasonable inferences that may be drawn from the evidence, or from the lack of evidence.

Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. During the trial, I have been called upon to make rulings on various questions. There may have been objections, or motions may have been made to strike answers. You are to disregard the fact that objections were made and the fact that I may have sustained or overruled those objections. The rulings that I have made during the trial are not any indication of my views about what your decision should be.

---

[14] **Defendants wish to add the following sentence: However, you must be mindful that these rough estimates *must* roughly reflect the aggregate amount owed to class members since a calculation that results in inflated damages that do not accurately reflect the number of Plaintiffs who were actually injured or bear no relationship to the amount of economic harm actually caused by the Defendants. *See Hickory Securities Ltd. v. Republic of Argentina,* 493 Fed. Appx. 156, 159 (2d Cir. 2012). Plaintiffs maintain that an instruction on how to properly assess class-wide damages is not necessary prior to trial .**

[15] Adapted from Third Circuit, General Instructions for Use During Trial, 2.4.

[16] Adapted from Third Circuit, General Instructions for End of Trial 3.1.

[17] Adapted from Third Circuit, General Instructions for End of Trial 3.1.

These are matters of law and although you might be curious about them, you should not consider them during your deliberations. Also, if at any time I instructed you to disregard anything that was said, then you must follow that instruction and pay no attention to that question or answer during your deliberations.

I also ask you to draw no inference from the fact that I may have occasionally made comments, asked questions of certain witnesses, or said something to one or both of the attorneys. These comments, questions and statements were only intended for clarification or to expedite matters, and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. From time to time, the attorneys and I may also have had sidebar conferences and other conferences out of your hearing. None of these conferences should enter into your deliberations at all. You are expressly to understand that I have no opinion as to the verdict you should render in this case.

Your second duty as jurors is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

### C.  Conduct of the Jury During Deliberations[18]

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone, or computer of any kind; the internet, any internet service, or any text or instant messaging service; or any website or social networking service (like Facebook or Twitter), to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has

---

[18] Adapted from Third Circuit, General Instructions for End of Trial 3.1.

not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

### D. What is/is not Evidence[19]

As I explained to you at the beginning of this trial, you must decide this case based only on the evidence that has been presented in the courtroom. The evidence from which you are to find the facts consists of the sworn testimony of the witnesses, the documents and other things received as exhibits, and any facts that are stipulated—that is, formally agreed to by the parties.

During the trial, you heard the lawyers' opening statements and closing arguments. While these remarks may help you follow each side's arguments and presentation of evidence, they are not evidence and should not play a role in your deliberations.

Similarly, the questions the lawyers asked witnesses and any objections the lawyers made are not evidence. Only the witnesses' answers are evidence. You should not be influenced by the fact that an attorney may have objected to a question or to an exhibit. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence, and those objections are not evidence. You also should not be influenced by any of my rulings as to such objections. If I instructed you that some item of evidence was received for a limited purpose only, you must consider that evidence only for that limited purpose.

Also, you must not consider any testimony or other evidence that I may have ordered to be stricken from the record or excluded. In such cases, you should not speculate about what a witness might have said or what an exhibit might have shown.

Again, you must make your decision based only on the evidence that you saw and heard in this courtroom. You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion. However, do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

### E. Direct & Circumstantial Evidence[20]

As you probably recall from the beginning of this trial, there are two types of evidence that you may use in reaching your verdict—"direct evidence" and "circumstantial evidence."

An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. For example, if a witness testified that he saw it raining outside, and you believed her, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

"Circumstantial evidence" is proof of one or more facts from which you could find another fact. Recall my rain example from the beginning of trial. If the courtroom blinds were drawn, and you could not see the weather outside, you could reasonably infer from the wet raincoat and

---

[19] Adapted from Third Circuit, Preliminary Instructions 1.5.
[20] Adapted from Third Circuit, Preliminary Instructions 1.5.

umbrella of a person who entered the courtroom in the middle of trial that it was raining outside when they entered the building. The wet raincoat and wet umbrella are circumstantial evidence that it was raining at the time, or shortly before, the person entered the building.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

### F. Credibility of Witnesses[21]

You have had the opportunity to observe all of the witnesses. In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. It is your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony. You may believe everything a witness says, or part of it, or none of it at all.

In deciding what to believe, you may consider:

    (1)    the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

    (2)    the quality of the witness's understanding and memory;

    (3)    the witness's manner and demeanor while testifying;

    (4)    whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

    (5)    whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

    (6)    how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

    (7)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

---

[21] Adapted from Third Circuit, Preliminary Instructions 1.7; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit ("Ninth Circuit), 1.14 (Credibility of Witnesses).

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

### G. Bias of Witnesses/Interest in Outcome

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. Likewise, you should consider evidence of any interest or motive that the witness may have to cooperate with or testify favorably for, one of the parties. If you find that a witness is biased, you should view his or her testimony with caution, weight it with care, and consider carefully whether it has been affected by that bias.

For example, you may consider whether an individual was employed by or has any or other business relationship with Defendants, as well as any other interest a party may have, in determining whether that witness's testimony was in any way influenced by that relationship or interest. In this case, there has been testimony from several witnesses who were, or who still are, employees of Valbella restaurants or who have other continuing business relationships with Valbella. The relationship of these witnesses to Valbella, or to the individual Defendants, and the testimony you have heard regarding those relationships may be considered by you in deciding whether their testimony has in any way been influenced by those employment or other relationships.

In evaluating a witness's testimony, you should also consider whether he or she has an interest, or lack of interest, in the outcome of the case. For example, the Subclass Members and Mr. Ghatanfard, for example, both have interests in how this case is decided. As parties, they are interested witnesses.

An interested witness is not necessarily less believable than a disinterested witness, and having an interest does not mean that the witness has not told the truth. It is for you to decide from the demeanor and testimony of each interested witness on the stand and such other tests as your experience dictates whether or not the testimony has been influenced, intentionally or unintentionally, by his interest.

You may, if you consider it proper under all of the circumstances, choose not to believe the testimony of an interested witness, even though it is not otherwise challenged or contradicted. However, you are not required to reject the testimony of such a witness, and you may accept all, or as much, of his or her testimony as you find reliable, and reject as much as you find unworthy of belief.

### H. Burden of Proof[22]

As I explained at the beginning of trial, because this is a civil case the standard of proof is preponderance of the evidence. In my instructions, I will tell you whether the Plaintiffs/Subclasses or Defendants have the burden of proof as to a particular issue.

---

[22] *See supra* section I.E.

To establish by a preponderance of the evidence means that the evidence of the party having the burden of proof must be more convincing and persuasive to you than the evidence opposed to it. A preponderance of the evidence means the greater weight of the evidence. The difference in persuasiveness need not be great: it requires only that you find that the scales tip, however slightly, in favor of the party having the burden of proof – that what that party claims is more likely than not true. If you find that the credible evidence as to a particular issue is evenly divided, then you must find in favor of the party not having the burden of proof.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. What is important here is the quality and persuasiveness of the evidence relied on by a party, and not the number of witnesses, the number or variety of the exhibits that party introduced, or the length of time that party spent on a particular subject. Simply because I have permitted certain evidence to be introduced does not mean that I have decided that it is important or significant. That is for you to decide. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

## I. Right to See Exhibits and Hear Testimony; Communications with Court[23]

If during your deliberations you have any doubt as to any of the testimony, you are permitted to request that the trial transcript be read back to you. You also have the right to ask that we send you any of the exhibits that have been admitted into evidence.

If you would like to have testimony read back to you or receive any exhibits that have been admitted into evidence, or if you have any other questions or messages for me during the course of your deliberations, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages.  Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone, including me, that a certain number is voting one way or another. Your votes should stay secret until you are finished.

## J. Representative Testimony[24]

As I instructed you at the beginning of this case, individual employees may pursue their own claims as well as those of their coworkers who were subject to common policies as a group in one lawsuit called a "class action."  The class action mechanism allows all the individual claims to proceed in one lawsuit instead of filing many separate individual lawsuits.  Here, I have already certified this case as a class action and I have certified two Subclasses, one of tipped food-service employees who worked at Valbella Meatpacking and the other of tipped food-service employees who worked at Valbella Midtown.  During the trial, you have heard testimony from individuals

---

[23] Adapted from Third Circuit, General Instructions for End of Trial 3.1.
[24] *See supra* section I.J.

who represent the Subclasses. You may rely on the testimony given by these representative Plaintiffs, along with the other evidence offered, to support your verdict for all Plaintiff Subclass Members who are part of this case. In other words, if the evidence presented by the representative employees shows that they are entitled to compensation for unpaid wages and/or penalties, then those Subclass Members that you did not hear from are also deemed by inference to be entitled to compensation and/or penalties.

## IV. SPECIFIC INSTRUCTIONS ON PLAINTIFFS'/SUBCLASS MEMBERS' CLAIMS

I will now turn to the law applicable to the Subclass Members' claims under the relevant wage and hour laws.

### A. General Instruction - Summary of Claims and Defenses

You must decide whether the Class Representatives who were employed at Valbella Meatpacking and Valbella Midtown have proven that either or both of these corporations:

1) Unlawfully took a tip credit from Subclass Members' wages;

2) Failed to always pay Subclass Members the statutorily required overtime rates;

3) Failed to pay Subclass Members the spread of hours premium when the length of these employees' workdays spanned more than ten hours; and

4) Failed to provide them with the appropriate wage notices and wage statements.

If you find that Defendants unlawfully took a tip credit from Subclass Members' wages, failed to properly pay Subclass Members for all hours worked, and/or failed to pay Subclass Members spread of hours premiums, you will also need to decide if Defendants had a good faith basis to believe they were not violating any laws.

You must also decide if Valbella Midtown discriminated against Plaintiff Zivkovic on the basis of his national origin and, if so, whether Defendant Ghatanfard should also be responsible for any discriminatory actions. You will also decide whether Defendant Genco Luca committed battery against Plaintiff Zivkovic and, if so, whether or not Valbella Midtown and/or Defendant Ghatanfard should also be responsible for Mr. Luca's actions.

Finally, if you find either Valbella Meatpacking or Valbella Midtown responsible to pay any compensation and/or penalties for any of the aforementioned claims, you must also decide:

1) Whether the corporations were sufficiently integrated with each other to be considered one and the same company and thus jointly responsible for each other's violations, and

2) Whether Defendant Ghatanfard was Plaintiff's and the Subclass Members' employer and thus should also be held responsible for any unpaid wages and/or penalties owed to Plaintiff and the Subclass Members.

14

### B. Tip Credit - General

I will now explain to you the law you must apply in deciding whether Defendants properly paid Plaintiffs' wages during the time they worked at Valbella. New York law requires employers to pay employees at least a minimum wage for the first 40 hours worked in a week, and overtime wages of one and a half times the employee's regular hourly rate for all hours worked in excess of 40 per week.[25] Under certain limited circumstances, an employer may take what is called a "tip credit" and pay a tipped employee an hourly wage lower than the minimum wage.[26]

In this case, all the Subclass Member Plaintiffs were paid an hourly wage for which Defendants took a tip credit. The issue you will be deciding is whether Defendants were entitled to pay Subclass Members the lower minimum and overtime wages by applying a tip credit to these individuals' wages. I will now explain the requirements an employer must meet in order to lawfully pay tipped employees a lower hourly rate.

### C. Written Notices Required to Apply a Tip Credit

New York law allows an employer to apply a tip credit to its employees' wages when certain preconditions are met, as follows:

An employer may take a credit towards an employee's minimum hourly rate only if the employee has received a written notice notifying them of the tip credit.[27] These written notifications must be provided to each employee both (1) at the start of an individual's employment, or (2) where an individual is already employed, prior to any change in the employee's hourly rates of pay.[28] As you saw during the trial, the minimum wage rate in New York State changed in 2011 and then each year from 2014 through 2018. Accordingly, Valbella Midtown and Valbella Meatpacking were required to provide Subclass Members with written notices when they were first hired and again at the start of each of the following years: 2011, 2014, 2015, 2016, 2017, and 2018.[29]

To be considered valid notices that permit an employer to apply a tip credit, the notices must state the following information:

> (1) the employee's regular hourly pay rate,
> (2) the employee's overtime hourly pay rate,
> (3) the amount of tip credit, if any, to be taken from the basic
>     minimum hourly rate, and
> (4) the regular payday.[30]

---

[25] N.Y. Lab. L. § 652; N.Y. Comp. Codes R. & Regs., tit. 12, § 146-1.4.
[26] N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3.
[27] *Id*.; *see also* transcript of Court's October 18, 2019 Order (attached as "Exhibit B" to the Parties' proposed joint pretrial orer) denying motion for partial summary judgment wherein the Court confirmed that written notice is required for an employer to take advantage of a tip credit. ("I expect to instruct the jury that written notice is necessary in order for an employer to take advantage of the tip credit under the NYLL.").
[28] N.Y. Comp. Codes R. & Regs., tit. 12, § 146-2.2.
[29] N.Y. Lab. Law §§ 652, 652(1)(a)(i); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1.
[30] N.Y. Comp. Codes R. & Regs., tit. 12, §§ 146-2.2.

In addition, the notice must state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate. The employer must provide the notice to the employee in English as well as in any other language spoken by the employee as his/her primary language. The notice must also be signed by the employee and the employer must keep a copy of the acknowledgment of receipt of the notice signed by the employee on file for six years.[31]

Finally, the employer has the burden of proving by the preponderance of the evidence that it complied with all the tip credit notification rules in order to have lawfully applied the tip credit.[32]

You must decide whether Defendants have proved by a preponderance of the evidence that they provided Subclass Members with written notices that included all the above-mentioned information. In this case, Defendants applied a tip credit to all the Subclass Members wages. Thus, Defendants bear the burden of proving that they provided written notices to each Subclass Members in which they notified the employees of above-mentioned terms of their pay. Defendants were also required to keep, for at least six years, all records of any written notices signed by Subclass Members. In deciding this issue, if you find that Defendants have not proved by a preponderance of the evidence that they provided Subclass Members with notices that included all the statutorily required information, you must find that they were not entitled to pay Subclass Members the lower tip credit rate. Moreover, even if you find that Defendants introduced evidence of documents that appear to be notices but those documents only included some but not all of the above-stated information required to be included in a valid tip credit notice, you must still find that these notices were invalid and Defendants were not entitled to take advantage of the tip credit.

### D. Overtime Wage Rates

I will now explain the law you must apply in deciding whether Subclass Members were paid the proper overtime rates for all overtime hours they worked. Under New York law, an employer must pay their employees for overtime at a wage rate of and a half times the employee's regular rate for hours worked in excess of 40 hours in one workweek.[33] Employees who are properly paid pursuant to a tip credit may also be paid below the the full minimum overtime rate. For such employees, the overtime rate is calculated by first multiplying the full minimum wage rate by one and half times and then subtracting the applicable tip credit. The employer is not entitled to simply multiply the lower tip credit by minimum wage by one and half times to arrive at an overtime rate. Thus, as an example, in the year 2014 when New York's minimum wage was

---

[31] *Id.*

[32] *Id.*; *see also, e.g., Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 501 (S.D.N.Y. 2017) ("The burden is on the [employer] to show that [it has] complied with the [NYLL's] tip notice requirement.") (citing *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, No. 15 Civ. 6857 (GWG), 2017 U.S. Dist. LEXIS 139477, 2017 WL 3736695, at *10 (S.D.N.Y. Aug. 29, 2017); *Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665, No. 15 Civ. 2005 (GWG), 2017 U.S. Dist. LEXIS 86832, 2017 WL 2438571, at *6 (S.D.N.Y. June 6, 2017)); *Shek Mooi Chong v. Golden 88 Spoon Inc.*, No. 16-CV-5591 (ALC), 2019 U.S. Dist. LEXIS 55421, at *15 (S.D.N.Y. Mar. 28, 2019) ("Defendants hold the burden of proving they met NYLL and FLSA notice requirements. […] Defendants lack evidence of compliance with either the NYLL or the FLSA to satisfy the initial burden for summary judgment"); *Sprague v. T.C. Inn, No.* 3:19-CV-1263 (LEK/MJ), 2021 U.S. Dist. LEXIS 153528, at *17 (N.D.N.Y. Aug. 16, 2021) ("the burden is on the employer to show that the employee understood the alleged tip credit arrangement, and Defendants have not carried that burden.") (citations omitted).

[33] N.Y. Comp. Codes R. Regs., tit. 12, § 146-1.4.

$8.00 and employers were entitled to apply a $3.00 tip credit to pay Subclass Members $5.00 an hour, the overtime rate for employees paid pursuant to a tip credit was $9.00 am hour. This rate is arrived at by multiplying the minimum wage rate of $8.00 by one and half times, to get a full overtime rate of $12.00, and then subtracting the applicable $3.00 tip credit, to arrive at the overtime rate of $9.00. In other words, the tip credit overtime rate is not arrived by simply multiplying the regular tip credit hourly wage rate—which was $5.00 in 2014—by one and half times.

In this case, you will be asked to decide if Defendants paid Subclass Members the proper overtime rates for the time that Subclass Members worked in excess of 40 hours in a workweek each year from 2011 to 2018. If, for any year, you find that the Defendants did not pay the proper overtime rate, you will be asked to determine the total number of hours for which the improper rate as applied. (For your reference, I will provide you with a list of the applicable overtime rates during each year between 2011 and 2018 to take with you while you deliberate.)

### E. Spread of Hours

I will now explain the law you must apply in deciding whether Subclass Members were entitled to spread of hours compensation. Under New York law, employers must pay certain employees an extra hour's pay at the New York minimum wage when their "spread of hours" is more than 10 hours.[34] "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty."[35]

 (For example, if an employee worked from 10 a.m. until 2 p.m. and then again on the same day from 6. p.m. to 10 p.m. they worked a spread of 12 hours (10 a.m. to 10 p.m.) even though they only worked 8 hours during that time.)

If you find that Subclass Members worked days that spanned more than 10 hours but that they were not paid any spread of hours pay, you must find that Defendants owe Subclass Members spread of hours pay for those shifts. In making any such assessments, your calculations may be approximate.

### F. Accurate Time Records

In assessing whether or not Subclass Members were paid spread of hours pay, you will be asked to decide (1) whether Subclass Members worked days that spanned more than ten hours, and (2) if so, whether or not they were paid any spread of hours pay.

Employers are required by New York law to maintain accurate records of employees' daily and weekly hours worked as well as of the compensation the employees received.[36] Time records are accurate if they reflect the precise amount of time each employee worked each day and each week. In addition, employers are required to maintain accurate records of an employee's arrival

---

[34] N.Y. Comp. Codes R. Regs., tit. 12, § 146-1.6.
[35] *Id*.
[36] N.Y. Lab. L. § 195(4); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.1; *see also Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 379 (E.D.N.Y. 2012).

and departure times if that employee's workday spans more than 10 hours.[37]  The employers are required to maintain these records for at least six years.[38]

An employer cannot shift this obligation to its employees.[39]  In other words, an employer that does not have records of the total hours an employee works every day and week as well as of an employee's arrival and departure times if his or her workday spans more than 10 hours, has failed its obligation.[40]

Finally, an employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or any other ascertainable period of time the employee is required to spend on duties assigned to him."[41]

### G.  Consequences of Incomplete Time Records

If in assessing whether or not Defendants paid Subclass Members spread of hours pay you determine that Defendants' time records are inaccurate, incomplete, or do not otherwise reflect all of the hours that Subclass Members worked, then the Class Representatives may prove the hours they worked by presenting evidence that raises a "just and reasonable inference" of the amount and extent of their work.[42]  Class Representatives' recollections of the hours they worked can be sufficient proof and may be met through estimates based on their own recollection.[43]  While the Class Representatives may not speculate or guess as to their number of hours of work,[44] they are not required to prove the exact number of hours they worked.[45]

Once the Class Representatives have presented testimony or other evidence from which you reasonably infer the amount and extent of their work, the burden shifts to Defendants to rebut the Class Representatives' evidence by proving by a preponderance of the evidence that Plaintiffs were paid the wages they claim they were not paid.[46]  In other words, Defendants must then

---

[37]  N.Y. Comp. Codes R. & Regs., tit. 12, § 146-2.1(4).

[38]  N.Y. Comp. Codes R. & Regs., tit. 12, § 142-2.1.

[39]  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("[I]t is the employer who has the duty . . . to keep proper records of . . . hours . . . ."); *Amaya v. Superior Tile & Granite Corp.*, 2012 U.S. Dist. LEXIS 5246 at *18 (S.D.N.Y. Jan. 17, 2012) ("The FLSA and Labor Law require only the employer, not the employee, to keep such records.");); N.Y. Comp. Codes R. & Regs., tit. 12, § 146-2.1.

[40]  N.Y. Lab. L. § 195(4); N.Y. Comp. Codes R. & Regs., tit. 12, § 146-2.1(4).

[41]  *See, e.g., Perry v. City of N.Y.*, No. 13-CV-1015 (VSB), 2018 U.S. Dist. LEXIS 49773, at *9 n.3 (S.D.N.Y. Mar. 26, 2018)(citing 29 C.F.R. § 785.47).

[42]  *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997); *see also Chichinadze v. BG Bar, Inc.*, 517 F. Supp. 3d 240, 252 (S.D.N.Y. 2021) (citing *Mt. Clemens Pottery Co.*, 328 U.S. at 687).

[43]  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011); *Chichinadze*, 517 F. Supp. 3d at 252 ( (citing *Mt. Clemens Pottery Co.*, 328 U.S. at 687).

[44]  *Angamarca v. Pita Grill 7 Inc.*, 11 Civ. 7777 (JGK)(JLC), 2012 U.S. Dist. LEXIS 108322, *10 (S.D.N.Y. Aug. 2, 2012) (cautioning that the employee should not speculate to carry his burden).

[45]  *Reich*, 121 F.3d 58, 69, 70 n.3 (2d Cir. 1997) ("A rule preventing employees from recovering for uncompensated work because they are unable to determine precisely the amount due would result in rewarding employers for violating [the] law.") (citing *Mt. Clemens*, 328 U.S. at 687).

[46]  *See* NYLL § 196-a(a); *Chichinadze*, 517 F. Supp. 3d at 253 (S.D.N.Y. 2021) ("[T]he NYLL requires that an employer demonstrate by a preponderance of the evidence that it in fact paid its employees wages, benefits and wage supplements.); citing *Canelas v. World Pizza, Inc.*, No. 14 Civ. 7748 (ER), 2017 U.S. Dist. LEXIS 50615, 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017) ("NYLL § 196-a provides that where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'") (quoting

affirmatively demonstrate that they in fact fully and properly compensated their employees.[47]

If Defendants cannot satisfy this burden, you must accept Class Representatives' evidence concerning the time they worked, even though the result would likely be only approximate.[48]

### H. Liquidated Damages

If you find that Defendants impermissibly paid Subclass Members pursuant to a tip credit, failed to pay Subclass Members the proper overtime rates, and/or failed to pay Subclass Members' spread of hours pay, you must also decide whether any such violations were made in good faith.

To satisfy this "good faith" requirement, employers have the burden of proving by a preponderance of the evidence that they took active steps to ascertain the wage and hour law's requirements and then acted to comply with them.[49] Good faith in this context requires more than ignorance of the prevailing law or uncertainty about its development.[50] Simple conformity with industry-wide practice fails to demonstrate good faith.[51] Similarly, a showing by the employer that they did not intentionally violate the law falls short of proving they acted in good faith.[52] Active good faith steps may include, for example, reliance on judicial decisions, the acts or opinions of a government agency, the advice of an attorney.[53] But a mere mistake will not suffice to avoid liability unless the employer took active steps to ascertain the legal requirements and to comply with them.[54]

Here, if you find that Defendants did not take active steps—such as seeking legal advice about whether their compensation practices complied with New York law—you must find that any violations of New York law were not made in good faith.

---

NYLL § 196-a(a)); *Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176 (PAE), 2016 U.S. Dist. LEXIS 75430, 2016 WL 3248493, at *27 (S.D.N.Y. June 9, 2016) (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88); *see generally Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. 2017) (discussing the FLSA and NYLL burden-shifting frameworks where an employer's payroll records are inaccurate or incomplete).

[47] *Velazquez v. Yoh Servs., LLC*, 2019 U.S. Dist. LEXIS 46746, at *22 (S.D.N.Y. Mar. 15, 2019).

[48] *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335, 338 n.17 (S.D.N.Y. 2005) ("Although this figure is inexact and possibly overinclusive, the Second Circuit has instructed that when choosing between an overinclusive estimate by an employee and an underinclusive one by an employer, it is not unreasonable for a district court to adopt the employee's estimate, for consistent with the lesson of Mt. Clemens . . . [this] place[s] the burden of inadequate record keeping on the employer.") (internal quotations and citations omitted); N.Y. Lab. L. § 196-a.

[49] *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 120 (2d Cir. 1997).

[50] *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 909 (3d Cir. 1991).

[51] *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 316-17 (S.D.N.Y. 2011) (citing *Reich v. S. New England Telecom. Corp.*, 121 F.3d 58, 71 (2d Cir.1997).

[52] *Reich*, 121 F.3d at 71.

[53] *Haifeng Xie v. Sakura Kai I Inc.*, No. 17-CV-7509 (ILG) (JO), 2019 U.S. Dist. LEXIS 62721, at *22 (E.D.N.Y. Apr. 11, 2019).

[54] *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) ("To avoid liability for liquidated damages, the employer must show that it "took 'active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them.'"")(quoting *Herman*, 172 F.3d at 142); *Chichinadze*, 517 F. Supp. 3d at 258 ("Under the NYLL, the employer faces a similar burden")(citing *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (observing that "courts have not substantively distinguished the federal standard from the current state standard of good faith").

## I. New Hire Notice Requirements

Under New York State law, at the time an employee is hired, the employer must provide the employee with a written notice stating, among other things, the following information:

1) the rate or rates of pay;
2) whether paid by the hour, shift, day, week, salary, piece, or commission;
3) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;
4) the employee's regular pay day;
5) the name of the employer and any "doing business as" names used by the employer;
6) the employers' contact information including maim address, mailing address and telephone number.[55]

Each time the employer provides such notice to an employee, the employer must obtain from the employee a signed and dated written acknowledgement of receipt of this notice, both in English and in the primary language of the employee, which the employer must preserve and maintain for six years.[56] The fact that an employer may have posted a notice about wages in the workplace is insufficient to meet these requirements. The employer must provide individualized written notices to each employee.[57]

If you find that Defendants failed to provide each Subclass Member with notices that included all of this information, then you must find that Defendant violated this provision of New York law.

## J. Wage Statement Requirements

New York State law also mandates that an employer must furnish each employee with a statement (commonly referred to as a "paystub") with every payment of wages, listing, among other things, the following information:

1) the dates of work covered by that payment of wages;
2) rate or rates of pay and basis thereof;
3) the regular hourly rate or rates of pay;
4) the overtime rate or rates of pay;
5) the number of regular hours worked;
6) the number of overtime hours worked; and
7) name of employee; name of employer; address and phone number of employer; and
8) allowances, if any, claimed as part of the minimum wage.[58]

---

[55] N.Y. Lab. L. § 195(1).

[56] *Id.*

[57] *See, e.g., Chichinadze*, 517 F. Supp. 3d at 259 ("posted notices do not meet the individualized notice requirements of NYLL § 195(1)(a)") (citing *Pineda v. Frisolino, Inc.*, No. 15 Civ. 3774 (GBD), 2017 U.S. Dist. LEXIS 139735, 2017 WL 3835882, at *12 n.15 (S.D.N.Y. Aug. 29, 2017)).

[58] N.Y. Lab. L. § 195(3).

If you find that Defendants failed to provide Subclass Members with wage statements that included all of the above-mentioned information, including that Valbella was taking a tip credit from Subclass Members' wages, then you must find that Defendants violated this provision of New York law.[59]

## K. Affirmative Defense

If an employer failed to provide their employees with wage statements that included all the legally required information, the employer may still avoid paying penalties for these violations if they can prove that they made a complete and timely payment of wages to the employee. It is the employers' burden to prove by a preponderance of evidence that they made a complete and timely payment of wages.[60]

Similarly, since February 27, 2015, if an employer failed to provide appropriate pay notices to an employee at the time they were hired the employer may still avoid paying penalties for these violations if they can prove that they made a complete and timely payment of wages to the employee.[61] This defense is not available for any failures by an employer to provide compliant new hire notices to their employees that occurred prior to February 27, 2015.[62] [63]

If you find that Defendants failed to provide Subclass Members with wage statements that included all the legally required information, you must then decide if Defendants have proved by a preponderance of the evidence that they made a complete and timely payment of wages to Subclass Members. Similarly, if you find that in the time period after February 27, 2015, Defendants failed to provide appropriate pay notices to Subclass Members at the time they were

---

[59] *See, e.g., Keawsri v. Ramen-Ya Inc.*, No. 17-cv-2406 (LJL), 2021 U.S. Dist. LEXIS 150399, at *42 (S.D.N.Y. Aug. 10, 2021) ("Section 195(3) has been interpreted to require a wage statement to expressly identify the per-hour amount of a tip credit and the total amount of the tip-credit allowance."); *see also Khereed v. W. 12th St. Rest. Grp. LLC*, 2016 U.S. Dist. LEXIS 16893, 2016 WL 590233, at *4 (S.D.N.Y. Feb. 11, 2016); *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015) (granting summary judgment and awarding statutory damages to employees because wage statements listed "amount of tips earned," but not the "tip credit allowance"); *Ametepe v. Peak Time Parking, Corp.*, 2021 U.S. Dist. LEXIS 59567, 2021 WL 1172669, at *6 (S.D.N.Y. Mar. 29, 2021) ("Courts have widely found that a missing element disqualified a document as a wage statement"); *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 2015 U.S. Dist. LEXIS 106154, 2015 WL 4757618, at *22 (S.D.N.Y. Aug. 12, 2015) (finding that wage statements did not satisfy section 195(3) because they "failed to indicate that the tip credit (i.e., an allowance claimed as part of the minimum wage) was being taken.").

[60] *See, e.g., Zhendong Liu v. Little Saigon Cuisine Inc.*, No. 18-CV-2181 (RPK) (VMS), 2021 U.S. Dist. LEXIS 189134, at *41 (E.D.N.Y. Sep. 30, 2021) ("Defendants' affirmative defense fails because they have not shown that they 'made complete and timely payment of all wages due.' As explained above, on the record at trial, I have not been able to determine whether or not defendants completely and timely paid all wages [which] means that defendants cannot meet their burden of establishing the affirmative defense on plaintiffs' wage-statement claims") (citing *Adonias v. Al Horno Lean Mexican Kitchen Inc.*, No. 16-CV-07266, 2018 U.S. Dist. LEXIS 142894, 2018 WL 4007643, at *11 (S.D.N.Y. Aug. 22, 2018) (rejecting defendants' affirmative defense under Sections 198(1-b) and 198(1-d) because defendants failed to show that they "made complete and timely payment of all wages due")).

[61] *See, e.g., Dudley v. Hanzon Homecare Servs.*, No. 15-cv-8221 (JMF), 2018 U.S. Dist. LEXIS 8112 at *11-12 (S.D.N.Y. Jan. 17, 2018).

[62] *Id.*

[63] **Defendants disagree with this charge. Defendants contend that the affirmative defense is retroactive. *See Marin v. Apple-Metro, Inc.*, 2020 WL 6157011, 13-CV-1417 (S.D.N.Y. 2020), *Hicks v. T.L. Cannon Mgmt. Corp.*, Case No. 13-CV-06455, 2018 WL 2440732 (W.D.N.Y.)**

hired, you must then decide if Defendants have proved by a preponderance of the evidence that they made a complete and timely payment of wages to Subclass Members.

In making this determination, you should consider that, under New York law, Valbella Midtown and Valbella Meatpacking were legally required to maintain—for at least six years—accurate records of their employees' daily and weekly hours worked as well as of the compensation the employees received.[64]

If you find that Defendants have not established that they made a complete and timely payment of wages to Subclass Members, then you must find that Defendants are responsible to pay penalties for their failure to provide proper notices and/or wages statements. If you find that Defendants established that they made a complete and timely payment of wages to Subclass Members, then they are not responsible for any penalties that could arise as a result of failing to provide proper notices.

### L. Joint Employer Status

If you find that Subclass Members are entitled to compensation for violations of any of the above mentioned laws, you must also decide whether (a) Defendant Ghatanfard was the Subclass Members' employer and thus also legally responsible for any violations, and (b) whether Valbella Meatpacking and/or Valbella Midtown constitute a single integrated enterprise such that they should be held jointly responsible for any violations that occurred at either entity.

An employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee."[65] "An entity 'employs' an individual […] if it 'suffer[s] or permit[s]' that individual to work.[66] An employee may simultaneously have multiple employers for the purposes, in which case, all these joint employers would be responsible, both individually and jointly, for compliance with all of the applicable provisions of the wage and hour laws.[67]

### M. Defendant Ghatanfard's Employer Status

The Plaintiffs and Defendants dispute whether or not Defendant David Ghatanfard was the employer of the employees at Valbella Midtown and Valbella Meatpacking. If Mr. Ghatanfard is considered to be the Valbella Midtown and/or Valbella Meatpacking Subclass Members' employer, he may be found liable for violations, if any, of the relevant wage and hour laws.

An individual – not just a company – may be held liable for unpaid wages if that individual is an "employer" within the meaning of the wage and hour laws. An individual is an employer if that person possesses the power to control a group of employees.[68] A person can be an employer

---

[64] N.Y. Lab. L. § 195(4); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.1; *see also Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 379 (E.D.N.Y. 2012).

[65] 29 U.S.C. § 203(d); see also *Olvera v. Bareburger Grp., LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014) (finding the statutory standard for determining if someone is an employer is "nearly identical" under both NYLL and the FLSA.).

[66] *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003) (quoting 29 U.S.C. § 203(g)).

[67] *Id.*

[68] *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

even where his or her control over the employees in question is restricted, indirect, or exercised only occasionally.[69]

There are two considerations you must assess in evaluating whether or not an individual is considered an employer. First, you must consider evidence as to the individual's "authority over management, supervision, and oversight of [a company's affairs] in general," *i.e.*, the individual's "operational control" of the companies.[70] In determining whether an individual has operational control, you may also consider whether the individual possesses an ownership interest in the corporation, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions.[71] Evidence than an individual is an owner or officer or makes corporate decisions which have nothing to do with an employee's function is insufficient on its own to demonstrate that an individual is an employer.[72]

The second inquiry is as to evidence of the individual's "direct control" over the plaintiff employees.[73] In this stage, you must consider: Whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.[74] No one factor is dispositive, rather each factor's impact on the analysis must be considered under the totality of the circumstances.[75] You may determine that an individual is an employer even without finding that he meets any or all of these factors.[76]

Again, an individual need not meet all of these factors or any of them in order to be an employer if the individual has the power to control the workers in question.[77] [78]

---

[69] *Irizarry*, 722 F.3d at 110 (citing *Herman, id.*).

[70] *Irizarry*, 722 F.3d at 107, 111 (alteration in original); *see also generally Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 1:16-cv-5735-GHW, 2019 U.S. Dist. LEXIS 43893, at *21 (S.D.N.Y. Mar. 18, 2019) (Woods J.).

[71] *Id.*

[72] *Salinas v. Starjem Restaurant Corp.,* 123 F. Supp.3d 442 (2015); *Irizarry,* 722 F.3d at 109.

[73] *Id.* at 722 F.3d at 111.

[74] *Carter v. Duchess Community College,* 735 F.2d 8, 12 (2d Cir. 1984).

[75] *Irizarry*, 722 F.3d. at 116 (finding, in a "close case," that under the totality of the circumstances that the defendant was an employer though he only satisfied two of the four *Carter* factors).

[76] *Chen*, 2019 U.S. Dist. LEXIS 43893, at *23 ("While a positive finding under the four *Carter* factors can be "can be *sufficient* to establish employer status" such a finding is not *necessary* to establish an employment relationship.") (citing *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003)).

[77] When assessing "whether an individual within a company that undisputedly employs a worker is personally liable for damages as that worker's 'employer,'" the Second Circuit applies the *Carter* factors, looks to the totality of the circumstances, and also considers the putative employers' level of "operational control." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-117 (2d Cir. 2013) (citing *Carter v. Dutchess Community Coll.*, 735 F.2d 8 (2d Cir. 1984)). "Evidence indicating an individual's direct control over the plaintiff employees' is not the "only evidence . . . to be considered"; "[i]nstead, evidence showing an individual's authority over management, supervision, and oversight of a company's affairs in general is relevant to the totality of the circumstances in determining the individual's operational control of the company's employment of the plaintiff employees." *Id.* at 110 (citations and internal quotation marks omitted). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* "Operational control" need not be exercised constantly for an individual to be liable under the FLSA. *Id.*

[78] **Defendants take issue with the instruction that none of the factors need to be present to be considered an employee. Defendants think a more appropriate charge would be that "an individual need not meet all of these factors to be considered an employer, an individual can be considered an employer based upon the totality of the circumstances." *Irizarry* at 109.**

23

Here, if you find that Mr. Ghatanfard exercised "operational control" or "direct control" over the Plaintiffs at Valbella Meatpacking and/or Valbella Midtown, then you must necessarily find that Mr. Ghatanfard was Subclass Members' employer at either or both of the locations at which you determine he exercised this control.

**N. Single Integrated Employer Status**

If you find that Valbella Meatpacking and/or Valbella Midtown violated any of the above-mentioned laws, you must decide whether they constitute what is legally referred to as "a single integrated enterprise" and are thus jointly responsible for any violations of that occurred at either entity.

New York State law allows for two different corporations to be treated as a single employer and thus to be jointly responsible for any wage and hour violations that occurred at either entity.[79] In essence, the inquiry centers around whether the two different entities are so intertwined that they may considered really one entity under the wage and hour laws.

In assessing whether the two Valbella restaurants were really a single, integrated employer, you should consider whether:

- Whether the restaurants shared common management,

- Whether they shared employees between locations,

- Shared common storage space,

- Use the same central payroll office or facility,

- Whether they had a common ownership,

- Whether they file taxes separately,

- Whether they maintain separate payrolls,

- Whether they maintain separate bank accounts,

---

[79] *Garcia v. Chirping Chicken NYC, Inc*., No. 15 CV 2335 (JBW) (CLP), 2016 U.S. Dist. LEXIS 32750 *20 (E.D.N.Y. Mar. 11, 2016) (internal citations omitted); *see also Zuccarini v. PVH Corp.*, No. 151755/15, 2016 N.Y. Misc. LEXIS 673, at *3-4 (Sup. Ct. N.Y. County Feb. 29, 2016) ("Under New York law, there are two well-established doctrines – the single and joint employer doctrines – that allow an employee to assert employer liability against an entity that is not formally his or her employer.") (internal quotation marks omitted). "[T]he single employer doctrine and FLSA share the same concerns for the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship." *Armata v. Unique Cleaning Servs., LLC,* No. 13 Civ. 3625 (DLI) (RER), 2015 U.S. Dist. LEXIS 180995, at *9 n.2 (E.D.N.Y. Sep. 14, 2015) (quoting *Hui L. Chen v. TYT E. Corp*., 2012 U.S. Dist. LEXIS 166557, at *9 (S.D.N.Y. Mar. 21, 2012)) ("*TYT East Corp.*") (internal quotation marks omitted). Moreover, the FLSA contains "the broadest definition [of employ] that has ever been included in any one act." *Zheng*, 355 F.3d at 69. This breadth, along with the Second Circuit's treatment of "employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances[,]" further supports application of the single employer doctrine to FLSA claims. *Lopez*, 2014 U.S. Dist. LEXIS 67121, at *10 (internal quotation marks omitted).

- Whether they shared common offices and/or equipment.[80]

None of these factors alone is determinative and you should look at the totality of the circumstances.[81] [82] In short, if you find there was an absence of an 'arm's length relationship" between the two Valbella restaurants, you must find that these entities were operating as a single integrated entity.[83]

### O. Employees Cannot Waive Protections of Wage and Hour Laws

The law does not allow employees to waive the protections of the wage and hour law at issue in this case. Accordingly, in deciding the issues in this case, you may not consider whether the Plaintiff agreed to be paid less than minimum wages, or to any of the other working conditions at issue in this lawsuit.[84]

### P. Calculating Damages

If you determine that Subclass Members are entitled to damages for any of the violations they have alleged, you will not be asked to perform any mathematical equations to determine the final amount of damages that they are owed. Instead, on the verdict sheet that you will be provided, you will be asked to answer questions and provide total numbers or average numbers, depending on what conclusions you reach. The Court will then use the information you provide to calculate the final amount of damages, if any, Plaintiffs are owed.

For example, if you find that Subclass Members were not paid any "spread of hours" pay, you will not be asked to determine the total amount of damages each Subclass Member may be owed, but instead will simply be asked to provide the total number of days that Subclass Members worked each week at Valbella Meatpacking and Valbella Midtown that spanned ten hours or more and for which they were not paid spread of hours pay.

---

[80] *See generally, e.g., Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996); *United Union of Roofers, Waterproofers, Allied Workers, Local No. 210*, No. 07 Civ. 224, 2012 U.S. Dist. LEXIS 128483, 2012 WL 4092598, at *10 (W.D.N.Y. Sept. 10, 2012); *Marin v. APU Foods Corp.*, No. 17 Civ. 3224 (MKB) (SMG), 2018 U.S. Dist. LEXIS 31891, at *5 (E.D.N.Y. Feb. 26, 201; *Khereed v. W. 12th St. Rest. Grp. LLC*, 2016 U.S. Dist. LEXIS 16893 (S.D.N.Y. Feb. 11, 2016)).

[81] *Lihli*, 80 F.3d at 747.

[82] **Defendants would like to add: The most significant factor to consider in determining whether the two Valbella restaurants were operating as a single integrated enterprise is whether there was a centralized control of labor relations. *See Chen v. TYT E. Corp.*, 2012 WL 5871617 at *3 (S.D.N.Y. Mar. 21, 2012); *Marin v. APU Foods Corp.*, 17-CV-3224, 2018 WL 1452236, at *2 (E.D.N.Y. Feb. 26, 2018), report and recommendation adopted, 17-CV-3224, 2018 WL 1459488 (E.D.N.Y. Mar. 23, 2018).**

[83] *Lihli*, 80 F.3d at 747. .

[84] *See* Final Instructions given in *Perkins v. Southern New England Telephone Co.*, No. 3:07-cv967, 2011 WL 5077837 (D.Conn.) (ECF No. 568); Mod. Crim. Jury Instr. 3rd Cir. 5.08, Mod. Crim. Jury Instr. 3rd Cir. 5.08. 37 *See Barrentine v. Ark.-Best Freight Sys., In*c., 450 U.S. 728, 740 (1981); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945); *Jewell Ridge Coal Corp. v. United Mine Workers of Am.*, 325 U.S. 161, 167 (1945); *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 311 (E.D.N.Y. 2009).

## V. SPECIFIC INSTRUCTIONS ON PLAINTIFFS' DISCRIMINATION CLAIMS

### A. National Origin Discrimination – New York City Law[85]

The law prohibits employment discrimination based on national origin.[86] Mr. Zivkovic claims that while he worked at Valbella Midtown he was subject to discrimination by the executive chef, Genco Luca, on the basis of his national origin.

Under the New York City Human Rights Law, Plaintiff must prove that he was treated "less well" at least in part because of his national origin.[87] It is sufficient to show that he suffered any negative, differential, or unequal treatment at least in part based on his national origin.[88] [89]

---

[85] N.Y.C. Admin. Code § 8-107(1)(a); *Mihalik v. Credit Agricole Cheuvreux North Amer., Inc.*, 715 F.3d 102 (2d Cir. 2013); *Ya-Chen Chen v. City Univ. of New York*, 805, F.3d 59, 75 (2d. Cir. 2015); *Baez v, Anne Fontaine USA, Inc.*, No. 14-cv-6621, 2017 WL 57858, at *5 (S.D.N.Y. Jan. 5, 2017); *Williams v. NYC Housing Auth.*, 61 A.D.3d 62, 73- 79 (N.Y. App. Div. 2009); *Clarke v. InterContinental Hotels Grp.*, PLC, No. 12 Civ. 2671, 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013); *Garrigan v. Ruby Tuesday, Inc.*, No. 14 Civ. 155, 2014 WL 2134613, at *3-5 (S.D.N.Y. May 22, 2014); *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 653-55, 657 (E.D.N.Y. 2015); 2B New York Pattern Jury Instructions (Civil), PJI 9:5A (2018); Pu*cino v. Verizon Wireless Commc'ns*, 618 F.3d 112, 118 (2d Cir. 2010); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 85 (2d Cir. 2010); *Passananti v. Cook Cty.*, 689 F.3d 655, 665-66 (7th Cir. 2012); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 810 (11th Cir. 2010); *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 861-62 (9th Cir. 2002); *Piston v. Cty. of Monroe*, No. 08–CV–6435P, 2012 WL 4490652, at *10 (W.D.N.Y. Sept. 27, 2012); *Davis v. City of N.Y.*, No. 09-CV669, 2010 WL 3895578, at *3 & n.1 (S.D.N.Y. Oct. 5, 2010).

[86] N.Y. Pattern Jury Instr. -Civil 9:5A.

[87] *Id.*

[88] **Defendants would add the following paragraph: In order for Plaintiff Zivkovic to recover, he must prove, by a preponderance of the evidence that (1) he was an employee of Valbella Midtown; (2) that Plaintiff Zivkovic is of Montenegrin descent; (3) that he was subjected to conduct by Defendant Luca because he was Montenegrin; (4) that the conduct was unwanted; (5) that he was subjected to the conduct by Defendant Luca because he was Montenegrin; (6) that as a result of the conduct, a reasonable person of Montenegrin descent would consider that he was being treated less well than other employees under all of the circumstances; (7) that Zivkovic actually considered that he was being treated less well than other employees because he was Montenegrin by Defendant Luca; (8) that Defendant Luca was exercising managerial or supervisory responsibilities at Valbella Midtown; and that Valbella Midtown knew of Defendant Luca's conduct and either accepted it or failed to take appropriate and corrective action; and (9) that Plaintiff Zivkovic was harmed because of the conduct. *See* N.Y. Pattern Jury Instr. -Civil 9:5A .**
*Plaintiff contends that this misstates the law under the NYCHRL. In any event, under the NYCHRL, a plaintiff must show only that he was treated less well because of a protected characteristic. Defendants do not point ot any authority requiring Plaintiff to prove that he subjectively believed he was treated less well because of his protected class at the time or that a reasonable person would have considered himself to have been treated less well. Moreover, under the NYCHRL, liability is imposed on the company for the acts of a supervisor without requiring knowledge/acceptance. See NY Admin Code 8-107(13)(b)(1).*

[89] **Defendants would add the following paragraph: However, if you find that the conduct amounted to nothing more than petty slights or trivial inconveniences, Defendants will not be liable to Plaintiff Zivkovic. *See* N.Y. Pattern Jury Instr. -Civil 9:5A.**
*Plaintiff contends that this instruction confuses the standard set forth in the next instruction. Specifically, Defendants bear the burden of establishing that the conduct was something that a reasonable person would consider "petty slights or trivial." See Mihalik, 715 F.3d at 111.*

Here, there is not dispute that Plaintiff Zivkovic is part of a protected class as he is of Montenegrin decent.  However, the Parties dispute whether or not Mr. Zivkovic was treated less well on the basis of his national origin.  If you find that Defendant Luca treated Plaintiff Zivkovic "less well" based at least in part on his national origin, you must find him and Valbella  Midtown liable for discrimination unless the Defendants prove by a preponderance of the evidence that Defendant Luca's conduct amounted to no more than what a reasonable victim of discrimination would consider "petty slights and trivial inconveniences."[90]

## B.  Discrimination – Damages[91]

If you find that Defendant Luca discriminated against Plaintiff Zivkovic then you must decide the amount of damages Mr. Zivkovic is entitled to as a result of this discrimination.  It is the duty of the Court to instruct you about the measure of damages. The fact that I will instruct you on the issue of damages should not be considered as indicating any view as to which party is entitled to a verdict in this case. Instructions as to the measure of damages are given for your guidance in the event you find in favor of the Plaintiff based on the other instructions I have given you.

"Damages" means the amount of money which will reasonably and fairly compensate Plaintiff Zivkovic and make him whole for any injury you find was caused by a Defendant you have found liable for discrimination or retaliation. It is Plaintiff Zivkovic's burden to prove for each of his claims; first, that his is entitled to damages, and second, the extent of the damages he has suffered. If damages are appropriate, Plaintiff Zivkovic is entitled to damages even if they are difficult to calculate.

Your award must be based upon evidence and not upon speculation, guesswork, or conjecture. On the other hand, the law does not require that Plaintiff Zivkovic prove the amount of his losses with mathematical precision but only with as much definiteness and accuracy as the circumstances permit. Justice and public policy require that a wrongdoer should bear the risk of any uncertainty that its own wrong has created, including where the nature of the defendant's wrong prevents a precise computation of damages.

## C.  Compensatory Damages[92]

In this case, Plaintiff Zivkovic seeks compensatory damages for injuries allegedly inflicted

---

[90] *See Mihalik v. Credit Agricole Chevreaux N. Am., Inc.*, 715 F.3d 102, 111 (2d Cir. 2013).

[91] Federal Employment Jury Instructions §§ 1:1200, 1:1201, 1:210, 1:1215, 1:1230, 1:1242, 1:1270, 1:290; 2B New York Pattern Jury Instructions, PJI 9:5A.1; Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264-65 (1946); Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946); Evans v. State of Conn., 967 F.Supp. 673, 680 (D. Conn. 1997) (accepting plaintiff's assumptions as to his future job performance and noting that "in determining damages, all doubts are to be resolved in favor of the injured party; the wrongdoer does not become the beneficiary of his own wrongful conduct.").

[92] Federal Employment Jury Instructions § 1:1215, 1:1230, 1:1242, 3:490; 2B New York Pattern Jury Instructions, PJI 9:5A.1; U.S. v. Vulcan Soc'y, Inc., 897 F. Supp.2d 30, 48-49 (E.D.N.Y. 2012); Osorio v. Source Enters., Inc., No. 05 Civ. 10029, 2007 WL 683985, at *1, 5 (S.D.N.Y. Mar. 2, 2007); EEOC Enforcement Guidance: Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991 (https://www.eeoc.gov/policy/docs/damages.html) (cited in Lore v. City of Syracuse, 670 F.3d 127, 154 (2d Cir.

by Defendants. You may award Plaintiff Zivkovic damages for certain harms he has suffered or is reasonably expected to continue to experience going forward. You may award Plaintiff Zivkovic reasonable compensation for any of the following types of harms that you find, based on a preponderance of the evidence, were caused by the unlawful conduct of Defendant Luca and/or Valbella Midtown and Mr. Ghatanfard: (1) loss of reputation or professional standing; (2) emotional or physical pain, suffering, mental anguish, emotional or physical distress, or loss of health; (3) inconvenience, embarrassment, or humiliation; and (4) loss of enjoyment of life, meaning Plaintiff's loss of the ability to enjoy certain aspects of her life, as a result of discrimination and/or retaliation committed by Defendants.

In calculating compensatory damages, do not consider how much money Plaintiff Zivkovic would have earned had he continued to work at Valbella. There is no requirement that evidence of the monetary value of intangible harms such as pain and suffering be introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damages and no expert or other testimony need be introduced. Still, it is necessary to arrive at a reasonable award that is supported by the evidence. Any award you make should be fair in light of the evidence presented at trial. In order to recover damages for mental and emotional distress, there must be credible testimony or evidence regarding the symptoms or other effects that Plaintiff Zivkovic suffered. Such evidence may consist solely of Plaintiff Zivkovic's own testimony about what he has experienced or inferences that you draw from other available evidence. Psychiatric or other medical diagnosis or treatment is not a precondition to recovery.

You may consider the testimony and demeanor of Plaintiff Zivkovic in determining a fair award for these harms. Emotional harm may manifest itself, for example, as sleeplessness, anxiety, stress, depression, difficulty concentrating, strain in personal and romantic relationships, embarrassment, humiliation, loss of self-esteem, excessive fatigue, or suicidal ideation. Physical manifestations may also occur – such as gastrointestinal disorders, back pain, headaches, skin rashes, changes in weight, or other conditions.

In determining the amount of a compensatory damages award, it may be impossible for you to arrive at a precise figure. Compensatory damages are intangible and difficult to assess. You must make the best and most reasonable estimate you can, from a fair and impartial point of view, of the amount of emotional pain, suffering, mental anguish, loss of enjoyment of life, injury to reputation, embarrassment and humiliation, and other noneconomic losses you find that Plaintiff Zivkovic has undergone and can probably be expected to suffer in the future as a result of Defendant's conduct.

### D. Punitive Damages[93]

If you find for Plaintiff Zivkovic on his discrimination claim, the law authorizes punitive damages for the purpose of punishing a wrongdoer and serving as an example or warning to other

---

2012)).

[93] Federal Employment Jury Instructions § 1:1310, 1:1311 1:1313, 1:1320, 1:1321, 1:1322, 1:1323, 1:1330; 3C Fed. Jury Prac. & Instr. § 170.64; *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-36 (1999); *U.S. v. Space Hunters, Inc.*, 429 F.3d 416, 427-28 (2d Cir. 2005); *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352 (2d Cir. 2001); Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 374 (2d Cir. 1988); *Goonewardena v. N.Y. State Workers' Comp. Bd.*, No. 09 Civ. 8244, 2016 WL 7439414, at *10 (S.D.N.Y. Feb. 9, 2016), adopted by 2016 WL 7441695 (S.D.N.Y. Dec. 22, 2016) (Abrams, J.).

defendants not to engage in similar unlawful conduct in the future. You may find a Defendants liable for punitive damages even if you award no actual damages or only a small amount of actual damages. Under the New York City Human Rights Law, a plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. A defendant need not know or recklessly disregard the possibility that it is violating applicable law. An award of punitive damages may be based on a showing of egregious or outrageous discrimination or retaliation, but egregious or outrageous acts or conduct are not required.[94]

If you decide that punitive damages are warranted here, you must determine the appropriate amount of punitive damages, if any. In so doing you may consider the following questions:

1) How offensive or reprehensible was Defendants' conduct?
2) What was the nature and extent of the harm done to Plaintiff Zivkovic?
3) How long did Plaintiff Zivkovic endure the discriminatory or retaliatory conduct?
4) Have Defendants engaged in a pattern of similar conduct towards the Plaintiff or others?
5) What was Defendants' response after they were informed of the discriminatory or retaliatory conduct claimed by Plaintiff Zivkovic?
6) What is the relationship or proportion between punitive damages and any actual damages you have found?
7) What amount is needed to deter repetition of misconduct of the type in question in light of Defendants' financial abilities?

The amount of an award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. However, the amount can be as large as you believe necessary to fulfill the purposes of punitive damages. You may consider the financial resources and net worth of a liable defendant in setting the amount of punitive damages.

## E. Employer Responsibility for Discrimination by its Employees or Agents

If you find that Defendant Luca is liable for national origin discrimination, you must also issue a verdict against Defendants Valbella Midtown and David Ghatanfard if you find any of the following to be true:

(1) Mr. Luca exercised managerial or supervisory responsibility at Valbella,

(2) Valbella Midtown and/or David Ghatanfard knew of Defendant Luca's conduct and allowed it to continue or failed to take immediate and appropriate corrective action; or

(3) Valbella Midtown and/or David Ghatanfard should have known of Defendant

---

[94] *Chauca v. Abraham*, 30 N.Y.3d 325 (2017); *see also Cush-Crawford v. Adchem Corp.*, 271 F.3d 352 (2d Cir. 2001); *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 374 (2d Cir. 1988); Goone*wardena v. N.Y. State Workers' Comp. Bd.*, No. 09 Civ. 8244, 2016 WL 7439414, at *10 (S.D.N.Y. Feb. 9, 2016), adopted by 2016 WL 7441695 (S.D.N.Y. Dec. 22, 2016) (Abrams, J.).

Luca's conduct yet failed to exercise reasonable diligence to prevent it.

It is not a defense to a claim of discrimination that an employer adopted antidiscrimination policies or provided training on those policies if the employer fails to enforce and follow those policies. Likewise, the fact that an employer may have conducted an investigation is not enough for an employer to satisfy its obligations to address possible discrimination. Valbella Midtown and/or David Ghatanfard are liable if they were negligent in handling, addressing, or preventing Defendant Luca's conduct.

In determining Valbella Midtown and/or David Ghatanfards' liability for Defendant Luca's conduct, you may consider factors such as: whether they adequately monitored the workplace; whether they were aware of prior complaints against Luca; whether they treated Plaintiff Zivkovic's complaints as seriously as they should have; whether they investigated Zivkovic's complaints promptly; whether they prejudged the results of the investigation; whether their investigation was thorough and adequate; the effectiveness of any measures that it did or did not take to address Zivkovic's complaints; whether they imposed immediate discipline on Defendant Luca; and whether any discipline was appropriate and effective.[95]

In sum, if you find that Defendant Luca discriminated against Plaintiff Zivkovic and you find that either:

1.      Mr. Luca exercised managerial or supervisory responsibility at Valbella;

2.      Valbella Midtown and/or Mr. Ghatanfard knew of the Mr. Luca's discriminatory conduct and failed to take immediate and appropriate corrective action; or

3.      Valbella Midtown and/or Mr. Ghatanfard should have known of the Mr. Luca's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct

then you must find that Valbella Midtown and/or Mr. Ghatanfard are also responsible for Mr. Luca's actions.

### F.  Battery

In this action, Plaintiff Zivkovic seeks damages for battery against Defendant Genco Luca. A person who intentionally touches another person, without that person's consent, and causes an

---

[95] Sources: N.Y.C. Admin. Code § 8-107(13)(b); *Chauca v. Abraham*, 841 F.3d 86, 90 (2d Cir. 2016); *Zakrzewska v. New Sch.*, 928 N.E.2d 1035, 1039 (N.Y. 2010); 2B New York Pattern Jury Instructions (Civil), PJI 9:5A (2018); Vance v. Ball St. Univ., 570 U.S. 421, 449 (2013); *Bazemore v. Friday*, 478 U.S. 385, 394-97 (1986); *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987-88 (1988); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 72-73 (1986); *Corning Glass Works v. Brennan*, 417 U.S. 188, 205-206 (1974); *Sassaman v. Gamache*, 566 F.3d 307, 314 (2d Cir. 2009); *Swenson v. Potter*, 271 F.3d 1184, 1993 (9th Cir. 2001); *Hall v. N.Y. City Dep't of Transp.*, 701 F. Supp. 2d 318, 332 (E.D.N.Y. 2010); *Presley v. Pepperidge Farm*, 356 F. Supp. 2d 109, 130 (D. Conn. 2005); *Lawrence v. Schuylkill Medical Center East*, 2012 WL 3536978, at *18 (M.D. Pa. Aug. 14, 2012); *Cowan v. City of Mt. Vernon*, No. 14-CV-8871, 2017 WL 1169667 at *6 (S.D.N.Y. March 28, 2017).

offensive bodily contact commits a battery and is liable for all damages resulting from their act.[96] A civil battery requires: (1) that the defendant intended to cause a harmful or offensive contact, or an imminent apprehension of such contact, with another person, and (2) that a harmful contact directly or indirectly results.[97]

Plaintiff claims Defendant Luca intentionally punched him in the stomach and injured him. If you find that Defendant Luca intentionally punched Plaintiff and that contact was offensive, you will find that Defendant Luca committed a battery. If you find that Defendant Luca did not intentionally punch Plaintiff, or that, although he did punch him, the contact with Plaintiff was not offensive, you will find that Defendant Luca did not commit a battery.[98]

### G. Respondeat Superior

New York State law imposes *respondeat superior* liability on employers for their employees' intentional torts—whereby the employer is responsible for the employee's actions— if the tortfeasor was acting within the scope of his employment.[99] An employee's conduct is within the scope of his employment if the employer could have reasonably foreseen the employee's tortious conduct.[100] The employer need not have foreseen the precise act or the exact manner of the injury as long as the general type of conduct may have been reasonably expected.[101] An employer is not responsible for torts committed by the employee for personal motivates unrelated to the furtherance of the employer's business.[102]

If you find that Defendant Luca committed battery against Mr. Zivkovic then you must decide whether or not those acts were committed by Mr. Luca within the scope of his employment at Valbella. If you find that they were committed by Mr. Luca within the scope of his employment or that Valbella Midtown and Mr. Ghatanfard should have reasonably expected the actions to occur, you must find them responsible as well.

### H. Battery - Damages

If you find that any of Defendants Luca, Valbella Midtown and/or Ghatanfard committed battery you must decide how much they should compensate Mr. Zivkovic for any injuries and expenses that resulted from the battery. Typical expenses usually includes any medical expenses, lost wages, or pain and suffering that the victim experienced.

---

[96] *Walia v. Vivek Purmasir & Assocs., Inc.*, 160 F. Supp. 2d 380, 393-94 (E.D.N.Y. 2000) ("The elements of a civil 'battery' [under New York law] are: (1) bodily contact, which is (2) harmful or offensive in nature, and (3) made with intent.") (quoting *Merzon v. Cnty. of Suffolk*, 767 F. Supp. 432, 448 (E.D.N.Y.1991)). *See also, e.g., McGrath v. Nassau Health Care Corp.*, 217 F. Supp. 2d 319, 333 (E.D.N.Y. 2002); *Rodriguez v. Express World Wide, LLC*, No. 12 CV 4572 (RJD)(RML), 2014 U.S. Dist. LEXIS 47978, at *24-25 (E.D.N.Y. Jan. 16, 2014); *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006).

[97] *Simms v. Chaisson,* 277 Conn. 319, 331, 890 A.2d 548 (2006).

[98] *Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 552 (D. Conn. 2006).

[99] *See Buck v. Zwelling,* 272 A.D.2d 895, 707 N.Y.S.2d 281, 282 (N.Y. App. Div. 2000).

[100] *Helbig v. City of New York,* 212 A.D.2d 506, 622 N.Y.S.2d 316, 318 (N.Y. App. Div. 1995).

[101] *Id.* (quoting *Riviello v. Waldron,* 47 N.Y.2d 297, 304, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (N.Y. 1979)); *McGrath v. Nassau Health Care Corp.*, 217 F. Supp. 2d 319, 334 (E.D.N.Y. 2002).

[102] *Swarna v. Al-Awadi,* 622 F.3d 123, 144 (2d Cir. 2010).

Dated: February 10, 2022

| | |
|---|---|
| **For Plaintiffs, Opt-in Plaintiffs and the Fed. R. Civ. P. Rule 23 Subclasses:** | **For Defendant Laura Christy LLC:** |
| JOSEPH & KIRSCHENBAUM LLP | DEALY, SILBERSTEIN & BRAVERMAN, LLP |

<table>
<tr><td>s/<em>Josef Nussbaum</em></td><td>s/<em>Maria Louis Bianco</em></td></tr>
<tr><td>D. Maimon Kirschenbaum<br>Josef Nussbaum<br>32 Broadway, Suite 601<br>New York, NY 10004<br>Tel: (212) 688-5640<br>Fax: (212) 688-2548<br>Maimon@jk-llp.com<br>jnussbaum@jk-llp.com</td><td>Milo Silberstein<br>Maria Louisa Bianco<br>Amanda E. Maguire<br>225 Broadway, Suite 1405<br>New York, NY 10007<br>Tel: (212) 385-0066<br>Fax: (212) 385-2117<br>msilberstein@dsblawny.com<br>mbianco@dsblawny.com<br>amaguire@dsblawny.com</td></tr>
</table>

| | |
|---|---|
| **For Defendant Laura Christy Midtown LLC:** | **For Defendants David Ghatanfard and Genco Luca:** |
| HAROLD, SALANT, STRASSFIELD & SPIELBERG | NEAL S. COMER – ATTORNEY AT LAW |

<table>
<tr><td>s/<em>Leonard I. Spielberg</em></td><td>s/<em>Neal S. Comer</em></td></tr>
<tr><td>Leonard I. Spielberg<br>81 Main St, Suite 205<br>White Plains, NY 10601<br>Tel: (914) 683-2500<br>Fax: (914) 683-1279<br>lenspielberg@gmail.com</td><td>Neal S. Comer<br>81 Main St<br>White Plains, NY 10601<br>Tel: (914) 683-5400<br>Fax: (914) 683-1279<br>comeresq@aol.com</td></tr>
</table>