UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/11/2022

PAVLE ZIVKOVIC, *on behalf of himself and others similarly situated*,

    Plaintiff,

v.

LAURA CHRISTY LLC d/b/a VALBELLA,
LAURA CHRISTY MIDTOWN LLC, DAVID
GHATANFARD, and GENCO LUCA,

    Defendants.

ORIGINAL

17-CV-00553 (GHW)

## JURY VERDICT FORM

We, the jury in the above-entitled action, render the following verdict on the questions submitted to us.

### I. QUESTIONS RELATING TO WAGE AND HOUR CLAIMS AGAINST DEFENDANT LAURA CHRISTY LLC ("VALBELLA MEATPACKING")

#### Question No. 1 – Written Notice of the Tip Credit

On the Subclass Members' claim that they were not given adequate written notice of the tip credit at Valbella Meatpacking, we find in favor of:

  Subclass Members __✓__ Valbella Meatpacking _____

*If the answer to Question No. 1 is "Subclass Members," answer Question No. 2. If the answer to Question No. 2 is "Valbella Meatpacking," skip Question No. 2 and proceed to Question No. 3.*

## Question No. 2 – Tip Credit Damages

For each year between January 25, 2011 and December 3, 2018, state the total number of hours that Subclass Members worked and were improperly paid at the tip credit hourly rate at Valbella Meatpacking:

| Year | Hours |
|------|-------|
| 2011 | 32,032 |
| 2012 | 32,032 |
| 2013 | 32,032 |
| 2014 | 32,032 |
| 2015 | 32,032 |
| 2016 | 32,032 |
| 2017 | 32,032 |
| 2018 | 32,032 |

## Question No. 3 – Spread of Hours Pay

On the Subclass Members' claim that they did not always receive spread of hours pay at Valbella Meatpacking, we find in favor of:

Subclass Members __✓__ Valbella Meatpacking _____

*If the answer to Question No. 3 is "Subclass Members," answer Question No. 4. If the answer to Question No. 3 is "Valbella Meatpacking," skip Question No. 4 and proceed to Question No. 5.*

## Question No. 4 – Spread of Hours Pay

State the number of spread of hour shifts Subclass Members worked each week and for which they were not paid spread of hours pay between January 25, 2011 and December 3, 2018, and then multiply that number by 52 to arrive at the annual total:

2011: number of spread of hour shifts worked per week __13__ x 52 weeks = __676__

2012: number of spread of hour shifts worked per week __13__ x 52 weeks = __676__

2013: number of spread of hour shifts worked per week __13__ x 52 weeks = __676__

2014: number of spread of hour shifts worked per week __13__ x 52 weeks = __676__

2015: number of spread of hour shifts worked per week __13__ x 52 weeks = __676__

2016: number of spread of hour shifts worked per week __13__ x 52 weeks = __676__

2017: number of spread of hour shifts worked per week __13__ x 52 weeks = __676__

2018: number of spread of hour shifts worked per week __13__ x 52 weeks = __676__

## Question No. 5 – Overtime Violations

On the Subclass Members' claim that they were not always paid the appropriate overtime rates at Valbella Meatpacking, we find in favor of:

Subclass Members __✓__   Valbella Meatpacking _____

*If the answer to Question No. 5 is "Subclass Members," answer Question No. 6.   If the answer to Question No. 5 is "Valbella Meatpacking," skip Question No. 6 and proceed to Question No. 7.*

## Question No. 6 – Overtime Violations

For each year between January 25, 2011 and December 3, 2018, state (a) the overtime rate the Subclass Members were paid in each year, and (b) the total number of hours the Subclass Members were paid at those rates:

| Year | Incorrect Overtime Rate Paid | Hours Paid at Incorrect Rate, if any | |
|---|---|---|---|
| 2011 | 5.00 | 768.96 | |
| 2012 | 5.00 | 876. | |
| 2013 | 5.00 | 913.1 | |
| 2014 | 6.25 * | 1232.5 | *Average |
| 2015 | 7.50 | 1860.75 | |
| 2016 | 11.25 | 2603.75 | |
| 2017 | 11.25 | 2386.75 | |
| 2018 | 13.42 * | 1989.5 | *Average |

## Question No. 7 - Liquidated Damages

*Only answer Question No. 7 if you answered "Subclass Members" on Question Nos. 1, 3, and/or 5. If you answered "Valbella Meatpacking" on all of Question Nos. 1, 3, and 5, skip Question No. 7 and proceed to Question No. 8.*

On the question of whether Valbella Meatpacking proved by a preponderance of the evidence that it took active good faith steps to ensure that it knew the legal requirements and that it was acting in accordance with those requirements, we find in favor of:

Subclass Members __✓__  Valbella Meatpacking _____

4

### Question No. 8 – New Hire Notices

On the Subclass Members' claim that they did not always receive proper written notices of their pay rate when they were first hired, we find in favor of:

Subclass Members __✓__  Valbella Meatpacking _____

*If the answer to Question No. 8 is "Subclass Members," answer Question Nos. 9 and 10. If the answer to Question No. 8 is "Valbella Meatpacking," skip Question Nos. 9 and 10, and proceed to Question No. 11.*

### Question No. 9 – New Hire Notice Penalties

For how many total eligible workweeks between April 8, 2011 and February 26, 2015 are Subclass Members entitled to a penalty for not being provided a new hire notice at Valbella Meatpacking?

(state number of eligible workweeks) __203__

### Question No. 10 – New Hire Notice Penalties

For how many total eligible workdays between February 27, 2015 and December 3, 2018 are Subclass Members entitled to a penalty for not being provided a new hire notice at Valbella Meatpacking?

(state number of eligible workdays) __1365__

### Question No. 11 – Wage Statements

On the Subclass Members' claim that they did not always receive proper wage statements that stated the allowances Valbella Meatpacking was taking from the Subclass Members' wages, we find in favor of:

Subclass Members __✓__  Valbella Meatpacking _____

*If the answer to Question No. 11 is "Subclass Members," answer Question No. 12. If the answer to Question No. 11 is "Valbella Meatpacking," skip Question No. 12, and proceed to Question No. 13.*

## Question No. 12 – Wage Statements Penalties

For how many total eligible workweeks between January 25, 2011 and December 3, 2018 are the Subclass Members entitled to a penalty for not being provided proper wage statements at Valbella Meatpacking?

(state number of eligible workweeks) __409__

## Question No. 13 – Affirmative Defense

*Only answer Question No. 13 if you answered "Subclass Members," to Question Nos. 8 and/or 11. If you answered "Valbella Meatpacking" on both Question Nos. 8 and 11, skip Question No. 13 and proceed to Question No. 14.*

On the claim that Valbella Meatpacking has proved by a preponderance of the evidence that it made a complete payment of wages to the Subclass Members, we find in favor of:

Subclass Members __✓__   Valbella Meatpacking _____

## Question No. 14 – Ghatanfard Employer Status

On the claim that Defendant David Ghatanfard was the Subclass Members' employer at Valbella Meatpacking, we find in favor of:

Subclass Members __✓__   Defendant Ghatanfard _____

## II. QUESTIONS RELATING TO WAGE AND HOUR CLAIMS AGAINST DEFENDANT LAURA CHRISTY MIDTOWN LLC ("VALBELLA MIDTOWN")

### Question No. 1 – Written Notice of the Tip Credit

On Subclass Members' claim that they were not given adequate written notice of the tip credit at Valbella Midtown, we find in favor of:

Subclass Members __✓__   Valbella Midtown _____

*If the answer to Question No. 1 is "Subclass Members," answer Question No. 2. If the answer to Question No. 2 is "Valbella Midtown," skip Question No. 2 and proceed to Question No. 3.*

### Question No. 2 – Tip Credit Damages

For each year between January 25, 2011 and December 3, 2018, state the total number of hours that Subclass Members worked and were improperly paid at the tip credit hourly rate at Valbella Midtown:

| Year | Hours |
|------|-------|
| 2011 | 30,706 |
| 2012 | 30,706 |
| 2013 | 30,706 |
| 2014 | 30,706 |
| 2015 | 30,706 |
| 2016 | 30,706 |
| 2017 | 30,706 |
| 2018 | 30,706 |

7

### Question No. 3 – Spread of Hours Pay

On the Subclass Members' claim that they did not always receive spread of hours pay at Valbella Midtown, we find in favor of:

Subclass Members __✓__   Valbella Midtown _____

*If the answer to Question No. 3 is "Subclass Members," answer Question No. 4. If the answer to Question No. 3 is "Valbella Midtown," skip Question No. 4 and proceed to Question No. 5.*

### Question No. 4 – Spread of Hours Pay

State the number of spread of hour shifts Subclass Members worked each week and for which they were not paid spread of hours pay between January 25, 2011 and December 3, 2018, and then multiply that number by 52 to arrive at the annual total:

2011: number of spread of hour shifts worked per week __13.12__ x 52 weeks = __682.24__

2012: number of spread of hour shifts worked per week __13.12__ x 52 weeks = __682.24__

2013: number of spread of hour shifts worked per week __13.12__ x 52 weeks = __682.24__

2014: number of spread of hour shifts worked per week __13.12__ x 52 weeks = __682.24__

2015: number of spread of hour shifts worked per week __13.12__ x 52 weeks = __682.24__

2016: number of spread of hour shifts worked per week __13.12__ x 52 weeks = __682.24__

2017: number of spread of hour shifts worked per week __13.12__ x 52 weeks = __682.24__

2018: number of spread of hour shifts worked per week __13.12__ x 52 weeks = __682.24__

### Question No. 5 – Overtime Violations

On the Subclass Members' claim that they were not always paid the appropriate overtime rates at Valbella Midtown, we find in favor of:

Subclass Members __✓__   Valbella Midtown _____

*If the answer to Question No. 5 is "Subclass Members," answer Question No. 6. If the answer to Question No. 5 is "Valbella Midtown," skip Question No. 6 and proceed to Question No. 7.*

## Question No. 6 – Overtime Violations

For each year between January 25, 2011 and December 3, 2018, state (a) the overtime rate the Subclass Members were paid in each year, and (b) the total number of hours the Subclass Members were paid at those rates:

| Year | Incorrect Overtime Rate Paid | Hours Paid at Incorrect Rate, if any | |
|---|---|---|---|
| 2011 | 5.00 | 135 | |
| 2012 | 5.00 | 631 | |
| 2013 | 6.54 * | 409.26 | *Average |
| 2014 | 8.07 | 867 | |
| 2015 | 7.50 | 58 | |
| 2016 | 9.38 | 409.26 | *Average |
| 2017 | 11.25 | 499.05 | |
| 2018 | 13.42 | 371.55 | |

## Question No. 7 - Liquidated Damages

*Only answer Question No. 7 if you answered "Subclass Members" on Question Nos. 1, 3, and/or 5. If you answered "Valbella Midtown" on all of Question Nos. 1, 3, and 5, skip Question No. 7 and proceed to Question No. 8..*

On the question of whether Valbella Midtown acted in good faith to ensure that it knew the legal requirements and acted in accordance with those requirements, we find in favor of:

Subclass Members ✓    Valbella Midtown _____

9

### Question No. 8 – New Hire Notices

On the Subclass Members' claim that they did not receive proper written notices of pay rate when they were first hired, we find in favor of:

Subclass Members __✓__   Valbella Midtown _____

*If the answer to Question No. 8 is "Subclass Members," answer Question Nos. 9 and 10. If the answer to Question No. 8 is "Valbella Midtown," skip Question Nos. 9 and 10, and proceed to Question No. 11.*

### Question No. 9 – New Hire Notice Penalties

For how many total eligible workweeks between April 8, 2011 and February 26, 2015 are Subclass Members entitled to a penalty for not being provided a new hire notice at Valbella Midtown?

(state number of eligible workweeks) __203__

### Question No. 10 – New Hire Notice Penalties

For how many total eligible workdays between February 27, 2015 and December 3, 2018 are Subclass Members entitled to a penalty for not being provided a new hire notice at Valbella Midtown?

(state number of eligible workdays) __1365__

### Question No. 11 – Wage Statements

On the Subclass Members' claim that they did not always receive proper wage statements that stated the allowances Valbella Midtown was taking from Subclass Members' wages, we find in favor of:

Subclass Members __✓__   Valbella Midtown _____

*If the answer to Question No. 11 is "Subclass Members," answer Question Nos. 12 and 13. If the answer to Question No. 11 is "Valbella Midtown," skip Question No. 12, and proceed to Question No. 13.*

### Question No. 12 – Wage Statements Penalties

For how many total eligible workweeks between January 25, 2011 and December 3, 2018 are Subclass Members entitled to a penalty for not being provided proper wage statements at Valbella Midtown?

(state number of eligible workdays) __409__

### Question No. 13 – Affirmative Defense

*Only answer Question No. 13 if you answered "Subclass Members," to Question Nos. 8 and/or 11. If you answered "Valbella Midtown" on both Question Nos. 8 and 11, skip Question No. 13 and proceed to Question No. 14.*

On the claim that Valbella Midtown has proved by a preponderance of the evidence that it made a complete payment of wages to Subclass Members, we find in favor of:

Subclass Members __✓__   Valbella Midtown _____

### Question No. 14 – Ghatanfard Employer Status

On the claim that Defendant David Ghatanfard was the Subclass Members' employer, we find in favor of:

Subclass Members __✓__   Defendant Ghatanfard _____

11

## III. DISCRIMINATION AND BATTERY CLAIMS

### Question No. 1 – Discrimination on the Basis of National Origin

On the claim that Defendant Luca discriminated against Plaintiff Zivkovic, we find in favor of:

Plaintiff Zivkovic __✓__   Defendant Luca _____

*If the answer to Question No. 1 is "Plaintiff Zivkovic," answer Question Nos. 2 through 6. If the answer to Question No. 1 is "Defendant Luca," skip Question Nos. 2 through 6 and proceed to Question No. 7.*

### Question No. 2 – Discrimination on the Basis of National Origin

On the claim that Valbella Midtown is liable for Defendant Luca's discriminatory conduct, we find in favor of:

Plaintiff Zivkovic __✓__   Valbella Midtown _____

### Question No. 3 – Discrimination on the Basis of National Origin

On the claim that Defendant Ghatanfard is liable for Defendant Luca's conduct, we find in favor of:

Plaintiff Zivkovic __✓__   Defendant Ghatanfard _____

### Question No. 4 – Discrimination – Compensatory Damages

A. If you answered "Plaintiff Zivkovic" to Question No. 1, state the amount that Defendant Luca must pay for Plaintiff's compensatory damages, including reputational harm or emotional distress.

$ __5,000—__

B. If you answered "Plaintiff Zivkovic" to Question No. 2, state the amount that Defendant Valbella Midtown must pay for Plaintiff's compensatory damages, including reputational harm or emotional distress.

$ __2,500—__

C. If you answered "Plaintiff Zivkovic" to Question No. 3, state the amount that Defendant Ghatanfard must pay for Plaintiff's compensatory damages, including reputational harm or emotional distress.

$ 2,500

### Question No. 5 – Discrimination – Punitive Damages

On the claim that Plaintiff Zivkovic is entitled to punitive damages, we find in favor of:

Plaintiff Zivkovic __✓__   Defendants Luca, Ghatanfard, and/or Valbella Midtown ____

*If the answer to Question No. 5 is "Plaintiff Zivkovic," answer Question No. 6. If the answer to Question No. 5 is "Defendants Luca, Ghatanfard, and/or Valbella Midtown" skip Question No. 6 and proceed to Question No. 7.*

### Question No. 6 – Discrimination – Punitive Damages

A. If you answered "Plaintiff Zivkovic" to Question Nos. 1 and 5, state the amount that Defendant Luca must pay for Plaintiff Zivkovic's punitive damages.

$ 20,000.—

B. If you answered "Plaintiff Zivkovic" to Question Nos. 2 and 5, state the amount that Valbella Midtown must pay for Plaintiff Zivkovic's punitive damages.

$ 450,000.

C. If you answered "Plaintiff Zivkovic" to Question Nos. 3 and 5, state the amount that Defendant Ghatanfard must pay for Plaintiff Zivkovic's punitive damages.

$ 200,000.—

### Question No. 7 – Battery

On the claim that Defendant Luca committed battery against Plaintiff Zivkovic, we find in favor of:

Plaintiff Zivkovic ____   Defendant Luca ____

*If the answer to Question No. 7 is "Plaintiff Zivkovic," answer Question Nos. 8 through 11. If the answer to Question No. 7 is "Defendant Luca," skip to the next section.*

13

### Question No. 8 – Battery – Damages

State the amount that Defendant Luca must pay for Plaintiff Zivkovic's compensatory damages as a result of any battery Defendant Luca committed.

$ _____

### Question No. 9 – Battery – *Respondeat Superior* of Valbella Midtown

On the claim that Valbella Midtown is responsible for any battery committed by Defendant Luca against Plaintiff Zivkovic under the doctrine of *respondeat superior*, we find in favor of:

Plaintiff Zivkovic _____   Valbella Midtown _____

If the answer to Question No. 9 is "Plaintiff Zivkovic," answer Question No. 10. If the answer to Question No. 9 is "Defendant Valbella Midtown," skip to Question No. 11.

### Question No. 10 – Battery – Damages

State the amount that Defendant Valbella Midtown must pay for Plaintiff's compensatory damages as a result of any battery Defendant Luca committed:

$ _____

### Question No. 11 – Battery – *Respondeat Superior* of Defendant Ghatanfard

On the claim that Defendant Ghatanfard is responsible for any battery committed by Defendant Luca against Plaintiff Zivkovic under the doctrine of *respondeat superior*, we find in favor of:

Plaintiff Zivkovic _____   Defendant Ghatanfard _____

If the answer to Question No. 11 is "Plaintiff Zivkovic," answer Question No. 12. If the answer to Question No. 11 is "Defendant Ghatanfard," skip to next section.

### Question No. 12 – Battery – Damages

State the amount that Defendant Ghatanfard must pay for Plaintiff's compensatory damages as a result of any battery Defendant Luca committed:

$ _____

## IV. SINGLE INTEGRATED EMPLOYER STATUS

### Question No. 1 – Whether Valbella Meatpacking and Valbella Midtown are a Single Integrated Entity

On the claim that Valbella Meatpacking and Valbella Midtown are a single integrated entity, we find in favor of:

Plaintiffs __✓__   Valbella Midtown and Valbella Meatpacking _____

_4.11.22 @ 2:45pm_
Date

ORIGINAL

15