UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAVLE ZIVKOVIC, on behalf of himself and
others similarly situated,

              Plaintiff,

    v.

LAURA CHRISTY LLC d/b/a VALBELLA,
LAURA CHRISTY MIDTOWN LLC, DAVID
GHATANFARD, and GENCO LUCA,

            Defendants.

17-CV-00553-GHW

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR
## ATTORNEYS' FEES AND COSTS

D. Maimon Kirschenbaum
Josef Nussbaum
Lucas C. Buzzard
**JOSEPH & KIRSCHENBAUM LLP**
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff and F.R.C.P. Rule 23 Class Members*

May 13, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... i

I. PRELIMINARY STATEMENT ............................................................................... 1

II. BACKGROUND ....................................................................................................... 2

III. ARGUMENT ............................................................................................................ 2

    A.    Under the NYLL, Plaintiffs are Entitled to an Award of $577,138.50 in Attorneys' Fees and $20,200.57 in Expenses to be Paid by Defendants ...................................... 2

        1. Class Counsel's Hourly Rates are Reasonable ..................................................... 3

            *a. Counsel's Experience, Historical Rates, and the Prevailing Market Rates in this District Support the Rates Sought* ............................................................. 5

            *b. The Relevant Johnson Factors Support the Requested Rates* ........................ 12

            *c. The Paralegal Rates Sought Are Reasaonable* ................................................ 14

        2. Class Counsel's Hours are Reasonable ................................................................ 14

        3. Plaintiffs' Expenses Are Reasonable ................................................................... 16

    B.    Class Counsel's Fees of One-Third of the Common Fund Should be Approved ...... 17

        1. Class Counsel's Requested Fee Award is Reasonable ........................................ 21

            *a. Counsel's Time and Labor & the Amount of the Fee in Relation to the Recovery Support Counsel's Requested Fees* ................................................. 22

            *b. The Risks of Litigation Support the Requested Fee* ...................................... 23

    C.    The Court Should Approve Fees for a Claims Administrator to be Paid from the Common Fund ...................................................................................................... 24

    D.    The Court Should Approve a Service Award of $15,000 for each of the Class Members who Testified at Trial to be Paid from the Common Fund ...................... 25

V. CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975)............................18

*Apolinario v. Luis Angie Deli Grocery, Inc.*, No. 14-cv-2328,
    2015 U.S. Dist. LEXIS 97330 (S.D.N.Y. July 27, 2015) ...................................3

*Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*,
    522 F.3d 182 (2d Cir. 2008).................................................................................3,4

*Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F. 3d 132 (2d Cir. 2008)....................13

*Brown v. Barnes & Noble, Inc.*, No. 16-cv-7333,
    2020 U.S. Dist. LEXIS 85442 (S.D.N.Y. May 14, 2020) ...................................9

*Brundle v. Wilmington Trust, N.A.*, 919 F.3d 763 (4th Cir. 2019)...................................19

*Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13-cv-3061,
    2014 U.S. Dist. LEXIS 79869 (S.D.N.Y. May 19, 2014) ...................................7

*Cnty of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990)....................1,18

*Champagne v. Colum. Dental, P.C.*, No. 18-cv-1390,
    2022 U.S. Dist. LEXIS 58037 (D. Conn. Mar. 30, 2022)....................................8,14

*Chang v. Philips Bryant Park LLC*, No. 17-cv-8816,
    2019 U.S. Dist. LEXIS 185297 (S.D.N.Y. Oct. 23, 2019) ...................................24

*Christian v. Metro. Specialty Labs, Inc.*, No. 17-cv-4721,
    2019 U.S. Dist. LEXIS 133543 (E.D.N.Y. Aug. 8, 2019)....................................8

*City of Almaty v. Ablyazov*, No. 15-cv-5345,
    2020 U.S. Dist. LEXIS 165825 (S.D.N.Y. Sept. 10, 2020)................................10

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ...........................................................18

*De Los Santos v. Just Wood Furniture, Inc.*,
    2010 U.S. Dist. LEXIS 15463 (S.D.N.Y. Feb. 2, 2010)......................................12

*Espinosa v. Perez*, No. 18-cv-8855,
    2020 U.S. Dist. LEXIS 14075 (S.D.N.Y. Jan. 27, 2020) ...................................11

*Farbotko v. Clinton County*, 433 F.3d 204 (2d Cir. 2005) ..............................................7

*Feng Chen v. Patel*, No. 16-cv-1130,
    2020 U.S. Dist. LEXIS 56666 (S.D.N.Y. Mar. 31, 2020) ...................................6

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) ................................................................24

*Fresno Cnty Employees Ret. Ass'n v. Isaacson*, 925 F.3d 62 (2d Cir. 2019) .................2,18,19

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)..............................22

*Gurung v. Malhotra*, 851 F. Supp. 2d 583 (S.D.N.Y. 2012) ...........................................6

*Hernandez v. JRPAC Inc.*, 14-cv-4176,
    2017 U.S. Dist. LEXIS 1988 (S.D.N.Y. Jan. 6, 2017) ........................................6

*In re Deutsche Bank AG Sec. Litig.*, No. 09-cv-01714,
    2020 U.S. Dist. LEXIS 103134 (S.D.N.Y. June 11, 2020)...................................22

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 03 Civ. 1548,
    2008 U.S. Dist. LEXIS 82085 (S.D.N.Y. Oct. 17, 2008) ....................................16

*Johnson v. Ga. Highway Express Inc.*, 488 F.2d 714 (5th Cir. 1974) ............................4

*Knox v. John Varvatos Enters.*, 520 F. Supp. 3d 331 (S.D.N.Y. 2021)...........................19,24,25

*Lochren v. Cnty of Suffolk*, 344 Fed. App'x 706 (2d Cir. 2009)......................................4,7

*Lizondro-Garcia v. Kefi LLC*, No 12-cv-1906,
    2015 U.S. Dist. LEXIS 85873 (S.D.N.Y. July 1, 2015) ......................................10

*Marquez v. Erenler, Inc.*, No. 12-cv-8580,
    2014 U.S. Dist. LEXIS 159128 (S.D.N.Y. Nov. 10, 2014)................................2,15,17

*McGlone v. Contract Callers Inc.*, 146 F. Supp. 3d 682 (S.D.N.Y. 2015)......................4

*Monzon v. 103W77 Partners, LLC*, No. 13-cv-5951,
    2015 U.S. Dist. LEXIS 30047 (S.D.N.Y. Mar. 5, 2015) ....................................11,22

*Muehe v. City of Boston*, No. 21-11080,
    2021 U.S. Dist. LEXIS 211316 (D. Mass. Nov. 2, 2021) ...................................11

*Millea v. Metro-North R.R.*, 658 F.3d 154 (2d Cir. 2011) ...............................................3

*Mugavero v. Arms Acres, Inc.*, No. 03-cv-05724,
    2010 U.S. Dist. LEXIS 11210 (S.D.N.Y. Feb. 9, 2010)......................................16

*Murphy v. Lajaunie*, No. 13-cv-6503,
    2018 U.S. Dist. LEXIS 221462 (S.D.N.Y. Feb. 2, 2018)....................................5,10

*Pierce v. Visteon Corp.*, 791 F.3d 782 (7th Cir. 2015)....................................................20

*Reiter v. MTA N.Y. City Trans. Auth.*, 457 F.3d 224 (2d Cir. 2006)................................12

*Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*,
    995 F. Supp. 835 (S.D. Ohio 2014) .....................................................................20

*Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-cv-7787,
    2019 U.S. Dist. LEXIS 132731 (S.D.N.Y. Aug. 7, 2019) ....................................6

*Shnyra v. State St. Bank & Trust Co.*, No. 19-cv-2420,
    2021 U.S. Dist. LEXIS 206488 (S.D.N.Y. Oct. 25, 2021) ...................................5

*Skiadas v. Acer Therapeutics Inc*., No. 19-cv-6137,
    2022 U.S. Dist. LEXIS 6620 (S.D.N.Y. Jan. 7, 2022) .........................................22

*Smith v. Cnty of Riverside*, No. 16-227,
    2019 U.S. Dist. LEXIS 170421 (C.D. Cal. June 17, 2019) ..................................12

*Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319 (D. Nev. 2014) ..............................................20

*Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240,
    2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012)..................................23

*Strauch v. Computer Scis. Corp.*, No. 14-cv-956,
    2020 U.S. Dist. LEXIS 133115 (D. Conn. July 27, 2020)....................................13

*Swartz v. HCIN Water St. Assocs., LLC*, No. 17-cv-4187,
    2018 U.S. Dist. LEXIS 186255 (S.D.N.Y. Oct. 31, 2018) ...................................10

*Taft v. Ackermans*, No. 02 Civ. 7951,
    2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) .......................................23

*Tiro v. Public House Invs., LLC*, No. 11-cv-7679,
    2013 U.S. Dist. LEXIS 129258  (S.D.N.Y. Sept. 10, 2013)................................14, 16

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316,
    2012 U.S. Dist. LEXIS 127890 (S.D.N.Y. Aug. 6, 2012) ....................................15

*Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-6094,
    2014 U.S. Dist. LEXIS 132186 (S.D.N.Y. Sept. 19, 2014)..................................6

*Widjaja v. Kang Yue USA Corp.*, No. 09-cv-2089,
2016 U.S. Dist. LEXIS 34038 (E.D.N.Y. Mar. 16, 2022) ...................................11

*Yuajian Lin v. La Vie En Schezuan Rest. Corp.*, No. 15-cv-9507,
2020 U.S. Dist. LEXIS 63446 (S.D.N.Y. Apr. 9, 2020).......................................6

*Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531,
2014 U.S. Dist. LEXIS 135635 (S.D.N.Y. Sept. 23, 2014)................................23,24

*Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018) ....................................5

**Statutes, Rules, and Regulations**

Fed. R. Civ. P. 23..............................................................................................................20

N.Y. Lab. Law § 198(1-a)...................................................................................................2

N.Y. Lab. Law § 663(1).......................................................................................................2

## I.       PRELIMINARY STATEMENT

Plaintiffs submit this memorandum of law in support of their motion for attorneys' fees and costs.[1] In this motion, Plaintiffs seek two forms of relief. First, as the prevailing parties, Plaintiffs and the Subclasses are entitled to recover reasonable attorneys' fees and costs from Defendants under the fee-shifting provisions of the New York Labor Law ("NYLL"). *See infra* at Part II.A. The amount of attorneys' fees to be awarded to Plaintiffs under the NYLL requires the Court to calculate the "presumptively reasonable fee" by reference to a "reasonable hourly rate" for the attorneys who staffed this case multiplied by a "reasonable number of hours" of work required to litigate this case. For the reasons discussed below, the "presumptively reasonable fee" Plaintiffs are entitled to recover from Defendants in this matter amounts to $575,063.50 in attorney and paralegal fees, and $20,200.57 in costs.

As a separate matter, Class Counsel, whose efforts resulted in a jury verdict that created a common fund for the benefit of the Subclasses, should be awarded attorneys' fees amounting to one-third of that common fund in addition to the costs expended by Class Counsel to litigate this matter. *See infra* at Part II.B. This is consistent with the terms of the retainer agreement in this case and the Notice sent to the Subclasses upon their certification, both of which informed Plaintiffs and the Subclasses that in the event of a successful outcome Class Counsel would apply for attorneys' fees amounting to one-third of the recovery. *See* Buzzard Decl. ¶ 60 & Exs. 4 & 5 (Notices0. It is also consistent with longstanding Second Circuit precedent holding that fee-shifting statues do not circumscribe the general norm that Class Counsel is entitled to recover fees amounting to a percentage of a common fund created by Counsel's efforts. *See Cnty of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327-28 (2d Cir. 1990) (holding that "fee-shifting

---

[1]  In support of this motion, Plaintiffs submit the May 13, 2022 declaration of Lucas C. Buzzard ("Buzzard Decl.") and exhibits thereto ("Buzzard Ex. [NUMBER]").

statutes are generally not intended to circumscribe the operation of the equitable fund doctrine" and that class counsel was entitled to fees under the common-fund doctrine despite a statutory fee-shifting provision); *Fresno Cnty Employees Ret. Ass'n v. Isaacson*, 925 F.3d 62, 67 (2d Cir. 2019) ("*Fresno County*") ("[R]egardless of whether a case is brought pursuant to a statute with a fee-shifting provision, if the parties settle the case by creating a common fund, common-fund principles control class counsel's fee recovery."). As the common fund created by the jury's verdict for the Subclasses amounts to $5,084,818.42, *see* Buzzard Decl. ¶ 35, Class Counsel is entitled to $1,694,939.47 in fees (one-third of that amount) plus an additional $20,200.57 in costs.

For the reasons set forth below, both the fees to be assessed to Defendants under the NYLL and the fees sought by Class Counsel are eminently reasonable given Counsel's experience, the amount of work performed on this case, the results obtained, and the substantial risk Class Counsel undertook (and continues to undertake) in accepting and litigating this case.

## II.      BACKGROUND

The procedural history of this matter is set forth in the Buzzard Declaration, which is incorporated by reference here. *See* Buzzard Decl. ¶¶ 4-35.

## III.      ARGUMENT

### A.      Under the NYLL, Plaintiffs are Entitled to an Award of $577,138.50 in Attorneys' Fees and $20,200.57 in Expenses to be Paid by Defendants.

The NYLL requires the award of attorneys' and costs to prevailing employees. *See* N.Y. Lab. Law §§ 198(1-a), 663(1). Because the jury found that Defendants violated the NYLL, plaintiffs are entitled to reasonable attorneys' fees and costs in addition to the judgment already entered in their favor. *See, e.g.*, *Marquez v. Erenler, Inc.*, No. 12-cv-8580, 2014 U.S. Dist. LEXIS 159128, at *2-4 (S.D.N.Y. Nov. 10, 2014) (Woods, *J.*).

The Second Circuit's approach to determining appropriate attorneys' fees under fee-

shifting statutes requires the Court to calculate a "presumptively reasonable fee" by finding: (1) a reasonable hourly rate for the attorneys' work; and (2) a reasonable number of hours of work required by the case. *See Millea v. Metro-North R.R.*, 658 F.3d 154, 166-67 (2d Cir. 2011). A reasonable hourly rate is one which a "paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008). This is referred to as the "presumptively reasonable fee approach" or the "lodestar" approach. *McGlone v. Contract Callers Inc*., 146 F. Supp. 3d 682, 584 (S.D.N.Y. 2015).

Here, both the hourly rates sought by Plaintiffs for the attorneys who worked on this case as well as the number of hours worked by those attorneys are reasonable.

### 1.   Class Counsel's Hourly Rates are Reasonable

In assessing the reasonableness of a proposed hourly rate, the Court must determine whether the rates requested are "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA N.Y. City Trans. Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (quotation marks omitted). To make this determination, "courts look to: (1) rates awarded in prior cases; (2) courts' own knowledge of hourly rates charged in the district; and (3) evidence submitted by the parties." *Apolinario v. Luis Angie Deli Grocery, Inc.*, No. 14-cv-2328, 2015 U.S. Dist. LEXIS  97330, at *4 (S.D.N.Y. July 27, 2015) (Woods, *J.*) (quotation marks omitted). The court should also consider "case-specific variables . . . relevant to the reasonableness of attorney's fees," including the *Johnson* factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount

involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Arbor Hill*, 522 F.3d at 186 n.3, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Lochren v. Cnty of Suffolk*, 344 Fed. App'x 706, 709 (2d Cir. 2009) (summary order) (courts need not "recite and make separate findings as to all twelve *Johnson* factors").

Plaintiffs seek the following hourly rates for the attorneys who worked on this case:

| Biller Name | Hourly Rate Sought |
|---|---|
| D. Maimon Kirschenbaum | $ 550.00 |
| Josef Nussbaum – senior associate rate (2017 – Dec. 2019) | $ 400.00 |
| Josef Nussbaum – partner rate (Jan. 2020 - present) | $ 500.00 |
| Denise A. Schulman | $ 500.00 |
| Lucas C. Buzzard | $ 400.00 |
| Leah M. Seliger | $ 400.00 |
| Paralegals | $ 125.00 |

The reasonableness of these requested rates is fully supported by the following considerations, which are discussed below in Section II.A.1.a.: (1) the attorneys' professional backgrounds and experience; (2) the rates previously approved for these attorneys by courts in this Circuit; (3) natural increases to the attorneys' rates to reflect inflation and professional growth; (4) the rates approved for comparable wage and hour/employment litigators in this District; and (5) evidence of the current prevailing market rates for employment and labor litigators in the New York City area. Further, as discussed in Section II.A.1.b., the requested rates are supported by the relevant "case-specific" *Johnson* factors: (1) the results obtained in this case (factor 8); and (2) the time, labor, level of skill, and preclusion of other employment that was required to successfully litigate this class action through trial (factors 1, 3, and 4).

a.    *Counsel's Experience, Historical Rates, and the Prevailing*
*Market Rates in this District Support the Rates Sought*

Class Counsel are attorneys with considerable experience litigating wage and hour class

actions in this district. *See, e.g.*, *Murphy v. Lajaunie*, 2018 U.S. Dist. LEXIS 221462, at *36

(S.D.N.Y. Feb. 2, 2018) (describing Joseph & Kirschenbaum as "a reputable law firm with

substantial experience litigating wage and hour class actions"); *Zivkovic v. Laura Christy LLC*,

329 F.R.D. 61, 74 (S.D.N.Y. 2018) (Woods, *J.*) ("[T]he attorneys of Joseph & Kirschenbaum

have substantial experience as lead or co-lead counsel in wage an hour actions in this District.");

*Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008, at 20:1-3 (S.D.N.Y. Dec.

22, 2015) (Sullivan, *J.*) ("I think Mr. Kirschenbaum and Ms. Schulman and their firm are the best

in breed – of firms doing this kind of work.") (Buzzard Decl., Ex. 8.). The firm's attorneys have

recovered over $100 million for thousands of food service workers in New York City and have

litigated cases that have changed the landscape of wage and hour class and collective litigation in

the food service industry. Buzzard Decl. ¶¶ 50-52 (citing cases). The background and experience

of each of the attorneys is set forth in the Buzzard Declaration. *See* Buzzard Decl. ¶¶ 38-49.

Plaintiffs understand that the hourly rates sought for the experienced litigators here – $550

managing partner rate for Kirschenbaum, $500 partner rates for Nussbaum and Schulman, and

$400 senior associate rates for Nussbaum (before he made partner), Buzzard, and Seliger – are at

the high end of, or above, a range that this Court recently found appropriate for experienced

employment litigators in this district. In *Shnyra v. State St. Bank & Trust Co.*, this Court found

that "'[c]ourts in this district have determined in recent cases that the range of appropriate fees

for experienced civil rights and employment litigators is between $250 and $450.'" *See* No. 19-

cv-2420, 2021 U.S. Dist. LEXIS 206488, at *9-10 (S.D.N.Y. Oct. 25, 2021) (Woods, *J.*) (quoting

*Feng Chen v. Patel*, No. 16-cv-1130, 2020 U.S. Dist. LEXIS 56666, at *8 (S.D.N.Y. Mar. 31,

2020), and citing *Yuajian Lin v. La Vie En Schezuan Rest. Corp.*, No. 15-cv-9507, 2020 U.S. Dist. LEXIS 63446, at *7 (S.D.N.Y. Apr. 9, 2020)).

While the cases this Court cited in *Shnyra* were recent, it is respectfully submitted that the ranges set forth in those cases – which are derived from lines of cases stretching back over a decade – no longer accurately reflect the current prevailing rates for employment litigators in this district. For example, the *Chen* case cited by this Court derived its $250-450 range from a decision issued in 2012. *See Chen*, 2020 U.S. Dist. LEXIS 56666, at *8 (citing *Gurung v. Malhotra*, 851 F. Supp. 2d 583 (S.D.N.Y. 2012)). The *Gurung* case, in turn, based its conclusion that "the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450" on a series of cases decided between 2007 and 2011. *See Gurung*, 851 F. Supp. 2d at 587 (citing cases). Similarly, the *Lin* case cited by this Court in *Shnyra* for the proposition that reasonable rates for "senior attorneys handling wage-and-hour cases" were "from $300 to $400," *see Shnrya*, 2021 U.S. Dist. LEXIS 206488, at *10, derived that range from a 2019 decision, *see Lin*, 2020 U.S. Dist. LEXIS  63446, at *7 (citing *Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-cv-7787, 2019 U.S. Dist. LEXIS 132731, at *16 (S.D.N.Y. Aug. 7, 2019)). That 2019 case derived its range from a 2017 decision,[2] which got that range from a 2014 decision,[3] which cited to an earlier 2014 decision that,[4] in turn, derived the $300-400 range from a series of cases decided between 2004 and 2011.[5] Based on the lineage of these cases, Plaintiffs respectfully submit for

---

[2] *See Li*, 2019 U.S. Dist. LEXIS 132731, at *16 (citing *Hernandez v. JRPAC Inc.*, 14-cv-4176, 2017 U.S. Dist. LEXIS 1988, at *8 (S.D.N.Y. Jan. 6, 2017)).

[3] *See Hernandez*, 2017 U.S. Dist. LEXIS 1988, at *8 (citing *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-6094, 2014 U.S. Dist. LEXIS 132186, at *25 (S.D.N.Y. Sept. 19, 2014)).

[4] *See Trinidad*, 2014 U.S. Dist. LEXIS 132186, at *25 (finding that the "norm" for "wage-and-hour cases in this District, appears to be between $300 and $400" (citing *Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13-cv-3061, 2014 U.S. Dist. LEXIS 79869, at *19 (S.D.N.Y. May 19, 2014), adopted by 2014 U.S. Dist. LEXIS 79037 (S.D.N.Y. June 9, 2014)).

[5] *See Castellanos*, 2014 U.S. Dist. LEXIS 79869, at *19 ("In labor and employment cases, courts in this district have approved hourly rates of $300-400 for partners." (citing cases from 2004 through 2011)).

the reasons discussed below that the $250-450 range no longer reflects current market realties.

When determining a reasonable hourly rate, the "rates used by the court should be current rather than historic hourly rates." *Lochren*, 344 Fed. App'x at 709. In *Farbotko v. Clinton County*, the Second Circuit warned against ascertaining a reasonable hourly rate solely by reference to "rates awarded in prior cases" where there was evidence of a divergence between the prevailing market rate and the rates used in prior case law. 433 F.3d 204, 208 (2d Cir. 2005). "Recycling rates awarded in prior cases without considering whether they continue to prevail," the Second Circuit explained, "may create disparity between compensation available under [42 U.S.C.] § 1988(b) and compensation available in the marketplace. This undermines § 1988(b)'s central purpose of attracting competent counsel to public interest litigation." *Id.* at 209. To guard against this outcome, the Second Circuit directed courts to evaluate "evidence proffered by the parties" that the prevailing market rate is different than the rates set forth in caselaw. *See id.* at 209-10.

More recently, Judge Bryant of the District of Connecticut succinctly articulated practical reasons why courts must ensure that the rates awarded reflect current market realities:

> As Plaintiff pointed out, back in 2008, the District of Connecticut applied an hourly rate of $400 to a civil rights litigator who secured a favorable jury verdict in a Title VII case. The affidavits . . . submitted in support of the partner's $450 hourly rate fee application, suggest that a partner specializing in employment law would bill somewhere between $325 and $450 in 2008. It has been more than a decade since these hourly rates were submitted, and it would be reasonable to infer that hourly rates have increased over time. Legal fees do not just cover the lawyer's salary—they cover staff salaries, employment benefits, membership and court fees, and myriad overhead expenses to keep a firm afloat. Based on the U.S. Bureau of Labor Statistics' Consumer Price Index Inflation Calculator, an hourly rate of $450 in 2008 is the equivalent buying power to $604.85 in February 2022 (the latest month with available data). The hourly rate range should therefore increase, because that is what the market requires. Put another way, this profession must be able to sustain itself. Accordingly, civil litigators should not be limited to hourly rates that have not adapted to the changing times.

*Champagne v. Colum. Dental, P.C.*, No. 18-cv-1390, 2022 U.S. Dist. LEXIS 58037, at *13-14

(D. Conn. Mar. 30, 2022) (internal citations and footnote omitted).

As noted above, the $250-450 range for experienced employment litigators in *Shynra* has its genesis in decisions predating 2012. If that range were simply updated for inflation, all the rates sought by the attorneys in this case would fit comfortably within it. *See Christian v. Metro. Specialty Labs, Inc.*, No. 17-cv-4721, 2019 U.S. Dist. LEXIS 133543, at *27 (E.D.N.Y. Aug. 8, 2019) ("[A]ttorney's fees, like other goods and services, increase in cost with inflation." (internal quotation marks omitted)). Specifically, based on the U.S. Bureau of Labor Statistics' Consumer Price Index Inflation Calculator, hourly rates of $250 and $450 in January 2012 have the equivalent buying power of $318.87 and $573.97 in April 2022 (the latest month with available data). *See* https://www.bls.gov/data/inflation_calculator.htm (last visited May 11, 2022). Thus, adjusted for inflation, the $250 to $450 range courts found appropriate for experienced employment litigators in 2012 equates to a range of $318 to $573 in 2022. The rates sought for the experienced employment litigators in this case – $550 managing partner rate for Kirschenbaum, $500 partner rate for Schulman and Nussbaum, and $400 senior associate rate for Nussbaum, Buzzard, and Seliger – fall well within that adjusted range.

There is ample evidence that the current prevailing market rates for experienced employment litigators in this district are more in line with the adjusted $318 to $573 range, rather than the historic $250 to $450 range. First, while Joseph & Kirschenbaum operates on a pure contingency model and does not charge its clients hourly rates, declarations submitted by attorneys from comparable employment litigation firms in support of recent fee applications in this district demonstrate that the rates sought in this case are in line with the market rate charged by employment litigators of comparable experience. For example, a July 2019 declaration submitted by Louis Pechman in support of a fee request for the Pechman Law Group (a similarly-

sized employment litigation firm), indicates that two associates that were 10 and 8 years out of law school at the time the application was made charged the firm's clients $400 per hour. *See* Buzzard Decl., Ex. 6 (Pechman Decl.) ¶¶ 38, 39. This is comparable to the $400 per hour senior associate rates sought for Buzzard, who is 12 years out of law school, and Nussbaum who was 8 years out of law school when this case was filed and 11 years out when he became a partner in January 2020. *See* Buzzard Decl. ¶¶ 39-40.

Second, there is evidence that other courts in this district are awarding hourly rates above the $250-450 range to employment litigators of comparable experience to the attorneys here. In *Brown v. Barnes & Noble, Inc.*, for example, Magistrate Judge Parker found the following rates to be appropriate: (1) $650 to partners with twenty years' experience litigating FLSA cases; (2) $500 to a partner with "almost 10 years of experience litigating FLSA cases"; and (3) $450 to a senior associate who had "more than 10 years of experience, including substantial experience litigating FSLA collective actions." No. 16-cv-7333, 2020 U.S. Dist. LEXIS 85442, at *9-10 (S.D.N.Y. May 14, 2020) (explaining that the court found these rates to be appropriate "based on [its] own knowledge of prevailing rates in FLSA collective actions and the case law in this District"). The rates sought for the attorneys here are fully comparable with those found appropriate in *Brown*: $550 for Kirschenbaum, a managing partner with 17 years' experience litigating FLSA cases; $500 for Schulman and Nussbaum, partners with over ten years of FLSA litigation experience; and $400 for Buzzard, a senior associate with over 10 years of experience including seven years of FLSA litigation experience. *See* Buzzard Decl. ¶¶ 38-41.

Third, accounting for inflation and professional growth, the rates sought in this case are supported by the rates awarded to J&K attorneys in prior cases. In assessing the reasonableness of a requested rate, an hourly rate awarded to an attorney in the past is "instructive," but such

previously-awarded rates are not frozen in time so as to require their same application over a period of years. *See, e.g.*, *Swartz v. HCIN Water St. Assocs., LLC*, No. 17-cv-4187, 2018 U.S. Dist. LEXIS 186255, at *6-7 (S.D.N.Y. Oct. 31, 2018) (finding previously awarded rates "particularly instructive" but then adjusting those rates for inflation). In other words, a court consider the effects of inflation as well as the attorney's professional growth over time. *See City of Almaty v. Ablyazov*, No. 15-cv-5345, 2020 U.S. Dist. LEXIS 165825, at *11 (S.D.N.Y. Sept. 10, 2020) (explaining that "[i]t is reasonable for a lawyer's rate to increase as he or she gains experience" and considering inflation when determining the appropriateness of a requested fee).

Here, Kirschenbaum was approved an hourly rate of $450 in 2015 and again in 2018. *See Lizondro-Garcia v. Kefi LLC*, No 12-cv-1906, 2015 U.S. Dist. LEXIS 85873, at *19-20 (S.D.N.Y. July 1, 2015); *Murphy*, 2018 U.S. Dist. LEXIS 221462, at *36. Accounting for inflation, Kirschenbaum's $450 rate awarded in 2015 has the same buying power as $556 in April 2022.[6] Thus, his $550 rate sought is eminently reasonable because it reflects an overall increase that is lower than the rate of inflation. In 2016, Nussbaum was approved at a rate of $325 in the Eastern District, a rate which has the same buying power as $395 in April 2022.[7] *See Quito v Kuo-Yang Design and Construction, Inc. et al.*, No. 14-cv-3926 (E.D.N.Y.), Dkt. Nos. 50-52, and entry at 3/30/2016. This was, of course, almost four years before Nussbaum was named partner and more than six years ago. Similarly, in 2016, one year after he began working at JK, Buzzard was approved at a rate of $300 in the Eastern District, a rate which has the same buying power as $364 in March 2022.[8] *See Widjaja v. Kang Yue USA Corp.*, No. 09-cv-2089, 2016 U.S. Dist. LEXIS 34038, at *8 (E.D.N.Y. Mar. 16, 2022). In 2018, one year after she became a partner, Schulman

---

[6] *See* https://www.bls.gov/data/inflation_calculator.htm.
[7] *See id.*
[8] *See id.*

was approved at a partner rate of $400 in this district, which equates to $463 March 2022.[9] *See Murphy*, 2018 U.S. Dist. LEXIS 221462, at *36. While the rates currently sought for these attorneys ($400 for Buzzard and $500 for Nussbaum and Schulman) exceed the rate of inflation, the additional increase is explained by the substantial experience gained by these attorneys in the interim (6 years of employment litigation for Buzzard and Nussbaum, two years of partner-level experience for Nussbaum, and four years of partner-level experience for Schulman).

Finally, "the Court may rely on survey evidence as a cross-check on any fee award to ensure that it is reasonable." *Espinosa v. Perez*, No. 18-cv-8855, 2020 U.S. Dist. LEXIS 14075, at *10-11 (S.D.N.Y. Jan. 27, 2020). Here, the rates sought by Plaintiffs in this case are fully supported by the Wolters Kluwer 2021 Real Rate Report, a survey of attorney billing rates taken from invoice data. Buzzard Decl., Ex. 7 (Wolters Kluwer Report Excerpts). Courts across the country have repeatedly relied on the Real Rate Report to determine the prevailing market rates for attorneys in different markets. *See, e.g.*, *Espinosa*, 2020 U.S. Dist. LEXIS 14075, at *10-11; *Muehe v. City of Boston*, No. 21-11080, 2021 U.S. Dist. LEXIS 211316, at *12 (D. Mass. Nov. 2, 2021) (collecting cases and observing that "[s]everal courts have relied on [the Real Rate Reports] because of their large sample size and accurate reflection of market rates"); *Smith v. Cnty of Riverside*, No. 16-227, 2019 U.S. Dist. LEXIS 170421, at *5 (C.D. Cal. June 17, 2019) (collecting cases). As relevant here, the 2021 Real Rate Report found that the mean 2021 rates for employment and labor attorneys in New York City were $673 for partners and $477 for associates. *See* Buzzard Decl., Ex. 7 at 119. These rates are substantially higher than the rates sought by Plaintiffs here. Indeed, even considering the size of Joseph & Kirschenbaum, the Real Rate Report indicates the rates here are reasonable because the 2021 mean partner rate for

---

[9] *See id.*

employment and labor partners in New York firms with 50 lawyers or fewer was $593, which is well above all the partner rates sought in this case. *See id.* at 184.

For all the above reasons, this Court should award the requested attorney rates.

> **b.      The Relevant Johnson Factors Support the Requested Rates**

The appropriateness of the requested rates is amply supported by consideration of the "case-specific" *Johnson* factors, the most important of which is factor 8 – "the degree of success obtained by plaintiff." *De Los Santos v. Just Wood Furniture, Inc*., 2010 U.S. Dist. LEXIS 15463, at *5 (S.D.N.Y. Feb. 2, 2010). Here, the efforts of J&K's attorneys achieved a remarkable degree of success. The Complaint in this action alleged seven claims for relief against Defendants on behalf of a collective/class categorized as follows: (1) two claims brought under the FLSA (minimum wage and overtime violations) brought on behalf of a collective; and (2) five claims brought under the NYLL on behalf of a class (minimum wage, overtime, spread of hours, wage notice violations, and wage statement violations). *See* ECF No. 1 (Compl.) ¶¶ 52-92.

Over the course of this litigation, Plaintiffs successfully: (1) negotiated a stipulation providing for notice of this lawsuit to be sent to members of a potential FLSA collective, *see* ECF No. 35 (Stipulation and Order); and (2) moved for certification of two subclasses of employees of the two Valbella restaurants pursuant to Fed. R. Civ. P. 23, *see Zivkovic*, 329 F.R.D. 61. Plaintiffs maintained these subclasses, which together have nearly 400 employees, all the way through trial and a jury verdict, overcoming Defendants' attempts to decertify. *See, e.g.*, ECF No. 285 (Order) (denying Defendant Laura Christy Midtown LLC's motion to decertify). Plaintiffs' success at trial – which the parties stipulated would be limited to the five NYLL class claims and Plaintiff Zivkovic's individual claims of discrimination and battery, *see* ECF No. 253 (Proposed Joint Pretrial Order) – was excellent. Most pertinently, Plaintiffs secured a jury verdict of

approximately $5 million for the Subclasses on all five of the NYLL class claims. *See* ECF No. 283 (Verdict). In fact, the jury found for the Subclasses on *every* disputed issue at trial. *Id.* Counsel's ability to successfully certify, maintain, and obtain a uniformly favorable verdict for the Rule 23 Subclasses strongly supports the requested hourly rates. *Cf. Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F. 3d 132, 152-53 (2d Cir. 2008) (noting that where a case was brought primarily to secure relief on behalf of an FLSA collective, the "reasonableness of the attorney's fees incurred linked directly to the ability to maintain the case as an FLSA collective" and approving a fee reduction where plaintiff failed to certify a collective); *Strauch v. Computer Scis. Corp.*, No. 14-cv-956, 2020 U.S. Dist. LEXIS 133115, at *21 (D. Conn. July 27, 2020) (awards at the "high end of the fee spectrum" appropriate where class counsel secured a favorable jury verdict on behalf of an FLSA collective and two subclasses made up of some 900 employees).

In addition to achieving a "clean sweep" of the class claims, Plaintiffs also broke new legal ground on an important issue of New York law by successfully convincing this Court to break with the Appellate Division, First Department and decisions by other district judges in this Circuit to hold that the primary wage claim in this case – the NYLL tip credit minimum wage claim – does not have an affirmative defense. *See* ECF Nos. 259 (Pretrial Memorandum), 288 (Trial Tr.) at 11-25 (oral decision). Moreover, Plaintiff Zivkovic obtained a remarkable verdict on his individual NYCHRL discrimination claim, with the jury awarding him compensatory and punitive damages totaling $680,000. *See* ECF No. 283 (Verdict). Again, the degree of success achieved on these matters fully support the hourly rates sought by Plaintiffs.

*Johnson* factors 1, 3, and 4 – which address the time, labor, level of skill, and preclusion of other employment required to successfully litigate this class action through trial – also favor an award of fees at the high end of the prevailing rates. First, given the relatively few civil cases

that proceed to jury trial in federal court, courts have determined that an attorney who works on a case from its inception through to a jury trial (like attorney Nussbaum did here) is entitled to "a fee at the high range of the prevailing rate." *Champagne*, 2022 U.S. Dist. LEXIS 58037, at *10. Similarly, rates at the high end of the range are warranted here because the level of skill required to successfully prevail at trial – especially a wage and hour class action trial – is necessarily greater than work performed at earlier stages in the litigation. *See id.* at * 11 (noting that a higher rate was warranted because, *inter alia*, "trial necessitates the use of skills that need not be performed at other stages of litigation");*Tiro v. Public House Invs., LLC*, No. 11-cv-7679, 2013 U.S. Dist. LEXIS 129258, at *39 (S.D.N.Y. Sept. 10, 2013) ("Courts have recognized that wage and hour cases involve complex legal issues."). Finally, the "preclusion of other work" factor "weighs in favor of a higher rate" here because, as the time entries for Nussbaum and Buzzard show, these two attorneys "focused most or all of [their] attention as this matter ramped up for trial and during trial." *Champagne*, 2022 U.S. Dist. LEXIS 58037, at *10.

In sum, for all of the reasons set forth above, the hourly rates sought here are reasonable.

### c.    The Paralegal Rates Sought Are Reasonable

Plaintiffs seek an hourly rate of $125 for the six paralegals who staffed this case at various times. *See* Buzzard Decl. ¶¶ 43-49 (listing the paralegals' qualifications and experience). This rate is routinely found to be reasonable in this district. *See, e.g., Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2012 U.S. Dist. LEXIS 127890, at *14 (S.D.N.Y. Aug. 6, 2012).

### 2.    Class Counsel's Hours Are Reasonable

"To determine a reasonable number of hours of work for a particular case, courts first look for documentation in the form of contemporaneous time records specifying, for each attorney, the date, the hours expended, and the nature of the work done." *Marquez*, 2014 U.S. Dist. LEXIS

159128, at *7 (quotation marks omitted). Next, courts "look to their own familiarity with the case and experience generally. Because attorneys' fees are dependent on the unique facts of each case, the resolution of the issue is committed to the discretion of the district court." *Id.* at *7-8 (cleaned up). "Finally, billing judgment must be factored into the equation." *Id.* at *8 (quotation omitted)

Here, this Court is long familiar with the claims in this case and the history of the litigation. Indeed, the Court oversaw a one-and-a-half-week jury trial in this matter. The time for which Plaintiffs now seek reimbursement amounts to approximately 1,250 hours of attorney time and 101 hours of paralegal time since the inception of this case in January 2017, all of which was reasonable and attributable to successfully litigating this matter to its conclusion. Among other things, Class Counsel took or defended 14 depositions; fully briefed a motion for class certification; submitted letter briefs regarding discovery issues; attended two mediation sessions and engaged in additional settlement efforts; provided discovery responses from the Named and Opt-In Plaintiffs; reviewed tens of thousands of pages of documents produced by Defendants and third party payroll service providers; drafted more than 90% of the Parties' proposed joint pretrial order, proposed jury instructions, and proposed verdict sheet that were submitted to the Court; briefed two successful motions in limine; briefed a pretrial memorandum on the affirmative defense tip credit issue that was ultimately successful; prepared for trial, including by prepping witnesses; and litigated a 7-day class action trial. *See* Buzzard Decl. ¶¶ 4-30.

Class Counsel have submitted a compilation of their contemporaneous time records for the Court's consideration and have included a chart breaking down the hours and requested rates for each person at the firm who worked on this matter. *See* Buzzard Decl. ¶ 55 & Exs. 1 (attorney time), 2 (paralegal time). Those records have been edited to remove any duplicative or purely

administrative items, and all entries for travel time have been reduced by half.[10] A review of those records demonstrates that Class Counsel staffed this case leanly and effectively. Most of the work performed on this case was completed by Nussbaum, who clocked some 856 of the 1,250 total attorney hours. The other significant billers were Kirschenbaum, who provided general management and support throughout the life of the case, and Buzzard, who occasionally assisted with motion briefing before stepping in full time to assist with preparing for trial and second chairing the trial itself. This efficient staffing had demonstrable results: in litigating this case from inception through discovery, class certification, and then a class action jury trial, Class Counsel expended less than 1,300 attorney hours. This is extremely efficient compared to the hours expended in comparably sized class actions. *See, e.g.*, *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *5-11, 38 (counsel "expended more than 1,300 hours" over the course of less than two years found "reasonable" in a restaurant wage and hour class action that involved initial discovery, class certification, mediation and settlement). The Court should find that all attorney and paralegal hours spent on this case were reasonable under the circumstances and include every hour expended in its calculation of the presumptively reasonable fee.

### 3.    Plaintiffs' Expenses Are Reasonable

As the prevailing party, Plaintiffs are entitled to recover costs as well as attorneys' fees. *See* N.Y. Lab. Law §§ 198(1-a), 663(1). Costs are defined as "compensation for those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Mugavero v. Arms Acres, Inc.*, No. 03-cv-05724, 2010 U.S. Dist. LEXIS 11210, at *37-38 (S.D.N.Y. Feb. 9, 2010) (quotation marks omitted). An itemized list of expenses incurred by

---

[10] The time requested includes the hours spent on this fee application. *See J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 03 Civ. 1548, 2008 U.S. Dist. LEXIS 82085, at *51 (S.D.N.Y. Oct. 17, 2008) (finding plaintiff was "entitled to legal fees for the preparation of its fee application").

Class Counsel is attached as Exhibit 3 to the Buzzard Declaration. Plaintiffs request reimbursement for court filings and daily transcript fees, as well as expenses incurred for process servers, depositions, and interpreters. These costs are all reasonable and have been allowed in similar cases. *See Marquez*, 2014 U.S. Dist. LEXIS 159128, at *8-9 (reimbursement for court filings, transcript fees, process service fees, deposition fees, and interpreter fees).

For all the above reasons, the Court should order Defendants to pay $575,063.50 in attorneys' fees and $20,200.57 in costs pursuant to the fee-shifting provisions of the NYLL.

**B.     Class Counsel's Fees of One-Third of the Common Fund Should Be Approved**

In addition to awarding Plaintiffs the reasonable fees and expenses outlined above per the fee-shifting provisions of the NYLL, the Court should approve Class Counsel's request for $1,694,939.47 in fees, which amounts to one-third of the common fund recovered for the Subclasses in this matter. *See* Buzzard Decl. ¶ 35. To be clear, the issue discussed above – which analyzes the amount of fees for which *Defendants* are liable pursuant to the fee-shifting provisions of the NYLL – is separate and distinct from the issue discussed in this Section – which is the compensation to which Class Counsel is entitled from the common fund created by virtue of Counsel's efforts in obtaining a favorable jury verdict on behalf of the Subclasses.

Following the lead of the Supreme Court, the Second Circuit has consistently held that where a class action has been brought under a fee-shifting statute, the "common-fund doctrine" – under which class counsel is generally entitled to a percentage of the amount recovered for the class – operates independently from, and is not circumscribed by, the fee-shifting nature of the statute. *See Cnty of Suffolk*, 907 F.2d at 1327-28 (holding that "fee-shifting statutes are generally not intended to circumscribe the operation of the equitable fund doctrine" and that class counsel was entitled to fees under the common-fund doctrine despite a statutory fee-shifting provision);

*Fresno County*, 925 F.3d at 67 ("We make clear today what has long been implicit in this Circuit's jurisprudence: regardless of whether a case is brought pursuant to a statute with a fee-shifting provision, if the parties settle the case by creating a common fund, common-fund principles control class counsel's fee recovery."); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-58 (1975) (Court had "consistently followed" a rule that a fee-shifting statute did not "interfere with the historic power of equity to permit . . . a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from other parties enjoying the benefit").

This approach makes sense because "[f]ee-shifting principles and the common-fund doctrine occupy separate realms" and are not at cross-purposes. *Fresno County*, 925 F.3d at 68. The purpose of fee-shifting statutes is to "encourage counsel" to represent plaintiffs acting as "private attorney[s] general" by requiring a defendant found liable to "finance the private enforcement action against it" by paying a "fee that is sufficient to induce a capable attorney to undertake representation" of the case. *Id.* at 67-68 (internal quotation marks omitted). Notably, the lodestar awarded pursuant to a fee-shifting statute "does not account for the contingent risk that a lawyer may assume in taking on a case," *id.* at 68, and a court generally may not enhance a statutory lodestar fee to account for the risks of litigation, *see City of Burlington v. Dague*, 505 U.S. 557, 563, 567 (1992). By contrast, fees "awarded pursuant to the common-fund doctrine do not extract a tax on the losing party but instead confer a benefit on the victorious attorney for her representation of her client and the class members." *Fresno County*, 925 F.3d at 68. The common-fund doctrine is "rooted in the courts' historic power of equity to permit a person who secures a fund for the benefit of others to collect a fee directly from the fund." *Id.* (quotation marks omitted). And one of the facets of the doctrine is that "courts routinely impose enhanced common fund

awards to compensate counsel for litigation risk at the expense of beneficiaries who did not shoulder this risk." *Brundle v. Wilmington Trust, N.A.*, 919 F.3d 763, 786 (4th Cir. 2019).

Relying on the Second Circuit's *County of Suffolk* decision, the Fourth Circuit held in the context of an ERISA verdict that "a statutory fee-shifting provision (or an award of fees under such a provision) does not, as a matter of law, automatically preclude an award under the common fund doctrine" and that, in such situations, courts "retain[] discretion to award supplemental attorneys' fees from the common fund." *Brundle*, 919 F.3d at 787. In so doing, the Fourth Circuit rejected an argument that the only fees to which counsel was entitled were those awarded under ERISA's fee-shifting provision:

> [A]s we have explained, what is 'reasonable' as a fee from a losing defendant may well differ from what is 'reasonable' as a fee from an individual directly benefited by counsel's efforts. We particularly note that a 'reasonable' fee under ERISA's attorneys' fee provision (unlike a common fund award) precludes any compensation for contingency risk. But, as we have previously underscored, contingent fees serve an important function in providing under-resourced litigants access to counsel and the courts. Conflating statutory attorneys' fees with common fund recoveries would squarely contravene this policy.

*Id.* at 787 (citations omitted).

Numerous district courts, including in this District, have agreed with this general reasoning. *See Knox v. John Varvatos Enters.*, 520 F. Supp. 3d 331, 352 (S.D.N.Y. 2021) ("Consistent with *Brundle*, we too conclude that, in appropriate circumstances, a court has the power to award both statutory fees for attorney services and attorney's fees from a common fund."); *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1330-31 (D. Nev. 2014) ( "Plaintiffs may seek additional attorney's fees out of the common fund irrespective of their entitlement to attorney's fees under [a Nevada] fee-shifting statute."); *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 995 F. Supp. 835, 851-53 (S.D. Ohio 2014) (holding in the context of an ERISA class action judgment that counsel was entitled to 30% of the "judgment fund" and that the

19

statutory fees that were "are being awarded to the class and paid by AK Steel . . . will offset the total fee award dollar for dollar" resulting in a net attorneys' fee award amounting to the difference between 30% of the judgment and the statutory fee to be paid from the fund); *but see Pierce v. Visteon Corp.*, 791 F.3d 782, 787 (7th Cir. 2015) (holding that the "common-fund approach" was limited "to cases outside the scope of a fee-shifting statute").

As demonstrated by the authority set forth above, this Court has the authority to award Class Counsel fees from the common fund to account for, *inter alia*, the risks Counsel undertook (and continue to undertake) in addition to awarding statutory fees to Plaintiffs as the prevailing parties under the NYLL. This comports with the attorney's fee provision of Rule 23, which provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Accordingly, given the substantial risks of loss shouldered by Class Counsel in taking and litigating this class action and the excellent results Class Counsel achieved for the Subclasses, this Court should exercise its discretion to award Class Counsel $1,694,939.47 in fees, which amounts to 1/3 of the jury's $5,084,818.42 award to the Subclasses. *See* Buzzard Decl. ¶ 35.

There are two mechanisms courts have used to effectuate the award of a percentage of the fund to class counsel where there is also a statutory fee award. First, courts have simply awarded class counsel a percentage of the total fund and then directed that the statutory fee award be paid back into the fund as a partial "offset" for the percentage paid to class counsel. *See Schumacher*, 995 F. Supp. at 851-53 (using this method). Alternatively, courts have awarded counsel the total statutory fee award first and then ordered than an additional amount be paid to counsel from the common fund. *See Sobel*, 53 F. Supp. 3d at 1330-31 (using this method). Under the circumstances of this case and the norms of class recovery in the Second Circuit, both mechanisms should result

in the same outcome: (1) an award of $575,063.50 in fees to be paid by Defendants under the NYLL; and (2) an award of $1,694,939.47 in fees to Class Counsel, which amounts to one-third of the total amount awarded to the Subclasses by the jury.

### 1. Class Counsel's Requested Fee Award is Reasonable

Class Counsel's request for one-third of the common fund is consistent with both (1) the retainer agreement with the Named Plaintiff, which provides that Joseph & Kirschenbaum "reserves the right to seek attorneys' fees equal to one third of any common fund – calculated before the deduction of costs – recovered on behalf of the class," Buzzard Decl. ¶ 60; and (2) the Notice sent to Subclass Members following class certification, which informed them that J&K "may seek attorneys' fees totaling one-third of any settlement fund or judgment recovered on behalf of the Class," Buzzard Decl. at Exs. 4 (Meatpacking Notice), 5 (Midtown Notice). It is also consistent with the norms of class litigation in this Circuit, wherein "[t]he trend . . . is to use the percentage of the fund method in common fund cases like this one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon*, 2015 U.S. Dist. LEXIS 30047, at *5. Indeed, fees amounting to one-third of common funds are routinely approved by courts in this District, including this Court. *See*, *e.g.*, *Skiadas v. Acer Therapeutics Inc*., No. 19-cv-6137, 2022 U.S. Dist. LEXIS 6620 (S.D.N.Y. Jan. 7, 2022) (Woods *J.*) (awarding attorneys' fees of one-third of $8.35 million settlement); *In re Deutsche Bank AG Sec. Litig.*, No. 09-cv-01714, 2020 U.S. Dist. LEXIS 103134, at *6-7 (S.D.N.Y. June 11, 2020) (Woods, *J.*) (awarding attorneys' fees of one-third of $18.5 million settlement).

Moreover, the reasonableness of Class Counsel's requested fee is fully supported by the

*Goldberger* factors, including: the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk of the litigation; and the requested fee in relation to the settlement. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

> ### a.   Counsel's Time and Labor & the Amount of the Fee in Relation to the Recovery Support Counsel's Requested Fees.

The time and labor expended by counsel in achieving the result here and the relationship between Counsel's lodestar and the requested fee both support Counsel's fee request. As discussed above, Class Counsel conducted an extensive investigation and prosecution of this case—for five years—prior to obtaining the jury verdict and did so in an extremely efficient manner. *See supra* at 15-17. All told, Class Counsel invested $575,063.50 worth of time – including 1250.2 attorney hours and at least 101 paralegal hours – in obtaining the verdict for the Subclasses. Buzzard Decl. ¶ 55.

Class Counsel's requested fee award of $1,694,939.47 represents a 2.94 multiplier of Counsel's $575,063.50 lodestar. This multiplier is eminently reasonable given that: (a) Class Counsel used their significant expertise in litigating cases on behalf of food-service employees to reach the hard-fought verdict; and (b) Class Counsel litigated this matter on a pure contingency basis, thus assuming the substantial risk of receiving no fees at all. *See Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *34 (S.D.N.Y. Jan. 31, 2007) (lodestar multiplier "represents, among other factors, the risk of litigation, the complexity of the issues, the contingent nature of the engagement, and the skill of the attorney"). Moreover, in wage and hour class actions courts routinely approve multipliers up to 4, well above the multiplier sought here. *See, e.g., Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531, 2014 U.S. Dist. LEXIS 135635, at *22 (S.D.N.Y. Sept. 23, 2014) (5.1 lodestar multiplier in a wage and hour case); *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2012 U.S. Dist. LEXIS 137409, at *13 (S.D.N.Y. Sept. 14, 2012) (3.36 lodestar

multiplier "well within the range of reasonableness").

### b.    The Risks of Litigation Support the Requested Fee.

"[T]he risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *30 (internal quotation omitted). Here, Class Counsel took this case pursuant to a retainer agreement that stated that Counsel would receive a percentage of the recovery *only if* Plaintiffs obtained a recovery. *See* Buzzard Decl. ¶¶ 56-59. As set forth above, this was a complex litigation, and Plaintiffs faced significant risks in maintaining a class and establishing liability. *See supra* at 12-14. Many of these risks could have led to no recovery or a very small recovery. For example, the tip credit damages secured for the Subclasses could have been substantially reduced, and perhaps even eliminated, if this Court had agreed with the courts holding (in our opinion, incorrectly) that (a) written notice of tip credit is not required under the NYLL and/or (b) the affirmative defenses set forth in N.Y. Lab. Law § 198(1-b) and (1-d) apply to tip credit minimum wage claims.

In addition to the risks of litigation, Class Counsel still faces the risk that the judgment will not be recoverable. Prior to trial, both the Valbella restaurants closed and neither of the two corporate defendants in this case remain in operation. *See* Buzzard Decl. ¶¶ 61-63. Indeed, Class Counsel was specifically warned by Defendants prior to trial that it would be difficult, if not impossible, to collect any judgment issued in this matter. *Id.* ¶ 64. Despite the closures and Defendants' warning, Class Counsel nonetheless spent hundreds of hours preparing for and conducting the trial despite the substantial risk that they will never be compensated for this work. Courts have found such risks to warrant the supplemental award of attorneys' fees from the common fund even where statutory fees were awarded. *See Knox*, 520 F. Supp. 3d at 352.

Moreover, the likelihood that Class Counsel will have to engage in significant post-

judgment litigation to collect on the judgment in this matter further demonstrates the reasonableness of the lodestar multiplier sought by Class Counsel because that multiplier "will diminish over time." *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *23.  Here, where Class Counsel will be required to spend significant additional time on this litigation in connection with collecting on and monitoring distribution of the judgment, "the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the [judgment]." *Id.* (internal quotation marks omitted). "The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend [collecting the judgment] going forward, also supports their fee request."  *Id.* at 24.  For these reasons, the fees that Class Counsel seek are reasonable.

### C.    The Court Should Approve Fees for a Claims Administrator to be Paid from the Common Fund.

To effectuate the distribution of the judgment funds to Subclass members, Class Counsel anticipates retaining a claims administrator to, *inter alia*: (a) set up an account to receive the judgment funds; (b) search for and confirm class members' current addresses; (c) prepare and mail checks to class members; and (d) address requests from class members relating to lost checks or the issuance of new checks. Buzzard Decl. ¶ 66. Based on prior experience, Class Counsel anticipates that a claims administrator will cost no more than $30,000, *id.*, which is within the range for claims administration approved in this Circuit. *See, e.g.*, *Chang v. Philips Bryant Park LLC*, No. 17-cv-8816, 2019 U.S. Dist. LEXIS 185297, at *8 (S.D.N.Y. Oct. 23, 2019) (approving settlement agreement with provision for up to $30,000 in fees for claims administrator), *adopted*, 2020 U.S. Dist. LEXIS 4147 (S.D.N.Y. Jan. 9, 2020); *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) ("Courts within this district have awarded up to $50,000 for the settlement claims administrator."). Accordingly, the Court should authorize costs

of claims administration not to exceed $30,000 to be paid from the common fund.

    **D.**    **The Court Should Approve a Service Award of $15,000 for each of the Class Members who Testified at Trial to be Paid from the Common Fund.**

At trial, Pavle Zivkovic, Ricardo Sanchez, Fernando Marin, and Alejandra Rendon testified on behalf of the Subclasses. Each of these representatives also participated in the litigation of this action by producing documents, sitting for a deposition, and preparing for trial. "[A] court's equitable powers . . . give it the power to grant a service payment to a class representative from a jury verdict that creates a common fund." *Knox*, 520 F. Supp. 3d at 349 (citing cases). As Magistrate Judge Gorenstein reasoned, "[t]he principle that underlies using a common fund to make an attorney fee payment – that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense – applies equally to a service payment to a class representative." *Id.* (internal quotation marks omitted).

Here, Plaintiffs seek service awards of $15,000 to each of the four representatives who testified at trial, for a total of $60,000. Service awards in similar amounts are routinely approved. *See Knox*, 520 F. Supp. 3d at 350 (citing cases).

**IV.**    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that: (1) Defendants be ordered to pay $575,063.50 in attorneys' fees and $20,200.57 in costs pursuant to the fee-shifting provisions of the NYLL; (2) Class Counsel be awarded fees amounting to one-third of the common fund, or $1,694,939.47, and expenses amounting to $20,200.57; (3) the Court authorize that no greater than $30,000 of the common fund be used to retain a claims administrator to distribute the judgment to members of the Subclasses; and (4) the Court authorize enhancement awards of $15,000 to be paid from the common fund to Pavle Zivkovic, Ricardo Sanchez, Fernando Marin, and Alejandra Rendon.

Dated:  New York, New York
       May 13, 2022                             **JOSEPH & KIRSCHENBAUM LLP**

                                     s/ *Lucas C. Buzzard*
                              D. Maimon Kirschenbaum
                              Josef Nussbaum
                              Lucas C. Buzzard
                              32 Broadway, Suite 601
                              New York, NY 10004
                              212-688-5640

                              *Attorneys for Plaintiffs and the Class*