UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAVLE ZIVKOVIC, on behalf of himself and others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>LAURA CHRISTY LLC d/b/a VALBELLA, LAURA CHRISTY MIDTOWN LLC, DAVID GHATANFARD, and GENCO LUCA,<br><br>        Defendants. | 17-CV-00553-GHW |

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND COSTS**

D. Maimon Kirschenbaum
Josef Nussbaum
Lucas C. Buzzard
**JOSEPH & KIRSCHENBAUM LLP**
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff and F.R.C.P. Rule 23 Class Members*

June 2, 2022

Plaintiffs submit this reply memorandum of law in further support of their motion for attorneys' fees and costs. Dkt. No. 306.

## I.  PRELIMINARY STATEMENT

Defendants do not in any serious way oppose Plaintiffs' motion for attorneys' fees and costs.  Defendants simply submit an attorney declaration that includes no legal arguments or memorandum of law.  Giving Defendants' "opposition" the most generous reading possible, their argument in the declaration is limited to asking that the Court not award Plaintiffs any attorney's fees for motions that were denied by the Court. (Defendants entirely ignore the fact that they eventually lost the claims at issue in those motions at trial.)  However, as set forth below, it is plainly not the law that a plaintiff's counsel that ultimately succeeds at trial cannot recover for unsuccessful motion practice.

As an initial matter, it is worth highlighting that Defendants only take issue with $84,020 of the $575,063.50 in attorneys' fees Plaintiffs seek. *See generally* Dkt. Nos. 307, 309. Accordingly, Defendants do not oppose at least $491,043.50 of Plaintiffs' request for attorneys' fees as well as $20,200.57 in costs. *See, e.g., Felske v. Hirschmann*, No. 10 Civ. 8899 (RMB), 2012 U.S. Dist. LEXIS 29893, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A Plaintiff effectively concedes a defendant's arguments by his failure to respond to them.") (Lynch J.); *CVS Pharmacy, Inc. v. Press Am., Inc*., 377 F. Supp. 3d 359, 383 (S.D.N.Y. 2019) ("Because it has not opposed this motion, the Court concludes that [the defendant] has conceded liability . . .") (citation omitted).

In any event, Defendants' limited opposition should be disregarded, because it fails to include any legal arguments.  Rather, it leaves the burden on the Court and Plaintiffs' counsel to decipher the precise legal basis for Defendants' opposition.  Defendants' failure to specify the

legal basis for their arguments is a violation of this Court's Local Rules which, as set forth below, is sufficient reason to disregard their statements in opposition.

To the extent Defendants can be said to have put forth an argument, *i.e.*, that the unsuccessful summary judgment motions "did not advance the litigation and would not have even if granted[,]" Dkt. No. 309 at ¶ 19, that argument is misguided. The caselaw is clear that the standard for determining whether a successful plaintiff should be denied fees for a motion is not whether the motion was unsuccessful, but whether it was frivolous. To be sure, a plaintiff should be entitled to the same good faith zealous advocacy as a paying defendant. And denying unsuccessful motions to successful plaintiffs would hamper that.

Here, as Defendants do not and cannot argue that Plaintiffs' motions were frivolous or unreasonable (they were not), their opposition should be ignored. Moreover, Defendants could not seriously argue that the summary judgment motions were frivolous or that they did not advance the needs of the litigation. The arguments developed in both of those motions—*i.e.*, that the two Corporate Defendants were really a single, integrated enterprise and that Defendants were not entitled to apply a tip credit to Subclass Members wages—formed the backbone of the pretrial materials (including Plaintiffs' successful pretrial memorandum and the Parties' proposed jury instructions and verdict sheets) upon which Plaintiffs were ultimately successful on all their claims. Under these circumstances, the Court should grant Plaintiffs' motion.

II. ARGUMENT

    a. **Defendants' Declaration in Opposition to Plaintiffs' Fee Application Should be Disregarded as Defendants Failed to Submit any Legal Arguments**

In their opposition to Plaintiffs' motion for attorneys' and costs, Defendants submitted an attorney declaration only and did not bother to submit a memorandum of law. Defendants' opposition is procedurally deficient as it fails to properly comply with Local Civil Rule

7.1. Rule 7.1(a)(2) states that "[e]xcept for letter motions permitted by Local Civil Rule 7.1(d) . . . . All motions shall include the following motion papers . . . (2) a memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined[.]" *See also* Local Civil Rule 7.1(b) (stating that "all oppositions and replies with respect to motions shall comply with Local Civil Rule 7.1(a)(2). . . ."); *Employers Ins. Co. of Wausau v. Skinner*, 2008 U.S. Dist. LEXIS 76620, 2008 WL 4283346, at *4 (E.D.N.Y. Sept. 17, 2008) ("It is well-established that '[a]n affirmation alone will not satisfy the requirements of Rule 7.1.'")(quoting *Microsoft Corp. v. K&E Computer Inc.*, No. 00 Civ. 7550, 2001 U.S. Dist. LEXIS 3928, 2001 WL 332962, at *1 (S.D.N.Y. Apr. 4, 2001)).

Simply put, a "failure to submit a memorandum of law, standing alone, is sufficient cause for granting or denying a motion. It is not necessary to reach the merits." *East 65 Street Realty Corp. v. Rinzler*, 2000 U.S. Dist. LEXIS 3537, *6, No. 98 Civ. 6555 (RCC), 2000 WL 303279, *2 (March 22, 2000) (citations omitted); *see Toner v. United Brotherhood of Carpenters*, 1999 U.S. Dist. LEXIS 3967, 96 Civ. 0023 (SHS) (RLE), 1999 WL 178784, *1 (S.D.N.Y. March 31, 1999); *V.W. Broad v. DKP Corp.*, 1998 U.S. Dist. LEXIS 12942, *9 n.2, No. 97 Civ. 2029 (LAP), 1998 WL 516113, *3 n.2 (S.D.N.Y. Aug. 19, 1998); *Rotblut v. 300 East 74th Street Owners Corp.*, 1997 U.S. Dist. LEXIS 242, No. 96 Civ. 5762 (JSM) (MHD), 1997 WL 16063, *1 (S.D.N.Y. Jan. 16, 1997). Here, in their opposition, Defendants fail to cite any statutes or case law supporting an opposition to Plaintiffs' motion and likewise fail to set forth any authorities relied upon in opposition to the motion. This failing "effectively places on the court the burden of conducting the initial legal analysis that is properly the responsibility of defendant's counsel." *See Rotblut*, 1997 WL 16063, *1. As Defendants' blatant failure to

3

comply with Local Civil Rule 7.1, by failing to submit a memorandum of law in support of their opposition is sufficient enough reason for the Court to disregard Defendants' opposition, the Court should grant Plaintiffs' motion in full. *See, e.g.,* Broad v. DKP Corp., 97 Civ. 2029 (LAP), 1998 U.S. Dist. LEXIS 12942, at *10 n.2 (S.D.N.Y. Aug. 18, 1998) (failure to oppose motion is sufficient grounds to grant the motion); *Laverpool v. N.Y.C. Transit Auth*., 760 F. Supp. 1046, 1053 n.3 (E.D.N.Y. 1991) (noting that party's failure to oppose a motion was, "in and of itself," grounds to grant the motion); *Lanzafame v. Dana Restoration, Inc*., No. 09-CV-0873 (ENV) (JO), 2010 U.S. Dist. LEXIS 142194, at *24 (E.D.N.Y. Aug. 12, 2010) ("failure to comply with the local rule requiring him to submit a memorandum of law […] would be reason enough for the court to deny [the] motion in its entirety.").

### b. The Time Expended In Preparing Plaintiffs' Motions For Summary Judgment Is Compensable

#### i. The Motions Advanced The Needs Of The Litigation

In their declaration, Defendants take issue with two motions for partial summary judgment that Plaintiffs filed. Plaintiffs' first motion sought a finding that the two Valbella restaurants constituted a single, integrated employer. The second motion sought a finding that the Subclass members were entitled to tip credit damages and penalties under N.Y. Lab. Law §§ 195(1) and (3) as a matter of law. Significantly, at trial, Plaintiffs achieved a complete success on all the issues set forth in those motions.

As an initial matter, Plaintiffs take exception with Defendants' contention in their declaration that the unsuccessful summary judgment motions "did not advance the litigation and would not have even if granted." Dkt. No. 309 at ¶ 19.  This statement is plainly wrong for two reasons.  First, taking the second motion for partial summary judgment as an example, had that motion been granted, the Parties would have avoided a trial on the largest claim in the lawsuit,

4

namely, Defendants' misapplication of a tip credit to Subclass Members' wages. In other words, Plaintiffs' motion for summary judgment on this issue was a good faith effort to *advance the needs* of the litigation.

Second, the legal arguments that underpinned both motions formed the basis of the pretrial materials, including joint pretrial order and jury instructions that the Parties submitted prior to trial. (In this regard, it is worth noting that at least 90% of these materials were prepared by Plaintiffs' counsel. *See* Dkt. 307 at pg. 15.) As an example, in the motion for summary judgment on the tip credit issue, Plaintiffs submitted arguments against the availability of an affirmative defense of tip credit notice violations. These arguments—while not accepted at the summary judgment stage—formed the basis of Plaintiffs' eventual pretrial memorandum relating to this issue which the Court found persuasive and accepted at trial. *Compare* Dkt. No. 174 *with* 259; *see also Zivkovic v. Laura Christy, LLC,* No. 1:17-cv-553-GHW, 2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26, 2022).

Moreover, the Court's decisions on both summary judgment motions assisted Plaintiffs in honing their legal arguments as well as the evidence they would eventually submit at trial. Thus, for example, as a result of the Court's decision on the tip credit motion, Plaintiffs ensured that (prior to trial) the Parties stipulated to the identities of the individuals who were paid pursuant to a tip credit as well as the amount of hours each of these individuals were paid a tip credit wage. *See* Dkt. No. 253 at pg. 7. Given the Court's Opinion and Order on summary judgment, these stipulated facts ensured that they were meeting their evidentiary burden at trial.

Finally, to the extent there is any question about the manner in which the unsuccessful motions advanced the litigations, one simply needs to look at the trial record with respect to the issues decided in those motions. On the tip credit claim at issue in the second motion,

Defendants did not marshal any defense, legal or factual, at all at trial. Thus, once the Court decided that there was no affirmative defense for failing to provide written notices to Subclass Members, Defendants were simply out of arguments. At trial, there was no dispute as to: (a) who the tipped employees were, (b) how many hours they were paid at the tip credit each year, (c) the amount of credits Defendants applied to the individuals' hourly rates each year, and (d) most significantly, that Defendants did not provide any written notice of the tip credit. Though Defendants created a "factual" fog in their in opposition to that summary judgment motion, the motion practice alerted Plaintiffs to Defendants' strategies and Plaintiffs were thus able to adapt to those strategies at trial. (The same is true with respect to the motion on single integrated employer status. Though Defendants marshalled a formal opposition on summary judgment, it is clear that they did not submit *any* evidence at trial countering Plaintiffs' position on this issue.)

In short, the legal and factual arguments developed in the summary judgment motions together with the Court's decisions on those motions (a) formed the framework for the pretrial materials the Parties' submitted, and (b) assisted Plaintiffs in deciding how to present their evidence at trial. It can thus hardly be said that the motions (while unsuccessful at the time they were filed) did not advance the needs of the litigation.

### ii. The Law Is Clear That Time Spent On Unsuccessful Motion Practice With Respect To Ultimately Successful Issues Constitutes Compensable Time

Contrary to Defendants' unsupported suggestions in their affidavit, the clear standard for determining whether a successful party should be denied fees for a motion is not whether the motion was unsuccessful, but whether it was frivolous time expended in preparation of unsuccessful motions are compensable in a fee application.

In *Hensley v. Eckerhart*, 461 U.S. 424, 434-35, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983), the Supreme Court held that a plaintiff who has substantially prevailed in the outcome of the underlying claim is entitled to be awarded counsel's fees and expenses incurred for all work reasonably performed in pursuit of the ultimate result achieved, including efforts expended on unsuccessful issues. In such circumstances, the Supreme Court instructed that the district courts "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. To this end, the *Hensley* Court noted that:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation … the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit … Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* (citations omitted). The Second Circuit has applied the *Hensley* doctrine to approve full attorney's fees that included work on unsuccessful issues where the overall outcome justified it. *Hensley* further clarified that "[t]here is no rule that Plaintiffs need achieve total victory on every motion in pursuit of a successful claim in order to be compensated for the full number of hours spent litigant that claim." *Gortat v. Capala Bros.*, 621 F. App'x 19, 23 (2d Cir. 2015). Rather, "[u]nsuccessful legal efforts are compensable as long as they are not frivolous." *Big R Food Warehouses v. Local 338 RWDSU*, 896 F. Supp. 292, 298 (E.D.N.Y. 1995) (citing *Seigal v. Merrick*, 619 F.2d 160, 164 (2d Cir. 1990)). Accordingly, courts in this district routinely award attorneys' fees incurred in pursuing unsuccessful motions upon a finding that the motion was not frivolous. *See, e.g., Gortat*, 621 F. App'x at 23 (affirming an award of attorneys' fees that included hours billed for unsuccessful motions); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 539

7

(S.D.N.Y. 2008) (declining to reduce fees for motions that "while unsuccessful, were part of the routine give and take of litigation"); *Luciano v. Olsten Corp.*, 925 F. Supp. 956, 964 (E.D.N.Y. 1996) (declining to "exclude hours expended in preparation of motions that were not granted, in light of the ultimate success of the plaintiff in this action"); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (courts should not engage in "an *ex post facto* determination of whether attorney hours were necessary to the relief obtained").

Accordingly, here, where Plaintiffs were ultimately successful on all issues underlying both motions at trial, they are entitled to fees for the time their attorneys spent preparing these motions. *See Etna Prods. Co. v. Q Mktg. Grp., Ltd.*, No. 03-CV-3805 (SAS)(FM), 2005 U.S. Dist. LEXIS 36926, 2005 WL 2254465, at *8 (S.D.N.Y. June 6, 2005) ("As the Second Circuit has noted, the standard for determining whether a party may recover fees for a motion is not whether the motion was unsuccessful, but whether it was frivolous.") (citation omitted); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).

There are strong policy considerations underlying this approach.  If a litigant in a case governed by fee-shifting provisions is concerned that a motion may not succeed, and thus that their attorneys will not be compensated for their zealous advocacy, their position may be chilled and they may not pursue all reasonable methods to succeed on their claims.  Accordingly, courts want to encourage litigants litigating in the context of a fee-shifting statute to pursue their claims as aggressively and zealously (but not frivolously) as possible. *See, e.g., Rozell*, 576 F. Supp. 2d at 538 ("[A] court should not disallow fees for every motion that a prevailing party did not win. Reasonable paying clients may reject bills for time spent on entirely fruitless strategies while at the same time paying their lawyers for advancing plausible though ultimately unsuccessful arguments."); *Pierce v. Visteon Corp.*, No. 1:05-cv-01325-LJM-DKL, 2014 U.S. Dist. LEXIS

8

31107, at *17-18 (S.D. Ind. Mar. 11, 2014) (granting fees for unsuccessful motions as "a reduction in fees for failed motions would have a chilling effect on advocacy in fee-shifting cases.").

## III. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for attorneys' fees and costs in full and enter judgment against Defendants in the amount of $575,063.50 in attorneys' fees and $20,200.57 in costs.

Dated: New York, New York
June 2, 2022

JOSEPH & KIRSCHENBAUM LLP

By: s/ Josef Nussbaum
D. Maimon Kirschenbaum
Josef Nussbaum
Lucas C. Buzzard
32 Broadway, Suite 601
New York, NY 10004
212-688-5640

*Attorneys for Plaintiffs
the Subclasses*

9