UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PAVLE ZIVKOVIC, on behalf of himself
and others similarly situated,

      Plaintiff,        17-cv-00553-GHW

  -against-

LAURA CHRISTY LLC d/b/a VALBELLA,
LAURA CHRISTY MIDTOWN LLC, DAVID
GHATANFARD, and GENCO LUCA,

      Defendants.
-------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR A NEW TRIAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59

     Harold Salant Strassfield & Spielberg
     Leonard Spielberg
     *Attorneys for Laura Christy Midtown LLC*
     81 Main Street
     White Plains, NY 10601
     (914)683-2500

     Dealy Silberstein & Braverman
     Maria Louisa Bianco
     *Attorneys for Laura Christy LLC*
     225 Broadway  Suite 1405
     New York, NY 10007
     (212)385-0066

     Neal Comer, Esq.
     *Attorney for David Ghatanfard and Genco Luca*
     81 Main Street
     White Plains, NY 10601
     (914) 683-5400

## TABLE OF CONTENTS

PRELIMINARY STATEMENT………………………….……..……………………1

STANDARD OF REVIEW……..…………………………………………………2

ARGUMENT……………………………………………………………..………3

I.      THE PUNITIVE DAMAGES AWARD WAS EXCESSIVE…………………………3

II.     THE VERDICT SHOULD BE SET ASIDE AS AGAINST THE WEIGHT OF
        EVIDENCE……………………………………………………………8

III.    THE JURY'S FINDING OF LIABILITY AGAINST GHATANFARD ON THE
        DISCRIMINATION CLAIM AND THE JUDGMENT ENTERED AGAINST
        GHATANFARD, INCLUDING THE PUNITIVE DAMAGES ARE CONTRARY
        TO THE LAW OF NEW YORK……………………………………………10

IV.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE
        DISCRIMINATION AND BATTERY CLAIMS AGAINST LUCA. THE
        JUDGMENT AGAINST LUCA SHOULD BE VACATED AS A RESULT
        AND THE CLAIMS AGAINST HIM SHOULD BE DISMISSED……..…………..13

CONCLUSION………………………………………………………………17

# TABLE OF AUTHORITIES

Cases

*Aldinger v. Howard*,
427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976),.................................................... 18

*Allam v. Meyers*,
906 F. Supp. 2d 274 (S.D.N.Y. 2012)............................................................................ 7

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 574 (1996)..................................................................................................... 4,5

*Boeing Co. v. Shipman*,
C.A. Ala. 1968, 389 F.2d 507, *affirmed* 411 F.2d 365 ................................................ 3

*Boise Payette Lumber Co. v. Larsen*,
C.A. Idaho 1954, 214 F.2d 373..................................................................................... 3

*Bouveng v. NYG Capital LLC*,
175 F. Supp. 2d (S.D.N.Y. 2016) ................................................................................. 7

*Broome v. Biondi*,
17 F. Supp. 2d 211 (S.D.N.Y. 1997) ............................................................................ 7

*Cioffi v. New York Cmty. Bank*,
465 F. Supp. 2d 202 (E.D.N.Y. 2006)........................................................................... 7

*DeCurtis v. Upward Bound Int'l, Inc.*,
No. 09 Civ. 5378, 2011 U.S. Dist. LEXIS 114001 (S.D.N.Y. Sept. 27, 2011) ........................ 8

*Delta Engineering Corp. v. Scott*,
C.A. 5 (La.) 1963, 322 F.2d 11, *rehearing denied* 325 F.2d 432, *certiorari denied* 84 S.Ct. 1164,
377 U.S. 905, 12 L.Ed.2d 176....................................................................................... 3

*Finley v. United States*,
109 S.Ct. 2003............................................................................................................... 18

*Greenbaum v. Handelsbanken*,
67 F. Supp. 2d 228(S.D.N.Y. 1999)............................................................................... 6

*Honda Motor Co. v. Oberg*,
512 U.S. 415, 421 (1994).............................................................................................. 4

*Iannone v. Frederic R. Harris,*
941 F. Supp.15 (2d Cir. 1998)..........................................................................................7

*Kim v. Dial Serv. Int'l,*
96 Civ. 3327, No. 1997 U.S. Dist. LEXIS 12544 (S.D.N.Y. Aug. 11, 1997)............................ 7, 9

*Koch v. Greenberg,*
14 F. Supp. 3d 247, 277-79 (S.D.N.Y. 2014) ..........................................................................7

*Lee v. Edwards,*
101 F.3d 805 (2d Cir. 1996)..............................................................................................6

*Lynch v. County of Nassau,*
717 N.Y.S. 2d 248 (2d Dept. 2000) ....................................................................................4

*MacMillan v. Millennium Broadway Hotel,*
873 F. Supp. 2d 546 (S.D.N.Y. 2012)..............................................................................5, 6

*Margaret Doe v. Bloomberg, L.P.,*
178 AD3d 44 (1st Dept 2019)...........................................................................................13

*Margaret Doe v. Bloomberg, L.P., et al,*
36 N.Y.3d 450, 167 N.E.3d 454 (2021)..........................................................................12, 15

*Mine Workers v. Gibbs,*
383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)..............................................................18

*Payne v. Jones,*
711 F.3d 85, 97 n. 8 (2d Cir. 2012)......................................................................................5

*Peters v. Smith,*
C.A. Pa. 1955, 221 F.2d 721 .............................................................................................3

*Raedle v. Credit Agricole Indosuez,*
670 F.3d 411 (2d Cir. 2012)..............................................................................................2

*Shukla v. Sharma,*
No. 07 Civ. 2972, 2012 U.S. Dist. LEXIS 18392 (E.D.N.Y. Feb. 14, 2012)..............................7

*Stampf v. Long Island R.R.,*
761 F.3d 192 (2d Cir. 2012)..............................................................................................4

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
538 U.S. 408 (2003).......................................................................................................4,7

*Thomas v. iStar Fin., Inc.*
652 F. 3d 141, 149 (2d Cir. 2010).................................................................................. 6

*United States v. Landau,*
155 F.3d 93, 104 (2d Cir.1998).................................................................................... 2

**Statutes**

Title 28. Judiciary and Judicial Procedure (Refs & Annos)28 U.S.C.A. § 1367………………...16

CPLR § 5501(c) ........................................................................................................... 4

Fed. R. Civ. P. Rule 59 ............................................................................................... 2

Fed. R. Civ. P. Rule 12 ............................................................................................. 12

Defendants Laura Christy LLC ("Valbella Meatpacking"), Laura Christy Midtown LLC ("Valbella Midtown"), David Ghatanfard and Genco Luca (collectively, the "Defendants"), respectfully submit this Memorandum of Law in Support of their Motion for a New Trial Pursuant to Federal Rule of Civil Procedure Rule 59 on the following grounds: (1) because the punitive damages award was excessive, (2) because the verdict was against the weight of evidence, (3) that the verdict against Ghatanfard was contrary to the law of New York State, and (4) that the Court lacks subject matter jurisdiction on the claims against Genco Luca.

## PRELIMINARY STATEMENT

A jury trial in this matter was held before this Court from March 31, 2022, to April 11, 2022. The jury found in favor of the Plaintiffs on substantially all of the Plaintiffs' claims. Lead Plaintiff Pavle Zivkovic brought several human rights claims and a battery claim on behalf of himself only. The jury found in favor of Defendants on the battery claim. On Mr. Zivkovic's claim that Defendant Genco Luca discriminated against him on the basis of national origin, the jury awarded Mr. Zivkovic $5,000 in compensatory damages against Defendant Genco Luca, $2,500 in compensatory damages against Defendant Valbella Midtown, and $2,500 in compensatory damages against Defendant David Ghatanfard. *See* Docket No. 283. The jury awarded Mr. Zivkovic $20,000 in punitive damages against Defendant Luca, $450,000 in punitive damages against Valbella Midtown, and $200,000 in punitive damages against Defendant Ghatanfard. *See* Docket No. 283. The jury also awarded Plaintiffs 32,032 hours of tip credit damages per year for 2011-2018 against Valbella Meatpacking and 30,706 hours of tip credit damages per year for 2011-2018. *See* Docket No. 283.

Defendants now move, pursuant to Federal Rule of Civil Procedure 59, for a new trial based upon two (2) grounds. First, a new trial should be ordered because the jury's punitive

damages award was excessive, bears no relationship to the evidence and goes beyond the line of constitutional propriety.  Alternatively, Defendants submit that the Court should grant a remittitur to a substantially reduced punitive damages award and that the appropriate ratio should be no more than 1:4 compensatory to punitive damages.  Second, Defendants move for a new trial on the grounds that the verdict was against the weight of the evidence.  Third, the instant motion requests dismissal of the discrimination claim against Ghatanfard on the grounds that it is contrary to the law of New York State and unproven at trial.  Finally, the motion requests dismissal of all claims against Genco Luca on the grounds that the Court lacks subject matter jurisdiction over him.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure at Rule 59 provides, in relevant part:   "(1) Grounds for New Trial.  The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  *See* Fed. R. Civ. P. Rule 59.  The Court of Appeals for Second Circuit has held that: "[o]n new trial motions, the trial judge may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner.  *United States v. Landau,* 155 F.3d 93, 104 (2d Cir.1998). However, precedent counsels that trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge "should rarely disturb a jury's evaluation of a witness's credibility," *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012).

Great latitude is allowed to district judge to grant new trial where, in discretion of judge, it is needed to prevent injustice.  *Delta Engineering Corp. v. Scott*, C.A. 5 (La.) 1963, 322 F.2d 11, *rehearing denied* 325 F.2d 432, *certiorari denied* 84 S.Ct. 1164, 377 U.S. 905, 12 L.Ed.2d 176.  *See, also, Boeing Co. v. Shipman*, C.A. Ala. 1968, 389 F.2d 507, *affirmed* 411 F.2d 365;

*Traylor v. Pickering*, C.A. Tex. 1963, 324 F.2d 655; *Willitt v. Purvis,* C.A. Ga. 1960, 276 F.2d

129; *Peters v. Smith*, C.A. Pa. 1955, 221 F.2d 721; *Boise Payette Lumber Co. v. Larsen,* C.A.

Idaho 1954, 214 F.2d 373; *Schneider v. U.S. Steel Corp.,* D.C. Minn. 1957, 147 F. Supp. 289.

Federal Civil Procedure Key Number 2313.

## ARGUMENT

## I.     THE PUNITIVE DAMAGES AWARD WAS EXCESSIVE

The punitive damages awarded by the jury to Plaintiff Pavle Zivkovic was excessive and

the Court should award a new trial or alternatively reduce the award.  Specifically, "[j]udicial

review of the size of punitive damages awards has been a safeguard against excessive verdicts

for as long as punitive damages have been awarded." *Honda Motor Co. v. Oberg,* 512 U.S. 415,

421 (1994).  The Second Circuit has made clear that, courts "bear the responsibility to ensure

that…punitive damages conform, insofar as reasonably practicable, to [the prevailing norms of

the legal system] and are not excessive." *Stampf v. Long Island R.R.,* 761 F.3d 192, 205 (2d Cir.

2012)(quoting *Lynch v. County of Nassau,* 717 N.Y.S. 2d 248, 249 (2d Dept. 2000). "Elementary

notices of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair

notice not only of the conduct that will subject him to punishment, but also of the severity of the

penalty." *BMW of N. Am., Inc. v. Gore,* 517 U.S. 574 (1996).  Courts must ensure that

punishment is "both reasonable and proportionate to the amount of harm to the plaintiff and to

the general damages recovered." *State Farm Mut.  Auto.  Ins. Co. v. Campbell,* 538 U.S. 408,

426 (2003).

The Supreme Court has identified the standard for establishing the excessiveness of a

punitive damages award which is set forth in the Supreme Court decision in *BMW of N. Am., Inc.*

*v. Gore,* 517 U.S. 599 (1996).  As explained in *Gore,* whether a punitive damages award is

excessive is judged according to three (3) factors: (1) the degree of reprehensibility of the defendant's conduct; (2) the proportion of punitive damages to compensatory damages; and (3) the difference between the punitive damage remedy and civil penalties authorized or imposed in comparable cases. *Id.* at 574-5; *see also, MacMillan v. Millennium Broadway Hotel,* 873 F. Supp. 2d 546, 564 (S.D.N.Y. 2012). As is the case with a compensatory damages award, "a federal court in a case governed by state law must apply the state law standard for appropriateness of remittitur," *i.e.,* CPLR § 5501(c). *Payne v. Jones,* 711 F.3d 85, 97 n. 8 (2d Cir. 2012). Nevertheless, the *Gore* factors are pertinent to, and should guide the Court, in applying the "deviates materially" standard under CPLR § 5501(c). *Id.*

With respect to the degree of reprehensibility, a finding of liability alone does not justify an excessive punitive damages award; the conduct must be sufficiently reprehensible as judged by a number of factors to warrant punitive damages. *Gore*, 517 U.S. at 580. As to these aggravating factors, this Court has observed that:

> [c]ases upholding punitive damages award of $200,000 or more generally involved discriminatory or retaliatory termination resulting in severe financial vulnerability to plaintiff, repeated incidents of misconduct over a significant period of time, repeated failures to address complaints of discrimination, and/or deceit.

*MacMillan,* 873 F.Supp. 2d at 566; *see also Lee v. Edwards,* 101 F.3d 805, 809 (2d Cir. 1996). Additionally, whether the defendant's conduct resulted in physical injury to the plaintiff, evidenced indifference or reckless disregard for the health and safety of others, or established a "'a pattern of discrimination' that extended to other employees in his protected group" have also been considered by courts. *McMillan* at 566 (quoting *Greenbaum v. Handelsbanken,* 67 F. Supp. 2d 228, 269-270 (S.D.N.Y. 1999).

Here, there was no discriminatory or retaliatory termination.  The alleged conduct took place during a limited period of time.  There was evidence of addressing the complaint and there was no deceit.  The alleged conduct did not result in physical injury to the plaintiff, did not evidence reckless disregard for the health and safety of others, and there was no pattern that extended to employees of the same protected group.  Thus, the degree of reprehensibility of the alleged conduct was low and falls into the categories of cases where awards were reduced significantly.  *See MacMillan,* 873 F. Supp. 2d at 566-8 (collecting and comparing cases).

The second *Gore* factor is the ratio of compensatory to punitive damages.  In this regard, "the Supreme Court has 'concluded that [a punitive damages] award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Thomas v. iStar Fin., Inc.* 652 F. 3d 141, 149 (2d Cir. 2010)(quoting *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 425 (2003)).  Accordingly, courts in this Circuit have often found a ratio of punitive damages to compensatory damages of no more than 2:1 to be appropriate.[1]  Further, a 1:1 ratio has also been found appropriate in some cases, including by this Court, which involved much more egregious and malicious violations than those presented here.[2]  Here, the ratio

---

[1] *See, e.g., Koch v. Greenberg*, 14 F. Supp. 3d 247, 277-79 (S.D.N.Y. 2014) (reducing punitive damages from a 33:1 ratio to 2:1), *aff'd*, 626 F. App'x 335 (2d Cir. 2015); *Cioffi v. New York Cmty. Bank*, 465 F. Supp. 2d 202, 206, 214 (E.D.N.Y. 2006) (punitive damages award based on jury's finding of sexual harassment and retaliation not excessive where ratio between punitive and compensatory damages was less than 2:1); *Broome v. Biondi*, 17 F. Supp. 2d 211, 229 (S.D.N.Y. 1997) (court declined to reduce a $410,000 punitive damages award to an interracial couple where jury found that the defendant cooperative board rejected their application to lease apartment because of their race where award was only two times amount of compensatory damages); *Iannone*, 941 F. Supp.15 (ratio of 10:1 reduced to approximately 2:1 in a sexual harassment case) *aff'd*, 159 F.3d 1347 (2d Cir. 1998).

[2] *See, e.g., Bouveng v. NYG Capital LLC*, 175 F. Supp. 2d 280 at 350 (S.D.N.Y. 2016) (finding a 1:1 ratio with respect to punitive damages on defamation claims to be appropriate); *Shukla v. Sharma*, No. 07 Civ. 2972, 2012 U.S. Dist. LEXIS 18392, at *47-48 (E.D.N.Y. Feb. 14, 2012) (remitting $2.5 million punitive damages award for forced labor and trafficking from 2.5:1 to 1:1); *Allam v. Meyers*, 906 F. Supp. 2d 274 at 294 (S.D.N.Y. 2012) (reducing punitive award from $300,000 to $200,000 to set a 1:1 ratio where husband found liable for assault, battery, and intentional infliction of emotional distress against wife for domestic violence); *Kim v. Dial Serv. Int'l*, 96 Civ. 3327, No. 1997 U.S. Dist. LEXIS 12544, at *49 (S.D.N.Y. Aug. 11, 1997) (Cote, J.) (reducing punitive damages award to establish a 1:1 ratio in a race discrimination case).

of compensatory damages to punitive damages against Defendant Luca is 1:4.  The ratio of compensatory damages to punitive damages against Defendant Valbella Midtown is 1:180.  The ratio of compensatory damages to punitive damages against Defendant Ghatanfard is 1:80.  All three (3) of these ratios, particularly the ratios in the awards against Valbella Midtown and Defendant Ghatanfard are excessive, and Defendants submit that they clearly go well beyond the line of constitutional impropriety.

The third *Gore* factor is the difference between the punitive damages award and civil penalties authorized or imposed in similar cases.  With respect to the New York City Human Rights Law ("NYCHRL"), "the civil penalty for violating the NYCHRL – a maximum of $250,000 for an 'unlawful discriminatory practice [that] was the result of respondent's willful, wanton, or malicious act' – counsels in favor of reduction."  *MacMillan,* 873 F. Supp. 2d at 568.  Here, the award against Valbella Midtown is almost double the maximum civil penalty and supports a substantial reduction in the award.

Additionally, the Court should compare the evidence here to the evidence presented in other decisions in this Circuit to find the appropriate level of remittitur.  In *DeCurtis v. Upward Bound Int'l, Inc.*, the plaintiff prevailed on claims under the NYSHRL and NYCHRL that she was sexually harassed, including claims that her supervisor engaged in unwanted touching, sent sexually explicit emails, made sexually explicit comments, and called the plaintiff later at night and on weekends to talk about sex.  *DeCurtis v. Upward Bound Int'l, Inc* No. 09 Civ. 5378, 2011 U.S. Dist. LEXIS 114001 (S.D.N.Y. Sept. 27, 2011) (Sullivan, J.) at *3.  When she complained directly to her supervisor, he threatened her job.  *Id.*  When she complained to the head of human resources, that individual informed the owner of the company, who took no action, instead telling the plaintiff not to let the supervisor upset

her.  *Id.*   When co-workers complained on the plaintiff's behalf, the company finally hired an outside law firm to investigate, and the supervisor was ultimately discharged, two years after the sexual harassment began.  *Id.* at *4.   The court awarded $100,000 in compensatory damages for the emotional distress suffered by the plaintiff, but rejected her request for $250,000 in punitive damages, finding that the amount was not justified under the circumstances.  *Id.* at *14-15.  After applying the *Gore* factors and comparing the evidence to comparable cases decided in the Second Circuit, the court awarded $75,000 in punitive damages, a ratio of *less* than 1:1 with compensatory damages, despite the severity of the conduct, actual physical contact (unlike in the case at bar), and length of time over which it occurred.  *Id.* at *17.

Equally instructive is *Kim v. Dial Serv. Int'l*, 96 Civ. 3327, No. 1997 U.S. Dist. LEXIS 12544, at *49 (S.D.N.Y. Aug. 11, 1997), a case where a jury found in favor of the plaintiff on his race discrimination claim under 42 U.S.C. § 1981 and state law, and awarded $750,000 in punitive damages.  The plaintiff had been terminated from employment amid several comments made by his supervisors that indicated racial animus.  *Id.* at *6.  In considering the defendants' motion for a new trial or remittitur, the court followed the guidance set forth by the Supreme Court in *Gore* and the Second Circuit in *Lee*, *supra*.  Although crediting the jury's finding that the racially motivated unlawful conduct was malicious and reprehensible, the  court concluded that the degree of such reprehensibility was "low" because there was no violence and "very little" repetition of the conduct.  *Id.* at *49.  After remitting the compensatory damages award to $25,000, the court found that a 1:1 ratio was appropriate, and remitted the punitive damages award to $25,000, notwithstanding the finding that the defendants' conduct was malicious and reprehensible.  Defendants suggest that a similar ratio

would be appropriate award.  As the foregoing analysis shows, all of the Gore factors favor remitting the punitive damages.  As such, Defendants submit that the Court should order a new trial on the issue of punitive damages or grant remitter of a ratio of 1:1 but in no event no larger than 1:4.

## II.    THE VERDICT SHOULD BE SET ASIDE AS AGAINST THE WEIGHT OF EVIDENCE

The Court is respectfully directed to the Jury verdict form.  *See* Verdict Form at Docket No. 283.  At Question No. 2.  Relating to Laura Christy LLC., "Tip Credit Damages", the Jury was asked to find the following: "For each year between January 25, 2011, and December 3, 2018, state the total number of hours that Subclass Members worked and were improperly paid at the tip credit hourly rate at Valbella Meatpacking."  *Id.*  The Jury's verdict was that in each of the eight years from 2011 through 2018, the exact same number of hours was worked by subclass members at Valbella Meatpacking and the number "32,032" was inserted.  *Id.*  In coming to a verdict that the exact same number of hours was worked in each of the eight years in question, the jury clearly did not rely upon the evidence.  In fact, the evidence in the record before the jury which was relevant to Question No. 2 was the EMPLOYEE EARNINGS RECORD, annually Exhibits J50 through J69.  *See* Exhibits J50-69.  Each of these Exhibits, at the end of each year, contained the precise Answer to Question No. 2 for the given year.  For example, on Exhibit J50, the Laura Christy LLC EMPLOYEE EARNINGS RECORD for the year 2011, January 1, 2011 through December 31, 2011, at page 178 of 179, the results for each of the four quarters of the year 2011 are set out and then the four quarters are totaled at the end.  *See* Exhibit J50.  The column entitled "Regular Hours", indicates the total of 50,410.73 regular hours for the year.  *Id.*  The Jury returned a verdict of 32,032 hours for 2011.  *See* Verdict Form at Docket No. 283.  It is clear and obvious that the Jury's verdict is against the weight of the

evidence, which is relevant to Question No 2, for 2011.  It is the same for the other years in question.  The jury followed the same pattern of decision for both employers, Laura Christy LLC and Laura Christy Midtown LLC.  The Jury's answer to question no. 2, which asked the same question for Laura Christy Midtown LLC as Question No 2, above, was answered by the jury as 30,706 hours for all eight years.  *See* Verdict Form at Docket No. 283.  In 2011, for example, at Trial Exhibit J7 at page 260-262 the number of "Regular Hours" worked at Laura Christy Midtown LLC is shown to be 24,403.  *See* Exhibit J7.  However, the Jury determined 30,706 "Regular Hours", as for all other years for Laura Christy Midtown LLC.  *See* Verdict Form at Docket No. 283.

Plaintiffs have been awarded judgment for damages in the sum of $4,509,868.18, including prejudgment interest, most of which is on account of alleged tip credit violations.  *See* Docket No. 324.  This recovery results primarily from the Jury's verdict as to the number of hours worked by subclass members at the two restaurants.  It is submitted that such judgment is not supported by the evidence, and it would be an injustice, a grave injustice, at that.

It is just very clear from a plain review of the Jury Verdict Form that at least with regard to Question No. 2 for both restaurants,  the Jury did not consider evidence and, instead, opted for simplicity and guesswork in arriving at its verdict.  *See* Verdict Format Docket No. 283.  This conclusion is inescapable from the Jury's decision for Question No. 2 as to both corporate defendants.  It is a plain injustice to have the defendants' fate determined by a Jury's verdict which has been arrived at by guesswork, in lieu of the evidence before them and reflects, therefore, only surmise and conjecture.  The evidence with which to come to a responsible verdict was there before the jury and, obviously, it was ignored.  It is not unreasonable to surmise that the jury decided to ignore the evidence as too complicated or inconvenient to deal

with and instead opted for a verdict that would end their service somewhat faster.  They picked a number for each restaurant, wrote it on the jury sheet eight times for each restaurant, once for each year at issue and announced that they had reached a verdict.

Not only was the Jury's verdict against the weight of the evidence, but there was also no evidence at all to support a verdict that the number of  "Regular Hours" shown in the Earnings Record was identical in all eight years for each restaurant.

## III.    THE JURY'S FINDING OF LIABILITY AGAINST GHATANFARD ON THE DISCRIMINATION CLAIM AND THE JUDGMENT ENTERED AGAINST GHATANFARD, INCLUDING THE PUNITIVE DAMAGES ARE CONTRARY TO THE LAW OF NEW YORK

Section III of the Jury Verdict Sheet (Docket # 283) relates to the "DISCRIMINATION AND BATTERY CLAIMS" asserted by Plaintiff Zivkovic against Laura Christy Midtown LLC, Genco Luca and David Ghatanfard.  Question No. 3 of that section is entitled "Discrimination on the basis of National Origin".  The Verdict sheet states "On the claim that Defendant is liable for Defendant Luca's conduct, we find in favor of:

Plaintiff Zivkovic __x____                               Defendant Ghatanfard _____."

This determination by the Jury and the ensuing Judgment against Ghatanfard is contrary to the law of the State of New York.

The New York State Court of Appeals addressed the issue in the Court's decision in *Margaret Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 459, 167 N.E.3d 454, 460 (2021).  In that case, an employee of Bloomberg, L.P. sued the company, her supervisor and Michael Bloomberg, asserting discrimination, sexual harassment and sexual abuse.  *Id.*  She alleged that Michael Bloomberg, in addition to Bloomberg L.P., was her employer and as a result was subject to vicarious liability under the NY City HRL.  *Id.*

10

Bloomberg moved to dismiss the claims against him.  The Appellate Division, with two Justices dissenting, dismissed the causes of action against Bloomberg.  *Margaret Doe v. Bloomberg, L.P.* 178 AD3d 44 (1st Dept 2019).  Plaintiff appealed to the Court of Appeals as of right.

In the Complaint at issue in this case, the Complaint's EIGHTH and NINTH Claims for relief, dealing with the alleged discrimination, Plaintiff Zivkovic did not allege Ghatanfard had status as an "employer".  The only such allegation as to Ghatanfard is in paragraph 9  of the Complaint wherein it is alleged that he is an employer of plaintiff under the FLSA and the New York Labor Law.  There is no specific allegation of discrimination against Ghatanfard, it only alleges that "defendants" discriminated against Plaintiff and/or aided/ abetted discrimination against him.  Plaintiff Zivkovic did not pray for relief on the Discrimination claims in the Complaint in the  "PRAYER FOR RELIEF".

At trial, Plaintiff Zivkovic testified that he told Ghatanfard about Luca's discriminatory conduct and that Ghatanfard held meetings among Plaintiff, Luca and Ghatanfard  at which Ghatanfard  addressed the matter.  The Court did not instruct the Jury as to the standard for a finding that Ghatanfard had aided/abetted discrimination.  Instead, the Court lumped Ghatanfard's potential liability with that of the "employer", Valbella Midtown.

The instruction was as follows:

> In sum, if you find that Defendant Luca discriminated against Plaintiff Zivkovic and you find that either:
> 1.   Mr. Luca exercised managerial or supervisory responsibility at Valbella;
> 2.   Valbella Midtown and/or  Mr. Ghatanfard knew of the Mr. Luca's discriminatory conduct and failed to take immediate and appropriate corrective action; or
> 3.   Valbella Midtown and/or Mr. Ghatanfard should have known of the Mr. Luca's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct then

11

> you must find that Valbella Midtown and/or Mr. Ghatanfard are
> also responsible for Mr. Luca's actions.

*See Jury Charge,* Trial Transcript at 1134-5.

The Court of Appeals in *Doe v. Bloomberg* protected from liability, those, like

Ghatanfard who do not participate in discrimination and who have not aided and abetted such

action.  The Court wrote:

> The language in the City HRL, like that found in the State HRL, is itself
> circumscribed and requires no external limiting principle exempting
> employees from individual suit as employers.  Instead, where a plaintiff's
> employer is a business entity, the shareholders, agents, limited partners, and
> employees of that entity are not employers within the meaning of the City
> HRL.  Rather, those individuals may incur liability only for their own
> discriminatory conduct, for aiding and abetting such conduct by others, or
> for retaliation against protected conduct  *See* Administrative Code of City
> of N.Y. § 8–107[1], [6], [7]).  This rule aligns with the structure of the City
> HRL and comports with the Court's interpretation of similar language in
> Patrowich.  It is also consistent with the principles of vicarious and limited
> liability governing certain business structures (*see e.g.* Partnership Law §§
> 26, 121–303; Limited Liability Company Law § 609; Business Corporation
> Law § 719). *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 459, 167 N.E.3d 454,
> 460 (2021).

It is submitted that the Court's instruction to the Jury inferred that the Jury could impose

vicarious liability upon Ghatanfard, as if he was to be considered "employer" for these purposes.

That is contrary to the Law.

The Court in *Doe* further held:

> Similarly, the legislature chose to make an "owner, ... manager, ... agent or
> employee" of a place of public accommodation (see id. § 8–107[4][a]) and
> the "owner ... of a housing accommodation" (id § 8–107[5][a]) directly
> liable for discrimination, ***293 **461 but again did not make those
> categories of individuals subject to vicarious liability as employers under
> section 8–107(13)(b).   These differences in the statutory provisions
> demonstrate that employees, agents, and others with an ownership stake are
> not employers within the meaning of the City HRL (*see Matter of Tonis v
> Board of Regents of Univ. of State of N.Y.*, 295 N.Y. 286, 293, 67 N.E.2d
> 245 [1946]).  *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 460, 167 N.E.3d 454,
> 460–61 (2021).

12

It is therefore urged that the finding of liability on the part of Ghatanfard, absent proof that he had aided and abetted discrimination, was contrary to settled law. The Court is urged to vacate that portion of the Judgment against Ghatanfard which is for liability on the EIGHTH and/ or NINTH Claims for Relief and the portion of the Judgment which is against Ghatanfard for punitive damages.

**IV.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE DISCRIMINATION AND BATTERY CLAIMS AGAINST LUCA AND THE JUDGMENT SHOULD BE VACATED AGAINST LUCA**

It is submitted herein that this Court lacks subject matter jurisdiction over the discrimination and battery claims asserted against Genco Luca. The Federal Rules of Civil Procedure provide that the motion to dismiss for lack of subject matter jurisdiction can be made at any time. "F.R.C.P. Rule 12 (h)(3) Lack of Subject-Matter Jurisdiction. If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *See* Fed. R. Civ. P. Rule 12.

The Complaint does not allege any wrongdoing by Defendant Genco Luca ("Luca") relating to the Fair Labor Standards Act or the New York State Labor Law.

The only allegations of wrongdoing against Luca are contained within the Eighth Claim for Relief under the "NYSHRL", the Ninth Claim for Relief under the "NYCHRL" and  NY Administrative Law and the Tenth Claim for Relief, for Common Law Battery.

The Complaint purports to justify subject matter jurisdiction over the Eighth, Ninth and Tenth Claims for relief, as to Luca by the allegation in paragraph 1 of the Complaint, the conclusory allegation that: "This Court has supplemental Jurisdiction over the New York State Law claims, as they are so related to the claims in this action within the Court's original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution".  The Court's "original jurisdiction" is limited to the FLSA claims.

The Complaint alleges in paragraph 1 with respect to "original jurisdiction" that "This Court has original federal question jurisdiction under 28 U.S.C. sec. 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* ("FLSA")."  The claims asserted pursuant to the FLSA are: FIRST CLAIM FOR RELIEF-  FLSA minimum wage violation.  SECOND CLAIM FOR RELIEF – FLSA overtime violation, and no other claims. While the Complaint alleges that defendant Ghatanfard is an "employer" under the FLSA, (Complaint par. 9) the Complaint only alleges with respect to Luca that he is "executive chef" at Valbella Midtown.  (Complaint par. 10).  The claims against Luca are completely unrelated to the FLSA and the New York Labor Law.

The Complaint does not allege that Luca had any responsibility for wage payments to Plaintiff Zivkovic or the class.  The Complaint does not allege that Luca was involved in overtime assignments or payroll with respect thereto.  The Complaint does not allege, nor was there proof at trial  that Luca had responsibility for work assignments.

The allegations against Luca are that he discriminated against Zivkovic and that he committed battery against him, neither of which is even remotely related to the FLSA claims. The  Complaint is silent as to the specifics of the alleged relation to the FLSA claims that is claimed to be "part of the same case or controversy" in a conclusory fashion.  None of the evidence at trial supported the claim that FLSA claims are so related to the claims against Luca as to be "part of the case or controversy".

There exists strong US Supreme Court and statutory authority that the Court may not assert jurisdiction over Luca in the discrimination and battery claims set forth in the complaint.

14

Specifically, the US Supreme Court addressed the subjects of pendent jurisdiction, over both parties and claims in *Finley v. United States*, 109 S.Ct. 2003. After reviewing the law of supplemental or pendent jurisdiction following *Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) , the Court in *Finley* wrote:

> Analytically, petitioner's case is fundamentally different from Gibbs in that it brings into question what has become known as pendent-party jurisdiction, that is, jurisdiction over parties not named in any claim that is independently cognizable by the federal court. We may assume, without deciding, that the constitutional criterion for pendent-party jurisdiction is analogous to the constitutional criterion for pendent-claim jurisdiction, and that petitioner's state-law claims pass that test. Our cases show, however, that with respect to the addition of parties, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly.

The Court in Finley went on to say that:

> "… the non-transferability of Gibbs to pendent-party claims was made explicit. In *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the plaintiff brought federal claims under 42 U.S.C. § 1983 against individual defendants, and sought to append to them a related state claim against Spokane County, Washington. (A federal § 1983 claim was unavailable against the county because of this Court's decision in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).) We specifically disapproved application of the Gibbs mode of analysis, finding a "significant legal difference." 427 U.S., at 15, 96 S.Ct., at 2420.

Further, the Court held:

> [T]he addition of a completely new party," we said, "would run counter to the well-established principle that federal courts ... are courts of limited jurisdiction marked out by Congress." Ibid. "Resolution of a claim of pendent-party jurisdiction ... calls for careful attention to the relevant statutory language." Id., at 17, 96 S.Ct., at 2421. We held in Aldinger that the jurisdictional statute under which suit was brought, 28 U.S.C. § 1343, which conferred district court jurisdiction over civil actions of certain types "authorized by law to be commenced," did not mean to include as "authorized by law" a state-law claim against a party that had been statutorily insulated from similar federal suit. The county had been "excluded from liability in § 1983, and therefore by reference in the grant of jurisdiction under § 1343(3)." Ibid. (emphasis in original). *Finley, supra* at 2003.

Congress reacted to the gauntlet having been thrown down by the Court in *Finley* and passed 28 U.S.C.A. 1367.  *See* Title 28.  Judiciary and Judicial Procedure (Refs & Annos)  28 U.S.C.A. § 1367.  Section § 1367.  Supplemental jurisdiction states:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

It is submitted therefore, that, the claims asserted against Luca not being part of the same "case or controversy" as the FLSA claims asserted by Plaintiff(s), this court lacks subject matter jurisdiction over the claims against Luca and those claims should be dismissed by the court.

Further, the judgment entered herein should be amended to delete the damages and punitive damages against Luca included therein.

## <u>CONCLUSION</u>

Based upon the foregoing, Defendants respectfully submit that the Court should order a new trial based upon the fact that the verdict was against the weight of the evidence and the punitive damages award was excessive or alternatively reduce the punitive damages award as and grant such further relief as the Court deems appropriate. .  As set forth above, the discrimination claims against Ghatanfard should be dismissed as contrary to the law of New York and unproven at trial and the judgment against Ghatanfard should be  modified accordingly.  The Court should dismiss the  claims against Luca  on the grounds that the Court lacks subject matter jurisdiction over Luca, per 28 U.S.C. sec 1367 and the judgment amended accordingly, as and grant such further relief as the Court deems appropriate.

Dated:  New York, New York
July 7, 2022

Respectfully Submitted,

Harold Salant Strassfield & Spielberg

By:  /s/Leonard Spielberg
Leonard Spielberg
*Attorneys for Laura Christy Midtown LLC*
81 Main Street
White Plains, NY 10601
(914)683-2500

17

Dealy Silberstein & Braverman

By: /s/ Maria Louisa Bianco
      Maria Louisa Bianco
*Attorneys for Laura Christy LLC*
225 Broadway  Suite 1405
New York, NY 10007
(212)385-0066


By: /s/ Neal Comer____
      Neal Comer, Esq.
*Attorney for David Ghatanfard and Genco Luca*
81 Main Street
White Plains, NY 10601
(914) 683-5400