```
                                                              Page 1
 1
 2    IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF NEW YORK
 3    ------------------------------------------X
 4    PAVLE ZIVKOVIC,
 5                         Plaintiff,
 6            v.
 7    VALBELLA AT THE PARK, LLC
 8    ------------------------------------------x
 9                    Zoom Video Conference
10                    May 4, 2023
11                    10:06 a.m.
12
13         EXAMINATION BEFORE TRIAL of DAVID GHATANFARD, the
14    Defendant in the above-entitled action, held via Zoom Video
15    Conference taken before ELIZABETH SANTOS, a Notary Public of
16    the State of New York, pursuant to order and stipulations
17    between Counsel.
18
19
20
21
22
23
24
25
```

```
 1
 2   A P P E A R A N C E S:
 3   HAROLDSALANT STRASSFIELD & SPIELBERG
 4   Attorney for David Ghatanfard
 5   81 Main Street
 6   White Plains, New York 10601
 7      BY:   NEAL S. COMER, ESQ.
 8
 9   LAW OFFICES OF FRED SEEMAN
10   Attorneys for Robert Daleo
11   32 Broadway, Suite 1214
12   New York, New York 10004
13      BY:   FRED SEEMAN, ESQ.
14
15   JOSEPH & KIRSCHENBAUM, LLP
16   Attorneys for Plaintiff
17   32 Broadway, Suite 601
18   New York, New York 10004
19      BY:   JOSEF NUSSBAUM, ESQ.
20   Also present:
21   Lucas Buzzard (Sitting in with Mr. Nussbaum)
     Leonard Spielberg (Sitting in with Mr. Comer)
22
23
24
25
```

## S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED BY AND BETWEEN the parties hereto through their respective counsel that all objections as to the form of the question shall be reserved to the time of trial;

IT IS FURTHER STIPULATED BY AND BETWEEN the parties hereto through their respective counsel that sealing, certification and filing shall be and the same are hereby waived;

IT IS FURTHER STIPULATED AND AGREED that the within examination may be signed and sworn to before any Notary Public with the same force and effect as if signed and sworn to before this Court.

1                     DAVID GHATANFARD

2   D A V I D   G H A T A N F A R D,

3   having first been duly sworn by Elizabeth Santos, a Notary

4   Public of the State of New York, was examined and testified

5   as follows:

6   EXAMINATION BY

7   MR. NUSSBAUM:

8              COURT REPORTER:  Please state your name

9        for the record.

10             THE WITNESS: David Ghatanfard.

11             COURT REPORTER:  What is your present

12       address?

13             THE WITNESS:  56 Oak Grove Road, private

14       house, South Hampton, New York.

15       Q.   Good morning, Ghatanfard.

16       A.   Good morning.

17       Q.   I've taken your deposition before, so I

18   know you have some experience with this.  I'm not

19   going to go over the details of all the rules since

20   I know you're familiar with them.  We're taking your

21   deposition today as part of a lawsuit that was

22   brought by Pavle Zivkovic against Valbella at the

23   Park, LLC.

24             Do you understand that?

25       A.   Yes, I do.

1              DAVID GHATANFARD
2        Q.   We're also taking your deposition today as
3    part of an earlier lawsuit that Mr. Zivkovic brought
4    against yourself personally and against Laura Kristy
5    Midtown, LLC.
6             Do you understand that?
7        A.   Yes, I do.
8        Q.   Do you understand that you're going to be
9    testifying today on behalf of yourself and on behalf
10   of Laura Kristy Midtown, LLC?
11       A.   Yes, I do.
12       Q.   I'm going to be asking you a number of
13   questions today.  The court reporter who you saw
14   earlier is going to be writing down everything that
15   you say.  So it's important that you give clear,
16   audible, verbal answers to my questions.
17             Do you understand that?
18       A.   Yes, I do.
19       Q.   The court reporter has sworn you in and
20   you're answering all questions under oath.  Do you
21   understand that you have the same obligation to tell
22   the truth, and would be subject to the same
23   penalties for perjury if you don't tell the truth as
24   if you were testifying in the Court of Law?
25       A.   Yes, I do.

Page 15

1                      DAVID GHATANFARD
2         talk for the rest of the deposition.
3              Do you understand that?
4              You're out of line already.  You're out of
5         line.
6              MR. SPIELBERG:  I understand everything I
7         need to understand to represent my client.  You
8         have not asked a substance of questions yet.
9         I'm suggesting you ask one.
10        Q.   Mr. Ghatanfard, do you intend to pay the
11   plaintiffs the amount that you owe them?
12        A.   I didn't agree on that.
13        Q.   I understand that you didn't agree, sir.
14   Is it your answer that you do not plan to pay them?
15        A.   No, I don't have the money to pay.
16        Q.   You don't have the money?
17        A.   Nope.
18        Q.   But you don't know how much you owe them,
19   so how do you know that you don't have the money?
20        A.   It doesn't matter.  I have some clothes,
21   and an old car.  You want it, you can have it.
22        Q.   Other then your clothes and your old car,
23   do you own any other assets?
24        A.   Not really, no.
25        Q.   Do you have access to any other assets?

Page 32

1              DAVID GHATANFARD
2      A.   What kind?
3      Q.   What types of documents would you look at
4  to help you recall?
5      A.   I don't look at any document.
6      Q.   If you wanted to know which account you're
7  using to pay for your gas, what documents would you
8  look at?
9           MR. SPIELBERG:  Objection.
10     A.   I have to look at the credit card.
11     Q.   How many credit cards do you have in your
12 wallet?
13     A.   Now?
14     Q.   Yeah.
15     A.   Two.
16     Q.   Do you have your wallet on you right now?
17     A.   I do.
18     Q.   How many credits cards do you have in
19 there?
20     A.   Two.
21     Q.   Which banks are they with?
22     A.   One is Bank of America.  And one card that
23 is under Ms. Kalayjian.  Authorized from Ms.
24 Kalayjian that I have.
25     Q.   Which bank is it with?

Page 33

1                    DAVID GHATANFARD
2        A.    It's an American Express.
3        Q.    With which bank?
4        A.    It's an American Express.
5        Q.    That's not the name.  Which bank is that
6    card with?
7              MR.COMER:  Objection.
8        A.    It's not a bank, it's American Express.
9        Q.    So your testimony is that the account is
10   Ms. Kalayjian's account, which she put you on it as
11   an authorized user?
12       A.    That's correct.
13       Q.    And the other credit card is the Bank of
14   America, the Valbella at the Park credit card?
15             MR. SEEMAN:  Objection.
16       Q.    What was the answer?
17       A.    Yes.
18       Q.    Do you have any other banking cards other
19   than those two credit cards on your possession?
20       A.    No, I don't.
21       Q.    When did Ms. Kalayjian add you as an
22   authorized user to her American Express account?
23       A.    I really don't recall when was it.
24       Q.    Was it more or less than five years ago?
25       A.    Less than five years ago.

Page 132

1    DAVID GHATANFARD
2    Q.   Where is this money now, this one million
3    fifty nine thousand dollars?
4         MR. SEEMAN:  Objection.
5    A.   I just answered you.
6    Q.   No, you didn't.  Where's is the money?
7    A.   The money was -- the money wasn't my
8    money.  It was Ms. Kalayjian's and my money.  We
9    paid everything else on it.
10   Q.   Why didn't you put Ms. Kalayjian on the
11   deed of that?
12        MR. SEEMAN:  Objection.
13   A.   I didn't thought it was necessary,
14   counsel.
15   Q.   I'm going to mark another exhibit, as
16   Plaintiff's Exhibit 10.
17        (The document was hereby deemed marked as
18        Plaintiff's Exhibit 10 for identification, as
19        of this date.)
20        Plaintiff's Exhibit 10 is another document
21        that we received from Patriot Bank in response
22        to subpoena.
23        In the middle there's a picture of a check
24        from Chase Bank.  On the top it says the
25        DeSanto Law Firm.

```
                                                    Page 133
 1                   DAVID GHATANFARD
 2           Do you see that?
 3      A.   Yes, I do.
 4      Q.   And it says pay to the order of David
 5   Ghatanfard.
 6                Do you see that?
 7      A.   Yes.
 8      Q.   And it's a check for 1.4 million dollars
 9   and a little bit more; right?
10      A.   There's a date on it?
11      Q.   The date is a little hard to see, but it's
12   January 3, 2022.
13                Do you see that?
14      A.   Yeah.
15      Q.   And the check is for about 1.4 million
16   dollars; right?
17      A.   Yes.
18      Q.   What's this check for?
19           MR. SEEMAN:  Objection.
20      Q.   You can answer, what's this check for?
21      A.   Remortgaging the house.
22      Q.   You keep speaking over your attorney.  So
23   please let him say his objection and then answer.
24      A.   I am not.  I'm looking at you and I'm
25   answering you.
```

Page 144

1          DAVID GHATANFARD
2     A.   Yes.
3     Q.   I just want to recap.
4          So you received a check for a little
5  bit more than a million dollars in September 2020;
6  right?
7     A.   The date is on there, right.
8     Q.   And then you took draws from Valbella
9  Midtown up to 1.1 million in 2021; right?
10    A.   That's what it said.
11    Q.   And then you got more than 1.4 million, in
12 a check made out only to you, for the refinance of
13 your house in South Hampton; right?
14    A.   That's what it says.
15    Q.   So 1 million, plus 1.1 million, plus 1.4
16 million, is the total of 3.5 million just from those
17 three transactions; right?
18    A.   I guess so.
19    Q.   So since 2020, you received 3.5 million
20 dollars, where's that money.
21         MR. SEEMAN:  Objection.
22    Q.   You can answer.
23         MR. SEEMAN:  Objection.
24    Q.   You can't confer with your attorney before
25 you answer.

Page 145

1              DAVID GHATANFARD
2         What's your answer.
3    A.   I said I answered all those questions
4  before.
5    Q.   No, you didn't.  I'm asking you, you took
6  out --
7         MR. SEEMAN:  Objection.
8         MR. NUSSBAUM:  I'll try one more time
9    Fred.
10        MR. SEEMAN:  Objection.
11   Q.   Mr. Ghatanfard, in those three
12 transactions you got money paid directly to you only
13 of more than $3.5 million.  I'm asking you, where is
14 that money?
15        MR. SEEMAN:  Objection.
16   Q.   What's your answer?
17        MR.COMER:  (Inaudible.)
18        MR. NUSSBAUM:  We can't hear you, Neal.
19        MR.COMER:  I said you asked him that
20    question in various forms over and over again.
21    It's enough, go to something else please.
22        MR. NUSSBAUM:  No, I didn't, I asked
23    him -- it's unfortunate that you can't follow.
24    I asked him about the 1.1 million.  I did not
25    ask about the 1 million that he got in

Page 146

1                DAVID GHATANFARD
2      September 2020.  I did not ask him about the
3      1.1 million from Valbella Midtown, and the 1.4
4      million in the refinancing.
5           So I'm asking him now, where is all that
6      money.
7           MR. SEEMAN:  Objection.
8      A.   I don't know.
9      Q.   How is it possible that you don't know
10   where $3.5 million went.
11           MR. SPIELBERG:  I object to that.  It's
12      ridiculous.  It's a ridiculous question.
13      Q.   You can answer.
14           MR. COMER:  He has told you various times
15      -- (Inaudible.)
16           MR. NUSSBAUM:  We can't hear you, Neal.
17           MR. COMER:  He has told you various times
18      in various answers --
19           MR. NUSSBAUM:  Neal, I'm cutting you off.
20      I'm cutting you off --
21           MR. COMER:  No, you're not cutting me off.
22      I can keep talking for as long as you can --
23           MR. NUSSBAUM:  For the record --
24           MR. COMER:  I'm going to keep talking until
25      you shut up and let me make my record --

Page 147

1           DAVID GHATANFARD
2           MR. NUSSBAUM:  For the record, you're
3      coaching the witness --
4           MR.COMER:  I'm talking, and I have to
5      defend my client.  And you're asking questions
6      and you're trying to trap him, and your trying
7      to ask the same question over and over again.
8      And it's not right --
9           MR. NUSSBAUM:  Your client is saying that
10     he doesn't know where $3.5 million went, that's
11     who you're defending.  If you want you can
12     object it.  I'm trying to ask him a follow-up
13     question.
14         Q.   How is it that you don't know that you
15  have not kept track of where $3.5 went Mr.
16  Ghatanfard?
17          MR. SEEMAN:  Objection.
18     Q.    You can answer.
19          MR. SEEMAN:  Objection.
20          MR. NUSSBAUM:  He has to speak up.
21     Q.    And you can't talk to your lawyer before
22  answering.
23     A.    I didn't talk to my lawyer.
24          MR. SPIELBERG:  Put your head into the
25     screen, so Mr. Nussbaum could know he's not

Page 148

1              DAVID GHATANFARD
2       talking with you.
3           THE WITNESS:  I am.  Look at me, I'm
4       sitting right in the screen.
5       Q.   I'll ask it again so there's a clear
6   record.
7              How is it possible that you have not
8   kept track of $3.5 million?
9           MR. SEEMAN:  Objection.
10      A.   I don't keep record of money.
11      Q.   Did you get any money from Valbella at the
12  Park?
13          MR. SEEMAN:  Objection.
14      A.   What do you mean by that?  When?
15      Q.   Have you received any money from Valbella
16  at the Park?
17          MR. SEEMAN:  Objection.
18      Q.   Except for your salary, have you received
19  any money from Valbella at the Park?
20      A.   No, I did not.
21      Q.   You said you're a partner in that
22  restaurant; right?
23      A.   Yes.
24          MR. SEEMAN:  Objection.
25      Q.   Do you know if any of the other partners

Page 242

1           DAVID GHATANFARD
2      A.   I don't know.  I really don't know.  I
3  probably it's -- you know, you're a partner
4  together.  She paid a lot of the mortgages for us --
5  for me.  She paid for the house in the Hamptons and
6  all the construction.  And possible most likely some
7  money went to her for all the money that she was
8  investing, paying the mortgage and everything else.
9      Q.   So you started off today by saying all you
10 have are your clothes and your car.  It doesn't
11 bother you that you had three and a half million
12 dollars in your hand, and now you just don't know
13 where it went?
14          MR. SEEMAN:  Objection.
15      A.   No.
16      Q.   What's your answer?
17      A.   No.
18      Q.   It doesn't bother you?
19          MR. SEEMAN:  Objection.
20      A.   I can go back and live somewhere else.
21      Q.   Where are you going to go live?
22          MR. SEEMAN:  Objection.  Objection.
23      Q.   I'm sorry, where were you going to go
24 live?
25          MR. SEEMAN:  Objection.

Page 250

1           DAVID GHATANFARD
2  money; right?
3       A.   I did not say that.
4       Q.   But what's the largest amount of money
5  that Rosey has ever paid into your joint account?
6            MR. SEEMAN:  Objection.
7       A.   I really don't know.
8       Q.   Did she ever make any --
9       A.   I don't think you give women any rights.
10 You don't go in and think they can't make money.
11 Women today make a lot of money.
12      Q.   Unfortunately you don't know what I think.
13           Did Rosey Kalayjian ever deposit more
14 than $100,000 at a time in your joint account?
15      A.   I don't know.
16           MR. SEEMAN:  Objection.
17      Q.   Did she ever deposit more than $50,000 at
18 a time in your joint account?
19           MR. SEEMAN:  Objection.
20      A.   I don't recall.
21      Q.   So Rosey now is making payments on your
22 behalf, though; right?
23      A.   Yes.
24      Q.   January 16th, external withdrawal to
25 Shellpoint Mortgage Moneyline for 7,000.