Page 1

```
 1
 2   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 3   - - - - - - - - - - - - - - - - -x
     PAVLE ZIVKOVIC,
 4                  Plaintiff,
 5                           22 Civ. 7344(GHW)
 6           -against-
 7   VALBELLA AT THE PARK, LLC,
 8                  Defendant.
     - - - - - - - - - - - - - - - - -x
 9
10               DATE:  Thursday, May 25, 2023
11               TIME:  10:03 a.m.
12
13         Deposition of ROSEY KALAYJIAN,
14   Defendant, taken by Plaintiff, in the
15   above-entitled action, held via Zoom, Veritext
16   Virtual, pursuant to notice, taken before
17   Elizabeth A. Stella, a Stenographer and Notary
18   Public within and for the State of New York.
19
20
21
22
23
24
25
```

Page 2

```
 1                    2
 2  R E M O T E  A P P E A R A N C E S:
 3     JOSEPH & KIRSCHENBAUM, LLP
           Attorneys for Plaintiff
 4         32 Broadway, Suite 601
           New York, New York 10004
 5         (212) 688-5640
 6     BY:  LUCAS C. BUZZARD, ESQ.
           lucas@jk-llp.com
 7
 8     LAW OFFICES OF FRED L. SEEMAN
 9         Attorneys for Defendant,
           Valbella at the Park LLC
10         32 Broadway, Suite 1214
           New York, New York 10004
11         (212) 608-5000
12     BY:  FRED L. SEEMAN, ESQ.
           fred@seemanlaw.com
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
                    3
 1              STIPULATIONS
 2       It is hereby stipulated and agreed by
 3  counsel and among counsel for the respective
 4  parties hereto, that the filing, sealing, and
 5  certification of the witness' deposition shall
 6  be and the same are hereby waived; it is
 7  further stipulated and agreed that all
 8  objections, except as to the form of the
 9  question, shall be reserved to the time of
10  trial; it is further stipulated and agreed
11  that the within deposition may be signed
12  before any notary public with the same force
13  and effect as if signed and sworn to before
14  the Court.
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1              R. Kalayjian
 2  R O S E Y  K A L A Y J I A N, the witness
 3  herein, having been sworn, remotely, upon
 4  being examined testified as follows:
 5  EXAMINATION BY MR. BUZZARD:
 6       Q    Good morning, Ms. Kalayjian.  How
 7  are you?
 8       A    Good, thanks.  How are you?
 9       Q    Good, thanks.  So I know, obviously
10  I was present for your last deposition, so I
11  know you know generally what this is.  So I'll
12  just very briefly go over some basic ground
13  rules for today.
14       First, because Ms. Stella is writing
15  down everything that we say, it's important to
16  let me finish my question before you answer.
17  Is that all right?
18       A    Yes.
19       Q    And I will do the same for you,
20  obviously.  Also, you know, just in case we
21  have any technical difficulties or anything
22  like that, if you can't hear me or if you
23  don't hear the question, just let me know and
24  I'm happy to repeat.  Do you understand that?
25       A    Yes.
```

Page 5

```
 1              R. Kalayjian
 2       Q    And by the same token, if you don't
 3  understand one of my questions, just let me
 4  know and I'll rephrase it or ask it in a
 5  different way.  Is that all right?
 6       A    Yes.
 7       Q    Okay.  If you need a break at any
 8  time, just let me know.  I know we're only
 9  here until -- we have a hard stop at 1:00, so
10  I'm just going to try to go as quickly as
11  possible, but obviously if anyone needs a
12  break, just let me know and we'll just try to
13  keep them quick if that's okay.  The only
14  thing I ask, Ms. Kalayjian, is that if I've
15  asked a question that you answer it before we
16  take any break.  Is that all right?
17       A    Yes.
18       Q    Your attorney, Mr. Seeman, may
19  object to some of my questions; however,
20  unless he specifically instructs you not to
21  answer, you still must answer, despite his
22  objection.  Do you understand that?
23       A    Yes.
24       MR. SEEMAN:  Mr. Buzzard, on that issue,
25    are you going to make a statement that this is
```

Page 14

1  R. Kalayjian
2  Q  Is this the operating agreement for
3  Oak Grove Road, LLC?
4  A  That's what it says.
5  Q  I know that's what it says.  Is
6  that what it is?
7  A  I suppose.  That's what it is.
8  It's right there on your screen.
9  Q  Okay.  Did you collect this
10 document to be produced in this litigation?
11 A  I suppose I did.  You have it.  I
12 don't recall every single piece of -- you sent
13 an enormous list of items, so if you have it,
14 then there it is.
15 Q  Okay.  Do you recall where you
16 collected this document from?
17 A  No, I don't.
18 Q  But you in fact gave this to
19 Mr. Seeman to be produced in this litigation?
20 A  I suppose I did.  You have to ask
21 Fred all the e-mails and things I've sent him.
22 I don't recall.
23 Q  Okay.  Do you have any reason to
24 believe that this document is not the
25 operating agreement for Oak Grove Road, LLC?

Page 15

1  R. Kalayjian
2  A  I don't know.  I'm assuming it is.
3  I mean, it's right there.  You have it.
4  Q  Do you know who prepared this
5  document?
6  A  No.
7  Q  Do you have any reason to believe
8  that this operating agreement for Oak Grove
9  Road, LLC is not authentic?
10 A  No.
11 Q  Going down to the last part of this
12 operating agreement.  It says:  In witness
13 whereof, the member has executed and agreed to
14 this limited liability company operating
15 agreement, which shall be effective as of
16 February 26, 2021.
17    To your understanding, did this
18 operating agreement become effective February
19 26, 2021?
20 A  I suppose.  I don't recall.
21 Q  All right.  Do you have any
22 ownership interest in Oak Grove Road, LLC?
23 A  Of course I do and you know that.
24 Q  And what is your ownership interest
25 in that company?

Page 16

1  R. Kalayjian
2  A  I'm a 90 percent owner of this
3  company.
4  Q  Okay.  Since what date have you
5  owned 90 percent of Oak Grove Road, LLC?
6     MR. SEEMAN:  Objection.
7     Go ahead and answer if you can.
8  A  Since day one.
9  Q  So is it your testimony that since
10 February 26, 2021, you have been a 90 percent
11 owner of Oak Grove Road, LLC?
12    MR. SEEMAN:  Objection.
13 A  Yes.
14 Q  Okay.  Let's look at DEF304 through
15 DEF306.  And I'll just go through this quickly
16 for you.  This is titled first amendment to
17 the operating agreement of Oak Grove Road,
18 LLC.  Do you see that?
19 A  Um-hum.  Yes.
20 Q  Just let me know when you want me
21 to move to the next page.
22 A  You can go ahead.
23 Q  Okay.
24 A  Okay.  So what are you getting at?
25 Q  I just want you to take a look at

Page 17

1  R. Kalayjian
2  this document.  Are you ready for me to ask
3  questions about it?
4  A  No.
5  Q  Okay.  Have you been able to review
6  it?
7  A  Go ahead.  You need to ask me a
8  question.  Go ahead.
9  Q  Okay.  Is this your signature --
10 A  That's my signature.
11 Q  -- on DEF306?
12 A  Yes, that's my signature.
13 Q  Under Rosey Kalayjian?  Under the
14 typed word Rosey Kalayjian?
15 A  I said yes.
16 Q  Okay.  And what do you understand
17 these three pages to be?
18    MR. SEEMAN:  I'm going to object, but go
19    ahead and answer.
20 A  I'm not a lawyer so I -- I think
21 it's a summary.
22 Q  Do you recall signing this
23 document?
24 A  Obviously, I signed it.  Do I
25 recall when I signed it, no, I don't.

5 (Pages 14 - 17)

Page 18

1        R. Kalayjian
2    Q   Do you recall signing it in
3  February of 2021?
4    A   No, I don't recall the date I
5  signed it.
6    Q   Do you have any reason to believe
7  that this is not a true and accurate amendment
8  to the operating agreement of Oak Grove Road,
9  LLC?
10   A   Say that again.
11   Q   Do you have any reason to believe
12 that this document, located at Bates stamps
13 DEF304 to DEF306, is not a true and accurate
14 amendment to the operating agreement of Oak
15 Grove Road?
16   A   No.  Obviously -- I don't sign
17 things that are not legal or I'm comfortable
18 with.  So at that time, I signed it, and I was
19 comfortable with it.  Do I remember it, no.
20   Q   All right.  Now, this amendment
21 states that it is dated and effective as of
22 the 16th day of June 2022.  Do you see that?
23   A   Um-hum.  Yes.
24   Q   Do you have any reason to believe
25 that this amendment is not effective as of

Page 19

1        R. Kalayjian
2  June 16th of 2022?
3    A   No.  You're going around in
4  circles.  You're asking me the same thing in a
5  different way, so...  Do you want to move on?
6  I don't know what to tell you.
7    Q   No.  I just want an answer to that
8  question.  Do you have any reason to believe
9  that this specific amendment was not effective
10 as of June 16th, 2022?
11   A   And, again, I am going to say, I
12 signed it.  Whenever I signed it, I was
13 comfortable with it when I signed it.
14   Q   Right.  But that's not my question.
15   A   I don't know how to answer you to
16 be honest.  I mean, it's there.  I signed it.
17 I don't know what you want from me.
18   Q   Do you believe that this amendment
19 is incorrectly dated?
20   A   I don't know.  I don't remember
21 almost a year or two ago.
22   Q   Okay.  Do you have any reason to
23 believe that this amendment is inaccurate in
24 any respect?
25   A   I don't know.  Ask my lawyer.  I

Page 20

1        R. Kalayjian
2  don't know.
3    Q   Well, I would, but Mr. Seeman is
4  not being deposed today.  I'm asking you, as a
5  representative of Valbella at the Park, do you
6  have any reason to believe that this amendment
7  is inaccurate in any respect?
8        MR. SEEMAN:  Objection.
9    Q   You can answer, Ms. Kalayjian.
10   A   I've been answering you.
11   Q   And your answer is --
12   A   I signed it and I was comfortable
13 with it when I signed it.
14   Q   Okay.  But you don't recall when
15 you signed it?
16   A   No.
17   Q   Okay.  And you don't recall whether
18 it was on the 16th of June 2022?
19   A   Isn't there a date when I signed
20 it?  That should tell you when I signed it.
21   Q   Well, I'm reading it.  It says it's
22 dated and effective as of the 16th day of June
23 2022?
24   A   Okay.  Do you remember when you
25 signed something two years ago?  A year ago?

Page 21

1        R. Kalayjian
2    Q   No. Which is why I'm asking you if
3  you have any reason to believe that that is an
4  inaccurate date?
5    A   I don't know.  I don't recall.  I
6  think it's irrelevant.
7    Q   Your lawyer can make that objection
8  later.  Ms. Kalayjian, I know you don't want
9  to answer this question, but I'm really just
10 looking for a yes-or-no answer.  Do you have
11 any --
12   A   And I can't give you that.  I don't
13 remember.  I don't know.
14       MR. SEEMAN:  Objection.
15   A   I don't know.
16   Q   Okay.  When you collected this
17 document to be produced in connection with
18 this lawsuit, did you have any reason to
19 believe that it was not true and accurate?
20   A   If it wasn't true, I wouldn't
21 submit it.  Isn't that common sense?
22   Q   Thank you.  Going to page DEF306,
23 you testified earlier that your signature
24 appears on this page on the right-hand side,
25 right?  Is that right?

Page 22

1        R. Kalayjian
2    A   Yes, for the -- I don't know how
3  many times you're going to ask me the same
4  question.
5    Q   Thank you.  And do you recognize
6  the other signature on this page?
7    A   Yes.
8    Q   Whose signature is it?
9    A   It says right there, it's David
10 Ghatanfard.
11   Q   Turning to page DEF307 to DEF308.
12 Do you see that?
13   A   Yes.
14   Q   This is titled assignment and
15 assumption of membership interest.  Do you see
16 that?
17   A   Um-hum.
18   Q   Okay.  Just going down to the last
19 page of this, is this also your signature on
20 the right-hand side?
21   A   Yes.
22   Q   And do you recognize the other two
23 signatures on this page?
24   A   Yes.
25   Q   And whose signatures are those?

Page 23

1        R. Kalayjian
2    A   It says right there, David
3  Ghatanfard.
4    Q   Okay.  And you see down here it
5  says agreed and accepted as of the 16th day of
6  June 2022.  Do you see that?
7    A   Yes.
8    Q   Do you have any reason to believe
9  that you did not sign this document on June
10 16, 2022?
11   A   No. I have no reason to believe
12 otherwise.
13   Q   So down on the signature page, you
14 are designated the assignee.  Do you see that?
15   A   Yes.
16   Q   And Mr. Ghatanfard is the
17 designated the assignor?
18   A   Yes.
19   Q   Okay.  Going up to Paragraph 2, it
20 says transfer.  I'm not going to read the
21 whole paragraph.  You can read it if you want,
22 but I'm just going to briefly state the part
23 of it that says:  Assignor, in consideration
24 of the assignee's assumption of certain
25 outstanding debts and liability of the company

Page 24

1        R. Kalayjian
2  obligations set forth in the operating
3  agreement and other good and valuable
4  consideration, the receipt and sufficiency of
5  which is hereby acknowledged hereby sells,
6  transfers, and assigned to assignee 90 percent
7  of assignor's interest in the company to the
8  assignee.  Do you see that?
9    A   I do.
10   Q   What do you understand this
11 assignment document to have been doing?
12       MR. SEEMAN:  Objection.
13   Q   You can answer, Ms. Kalayjian.
14   A   In legal terms, I don't feel -- I
15 don't know.  You have to ask Fred that.  I
16 don't know.
17   Q   Do you recall signing this?
18   A   At that moment, I don't remember.
19 I don't remember what happened.
20   Q   Okay.  Even if you don't remember
21 the exact moment that you signed this
22 document, do you remember why you signed this
23 document?
24       MR. SEEMAN:  Objection.
25   A   No. Do you know?

Page 25

1        R. Kalayjian
2    Q   I don't know.  That's why I'm
3  asking you.
4    A   Um-hum.
5    Q   Okay.  In June of 2022, isn't it
6  true that Mr. Ghatanfard transferred to you 90
7  percent of Oak Grove Road, LLC?
8        MR. SEEMAN:  Objection.
9    Q   You can answer, Ms. Kalayjian.
10   A   I don't know.  Is that what you're
11 showing me here?
12   Q   I'm asking you, isn't it true that
13 he did in fact transfer you 90 percent of Oak
14 Grove Road, LLC in or about June 2022?
15   A   I mean, if that's what that paper
16 says then...
17   Q   Okay.  Is that what you understand
18 this paper to say?
19       MR. SEEMAN:  Objection.
20   Q   You can answer, Ms. Kalayjian.
21   A   No, I know I can answer, but I'm
22 not sure.  I believe so.
23   Q   Okay.  So if Mr. Ghatanfard
24 transferred to you 90 percent of Oak Grove
25 Road, LLC in June 2022, up until that point,

7 (Pages 22 - 25)

Page 26

```
 1            R. Kalayjian
 2  you did not own 90 percent of Oak Grove Road,
 3  LLC; is that right?
 4        MR. SEEMAN: Objection. Objection.
 5     Q   You can answer, Ms. Kalayjian.
 6     A   I did. From the very beginning, I
 7  did. It was a verbal agreement. I'm the one
 8  who set up the LLC, and as I told your partner
 9  on February 8th, I made a mistake when I
10  opened it, because I didn't use an accountant
11  and I didn't use a lawyer. So you can go back
12  to February 8th and read everything about
13  this.
14     Q   Okay. I think, it sounded to me on
15  February 8th you were talking about filing
16  things with the Department of State. Is that
17  where you made the mistake?
18        MR. SEEMAN: Objection.
19        Go ahead.
20     A   No. I made the mistake because I
21  didn't use an accountant or a lawyer. And I
22  opened up this LLC, not David. I did it.
23     Q   If you opened up Oak Grove Road,
24  LLC, why was there any need for this
25  assignment and assumption of membership
```

Page 27

```
 1            R. Kalayjian
 2  interest document?
 3        MR. SEEMAN: Objection. She just answered
 4    that.
 5        THE WITNESS: I know.
 6     Q   You could answer it.
 7     A   Because I said -- go back to
 8  February 8th. Go through those 400 pages.
 9     Q   So is it your testimony that you
10  were always a 90 percent owner of Oak Grove
11  Road, LLC?
12     A   Yes. Yes. Yes.
13     Q   And the entire operating agreement
14  for Oak Grove Road, LLC was not correct?
15     A   The original one?
16     Q   Yes.
17     A   Yes, it was not correct. I told
18  your partner on February 8th, I made a
19  mistake.
20     Q   And what precisely was the mistake
21  that you're talking about?
22     A   When I filled -- I did it online.
23  Because I didn't use an accountant and I
24  didn't use a lawyer; so, therefore, I made a
25  mistake on the entry online when I was filing
```

Page 28

```
 1            R. Kalayjian
 2  the LLC, and I put my name and David's name,
 3  and I guess I put it in the wrong boxes and I
 4  realized a mistake was made, a huge one.
 5     Q   You're talking about when you were
 6  filing the documents with the Department of
 7  State? Is that what you're talking about?
 8     A   Yes, to start a new company, to
 9  start a new LLC.
10     Q   So I'm not talking about that right
11  now. I'm talking about this agreement, which
12  we've established is the Oak Grove Road
13  operating agreement that starts at DEF293,
14  right?
15        MR. SEEMAN: Objection. Objection.
16     Q   You can answer.
17     A   The operating agreement comes with
18  the LLC.
19     Q   Okay. So is it your testimony, I'm
20  reading from the operating agreement, it says
21  in Section 3A: The members of Oak Grove Road,
22  LLC at the time of adoption of this agreement
23  is David Ghatanfard.
24       Do you see that?
25     A   I see it.
```

Page 29

```
 1            R. Kalayjian
 2     Q   Is that a mistake?
 3     A   Yes.
 4     Q   So --
 5     A   Because he's not the sole member.
 6     Q   Did you have any role in drafting
 7  this specific operating agreement titled
 8  limited liability company agreement of Oak
 9  Grove Road, LLC?
10     A   I don't think I did. I don't know
11  if it was a template used, but David and I are
12  not lawyers, so I don't know where this
13  came -- I don't know.
14     Q   So but the mistake you're referring
15  to has nothing to do with this document,
16  right?
17        MR. SEEMAN: Objection. Objection.
18     Q   It has to do with your submission
19  of documents to the New York Department of
20  State; is that right?
21        MR. SEEMAN: Objection.
22     A   Obviously this is the aftermath of
23  my mistake.
24     Q   Do you have any documents from in
25  and around February 2021 in which it is
```

8 (Pages 26 - 29)