# EXHIBIT D

Page 1

1

2    IN THE UNITED STATES DISTRICT COURT

     FOR THE SOUTHERN DISTRICT OF NEW YORK

3    --------------------------------------------X

4    PAVLE ZIVKOVIC,

5                          Plaintiff,

6              v.

7    VALBELLA AT THE PARK, LLC

8    --------------------------------------------x

9                          Zoom Video Conference

10                         May 4, 2023

11                         10:06 a.m.

12

13              EXAMINATION BEFORE TRIAL of DAVID GHATANFARD, the

14   Defendant in the above-entitled action, held via Zoom Video

15   Conference taken before ELIZABETH SANTOS, a Notary Public of

16   the State of New York, pursuant to order and stipulations

17   between Counsel.

18

19

20

21

22

23

24

25

Page 2

```
 1
 2   A P P E A R A N C E S:
 3   HAROLDSALANT STRASSFIELD & SPIELBERG
 4   Attorney for David Ghatanfard
 5   81 Main Street
 6   White Plains, New York 10601
 7      BY:  NEAL S. COMER, ESQ.
 8
 9   LAW OFFICES OF FRED SEEMAN
10   Attorneys for Robert Daleo
11   32 Broadway, Suite 1214
12   New York, New York 10004
13      BY:  FRED SEEMAN, ESQ.
14
15   JOSEPH & KIRSCHENBAUM, LLP
16   Attorneys for Plaintiff
17   32 Broadway, Suite 601
18   New York, New York 10004
19      BY:  JOSEF NUSSBAUM, ESQ.
20   Also present:
21   Lucas Buzzard (Sitting in with Mr. Nussbaum)
     Leonard Spielberg (Sitting in with Mr. Comer)
22
23
24
25
```

1

2                     S T I P U L A T I O N S

3

4

5        IT IS HEREBY STIPULATED AND AGREED BY AND BETWEEN the

6    parties hereto through their respective counsel that all

7    objections as to the form of the question shall be reserved

8    to the time of trial;

9

10   IT IS FURTHER STIPULATED BY AND BETWEEN the parties hereto

11   through their respective counsel that sealing, certification

12   and filing shall be and the same are hereby waived;

13

14   IT IS FURTHER STIPULATED AND AGREED that the within

15   examination may be signed and sworn to before any Notary

16   Public with the same force and effect as if signed and sworn

17   to before this Court.

18

19

20

21

22

23

24

25

```
                                                    Page 4
 1                      DAVID GHATANFARD

 2    D A V I D   G H A T A N F A R D,

 3    having first been duly sworn by Elizabeth Santos, a Notary

 4    Public of the State of New York, was examined and testified

 5    as follows:

 6    EXAMINATION BY

 7    MR. NUSSBAUM:

 8              COURT REPORTER:  Please state your name

 9         for the record.

10              THE WITNESS: David Ghatanfard.

11              COURT REPORTER:  What is your present

12         address?

13              THE WITNESS:  56 Oak Grove Road, private

14         house, South Hampton, New York.

15         Q.   Good morning, Ghatanfard.

16         A.   Good morning.

17         Q.   I've taken your deposition before, so I

18    know you have some experience with this.  I'm not

19    going to go over the details of all the rules since

20    I know you're familiar with them.  We're taking your

21    deposition today as part of a lawsuit that was

22    brought by Pavle Zivkovic against Valbella at the

23    Park, LLC.

24              Do you understand that?

25         A.   Yes, I do.
```

```
                                              Page 95
 1                      DAVID GHATANFARD
 2        Q.   Did you ever meet with any attorneys to
 3   sign an agreement or to organize an agreement for
 4   Oak Grove Road, LLC?
 5        A.   No.
 6        Q.   Isn't it true that Oak Grove Road, LLC is
 7   the company that you used to invest in Valbella at
 8   the Park?
 9        A.   I don't know.
10        Q.   How did you become a partner at Valbella
11   at the Park?
12        A.   I didn't handle that part.
13        Q.   So you don't know how you became a partner
14   at Valbella at the Park?
15        A.   I just know that I'm 10 percent partner in
16   Valbella at the Park.
17        Q.   But you don't know how that came to be?
18        A.   No.
19        Q.   I'd like to direct your attention to an
20   earlier part of this exhibit -- withdrawn.
21             How much did you invest in Valbella
22   at the Park?
23        A.   I don't recall.
24        Q.   Was it more or less than a million
25   dollars?
```

```
                                              Page 96
 1                    DAVID GHATANFARD
 2        A.    I'm sorry.
 3        Q.    Was it more or less than a million
 4   dollars?
 5        A.    I didn't invest any money.
 6        Q.    So how did you become a partner?
 7        A.    I believe the reason of, you know, being,
 8   you know, management a part of -- what you call it,
 9   deeds, I have ten percent.  Five or 10 percent of
10   the deed.
11        Q.    I'd like to direct your attention to page
12   310 of this exhibit, which is marked as DEF304.
13              On the top it says, First Amendment
14   to the Operating Agreement of Oak Grove Road, LLC.
15              Do you see that?
16        A.    I do.
17        Q.    And then on the next page at the bottom or
18   two pages later, I'm sorry, at the bottom it says,
19   Acknowledged and Agreed, David Ghatanfard and
20   there's a signature.
21              Is that your signature?
22        A.    No.
23        Q.    That's not your signature?
24        A.    No.
25        Q.    Who signed the checks at Valbella Midtown,
```

```
 1                    DAVID GHATANFARD
 2      A.    Can I see the signature again?
 3      Q.    Sure.  You should have it on your screen.
 4      A.    I think so.
 5      Q.    But you're not sure about this one either?
 6      A.    I think so.
 7      Q.    I don't know what that means.
 8            Are you sure this isn't your
 9   signature or not?
10            MR. SEEMAN:  Objection.
11      A.    I think so, that's my signature.
12      Q.    Are you sure that it is?
13            MR. SEEMAN:  Objection.
14      A.    I think that's my signature.
15      Q.    I'd like to show you a document that I'm
16   going to mark as Exhibit 8.
17            (The document was hereby deemed marked as
18        Plaintiff's Exhibit 8 for identification, as of
19        this date.)
20            On your screen you should have a six-page
21        document that we're marking as Plaintiff's
22        Exhibit 8.
23            I'll represent to you that these are
24        documents that were produced to my office by
25        PNC Bank in response to a subpoena we served in
```

1                    DAVID GHATANFARD

2        the class action.  On the top of the first page

3        it says, PNC Bank on a check

4              Do you see that?

5        A.   Yes, I do.

6        Q.   And the check is paid to the order of

7    David Ghatanfard.

8                  Do you see that?

9        A.   Yes, I do.

10       Q.   And is that your signature?

11       A.   Probably.

12       Q.   Why are you saying probably?

13            MR. SEEMAN:  Objection?

14       A.   I don't remember sign it, but probably

15   that's my signature.

16       Q.   Do you remember depositing this check for

17   $100,000?

18       A.   I don't recall.

19       Q.   Do you see on the endorsement there's

20   another signature; is that your signature?

21       A.   I don't know if it is or not.

22       Q.   Did you take a draw of $100,000 from

23   Valbella Midtown --

24            MR. SEEMAN:  Objection.

25       Q.   -- in February 2021?

1              DAVID GHATANFARD

2              MR. SEEMAN:  Objection.

3              MR. NUSSBAUM:  I was in the middle of my

4         question, Mr. Seeman.  I'm going to ask it

5         again.

6         Q.   Mr. Ghatanfard, did you take a draw out

7    from Valbella Midtown for $100,000, in February

8    2021?

9              MR. SEEMAN:  Objection.

10        A.   Ask the question again.

11        Q.   Did you take $100,000 from Valbella

12   Midtown and pay it to yourself in February 2021?

13        A.   Looks like I did.

14        Q.   Do you remember doing it?

15        A.   I don't remember.

16        Q.   Turning to the next page on this document,

17   is another check from PNC Bank, dated April 19,

18   2021.  And there's a pay to order to David

19   Ghatanfard for $200,000 and the signature.

20              Is this your signature on the check?

21        A.   Probably.

22        Q.   What would make you sure that it is or is

23   not your signature?

24        A.   I don't know.

25        Q.   Do you not remember what your signature

                          DAVID GHATANFARD

1

2    looks like?

3         A.   I don't know.

4         Q.   Do you drive everyday?

5         A.   Do I drive everyday?

6         Q.   Yeah, do you drive a car?

7         A.   Sometimes.

8         Q.   Are you wearing glasses right now?

9         A.   No.

10        Q.   Do you have any problems with your vision?

11        A.   I'm sorry.

12        Q.   Do you have any problems with your vision?

13        A.   I didn't check my eyes yet lately.

14        Q.   But as far as you know, you don't have any

15   problems with your vision; right?

16        A.   I don't know.

17        Q.   You don't know if you have any problems

18   with your vision?

19        A.   I didn't checkup on my eyes for the past

20   seven years.

21        Q.   I'm not saying a checkup.  As you're

22   sitting here right now, do you feel like you have a

23   problem with your vision?

24        A.   I don't know.

25        Q.   You don't know.

1                        DAVID GHATANFARD

2                    On the back of the check for the

3    endorsement there's another signature.

4                    Is that your signature on the right

5    side of the page?

6         A.    I don't know.

7         Q.    Why is it that you don't know?

8         MR. SEEMAN:   Objection.

9         A.    I don't know.

10        Q.    What was the answer?

11        A.    It looks like it.

12        Q.    I'm going to show you Exhibit 7 again.   On

13   the last page of Exhibit 7, you said this was your

14   signature; right?

15        A.    Probably.

16        Q.    Now you're saying probably.   Before you

17   said you thought so.

18        A.    Yes, that's the same thing.

19        Q.    I'm sorry I cut out, what was your answer?

20        A.    English is not my first language.

21        Q.    I'm talking to you about a signature.   I'm

22   not talking about English, Mr. Ghatanfard.

23                    Is this your signature or not.

24        MR. SEEMAN:   Objection.

25        A.    Probably yes.

Page 120

1        DAVID GHATANFARD

2        Q.    On Exhibit 8, is this your signature or

3    not?  Are these two signatures your signatures or

4    not?

5        A.    Probably.

6        Q.    So you can't say definitely either way if

7    any of the signatures that I showed you, are your

8    signature; is that right?

9        A.    I wish I had a better answer for you.

10       Q.    Please answer my question.

11              You cannot say definitely either way,

12   if any of the signatures that I showed you, are in

13   fact your signature; right.

14             MR. SEEMAN:  Objection.

15       A.    I don't remember signing any of those.  I

16   really don't remember.

17       Q.    That's not my question.  I didn't ask you

18   if you remember signing it.  I'm asking if the

19   signature on the page is your signature.  And I'm

20   asking you now, you're telling me that out of all

21   the signatures I've showed you so far today, you are

22   not able to tell me definitely one way or another if

23   they are or not your signature; correct?

24       A.    Yes.

25       Q.    Is there anything that I could show you

```
                                           Page 121

 1                    DAVID GHATANFARD
 2   that would help you to be able to recognize what is
 3   your signature?
 4        A.    Probably not.
 5        Q.    Continuing on Plaintiff's Exhibit 8, page
 6   three of this exhibit is another check in 2021 pay
 7   to the order of David Ghatanfard from Laura Christy
 8   Midtown, LLC for $200,000.
 9              Do you see that?
10        A.    Yes, I do.
11        Q.    And you're paying yourself $200,000 in May
12   2021?
13        A.    Probably.
14        Q.    Turning to the next page, June 30, 2021,
15   there's a check again from Laura Christy Midtown,
16   LLC, pay to the order of David Ghatanfard for
17   another $200,000.
18              Do you see that?
19        A.    Yes.
20        Q.    Do you remember paying yourself for the
21   end of June 2021 for $200,000?
22        A.    Probably.
23        Q.    What would help you remember for sure that
24   you did or did not?
25        A.    I don't know.
```

```
                                        Page 122

 1                     DAVID GHATANFARD
 2        Q.   But you remember taking large draws from
 3    Valbella Midtown in 2021; correct?
 4             MR. SEEMAN:  Objection.
 5        A.   If the check said it.
 6        Q.   But you remember taking draws of $100,000
 7    or $200,000 --
 8        A.   I don't remember.
 9             MR. SEEMAN:  Objection.
10             MR. NUSSBAUM:  Everyone is talking at
11        once.  I'm going to ask it again.
12        Q.   You remember taking draws of $100,000 or
13    $200,000 from Valbella Midtown in 2021; correct?
14             MR. SEEMAN:  Objection.
15        A.   Probably.
16        Q.   What would make you know for sure?
17             MR. SEEMAN:  Objection.
18        A.   I don't know.
19        Q.   Is there anything at all that would help
20    refresh your recollection other than looking at the
21    checks?
22        A.   I don't know.
23             MR. SEEMAN:  Objection.
24        Q.   The next one, another check, July of 2021
25    for $200,000 to David Ghatanfard.
```

```
                                        Page 123
 1                  DAVID GHATANFARD
 2               Do you see that?
 3       A.   Repeat that question.
 4       Q.   Do you see this check for $200,000 that's
 5   paid to you?
 6       A.   Yes.
 7       Q.   Is that your signature on that?
 8       A.   Probably.
 9       Q.   Do you recall paying yourself a check for
10   $200,000 in July of 2021?
11       A.   I don't recall.
12       Q.   And the last page in this document,
13   another check for $200,000 paid to David Ghatanfard
14   in September of 2021.
15               Do you see that?
16       A.   Yes, I do.
17       Q.   Isn't it true that you withdrew $1.1
18   million in these checks from Valbella Midtown?
19       A.   If the check amount to the much, it's
20   true.
21       Q.   But do you recall in 2021 that you took
22   out more than a million dollars out of Valbella
23   Midtown?
24       A.   I don't recall.
25       Q.   Do you recall taking any money out of
```

```
                                              Page 124

1                      DAVID GHATANFARD

2    Valbella Midtown?

3         A.   Yes, I took some money.  I don't remember

4    how much.

5         Q.   Where is that money now?

6         A.   I'm sorry.

7         Q.   Where is that money now?

8         A.   The money was invested.  The money was

9    given to my family in Iran because they needed help.

10   My brother back in New York when he needed help?

11        Q.   Do you have records of that?

12        A.   I pay my taxes.

13        Q.   Do you have records of transferring money

14   to the family?

15        A.   I'm sorry.

16        Q.   Do you have any records of transferring

17   money to family?

18        A.   You can't send money to Iran and have

19   document on it.  You know better than that.

20        Q.   So you sent it to them in cash?

21             MR. SEEMAN:  Objection.

22        A.   I'm sorry.

23        Q.   You sent it to them in cash?

24        A.   I don't remember.

25        Q.   You don't remember how you sent the money?
```

Page 125

1                   DAVID GHATANFARD

2       A.   My brother handled it.  I don't remember.

3       Q.   How did you get your brother the money?

4       A.   I'm sorry.

5       Q.   How did you get your brother the money?

6       A.   I don't remember.

7       Q.   So you don't remember if it was in cash,

8   or if it was sent through another method?

9       A.   I really don't remember.

10      Q.   When did you make these transfers to your

11  brother?

12      A.   I don't remember.

13      Q.   What city is your brother at?

14      A.   I'm sorry.

15      Q.   What City does your brother live in?

16      A.   (Inaudible.)

17      Q.   How old is he?

18      A.   My brother?

19      Q.   Yes.

20      A.   I don't know.

21      Q.   Is he older than you or younger than you?

22      A.   Younger.

23      Q.   So you sent money to your brother whose

24  age you don't know and you don't remember how you

25  sent it.

1                        DAVID GHATANFARD

2                 Is that what your testimony is?

3        A.    I left the country in 1950.  I don't

4    remember.

5        Q.    How often would you send money to your

6    brother?

7        A.    I'm sorry.

8        Q.    How often do you send money to your

9    brother?

10       A.    I don't remember.

11       Q.    When was the last time that you sent him

12   money?

13       A.    I don't recall.

14       Q.    Did you send him money in the last six

15   months?

16       A.    I don't recall.

17       Q.    So you took out a million dollars from

18   Valbella Midtown, but after that you don't recall

19   anything that happened.

20                 Is that what your testimony is?

21       A.    I paid cash for it, and I had to live and

22   I sent money to my family.  I had to pay taxes, pay

23   the government.

24       Q.    I'm going to mark this document as

25   Plaintiff's Exhibit 9.

```
 1                    DAVID GHATANFARD

 2   right?

 3        A.   That's the only check I paid him.

 4        Q.   That's the only check you paid him?

 5        A.   I'm sorry.

 6        Q.   The checks that's on your screen, that's

 7   the only check you paid him?

 8        A.   How much is it, just make it big?

 9        Q.   $95,000.

10        A.   No, that's not the only one I give him.

11        Q.   You gave him another check for $85,000;

12   right?

13        A.   Whatever it is.  Where is the other check,

14   and I can see it, I can tell you.

15        Q.   And you also paid Mr. Spielberg about

16   $180,000 to represent you at the trial; right?

17        A.   Before the trial.

18        Q.   Yeah, for the representation; right?

19        A.   That's right.

20        Q.   Do you know an attorney named Daniel

21   Alter?

22        A.   Daniel Alter?

23        Q.   Alter, yes.

24        A.   Yes.

25        Q.   Who is he?
```

1                      DAVID GHATANFARD

2        A.   He's another lawyer.

3        Q.   And he's representing you in an appeal of

4   the class action judgment?

5        A.   He will be.

6        Q.   And how did you pay him?

7        A.   I'm sorry.

8        Q.   How did you pay him?

9        A.   How did I pay him.

10       Q.   Yeah.

11       A.   Through Mr. Spielberg.

12       Q.   Where did Mr. Spielberg get the money

13   from?

14       A.   I'm sorry.

15       Q.   Where did Mr. --

16       A.   I don't know.

17       Q.   So Mr. Spielberg had your money?

18                 Is that your testimony?

19       A.   I'm sorry.

20       Q.   So Mr. Spielberg possessed your money when

21   he paid Mr. Alter?

22       A.   No.

23       Q.   Explain to me how --

24       A.   I asked him to send the check from the

25   amount of money I give him and as soon as I have

```
                                              Page 218
 1                     DAVID GHATANFARD
 2   money I give it back to him.
 3        Q.   So Mr. Spielberg gave you a loan.
 4             Is that your testimony?
 5        A.   That's what it is, yes.
 6        Q.   And he wasn't holding onto any cash for
 7   you?
 8        A.   No.
 9        Q.   So your attorney gave you a loan.
10             Is that your testimony?
11        A.   I said that.
12             MR. SEEMAN:  Objection.
13        Q.   And Mr. Alter was also paid by a check
14   from a law firm called Dealy Silberstein, D-E-A-L-Y
15   S-I-L-B-E-R-S-T-E-I-N; is that right, Mr. David
16   Ghatanfard?
17        A.   I don't know about that, but I believe so.
18        Q.   How did Dealy Silberstein have enough
19   money to pay Mr. Alter?
20        A.   I don't know.  You can ask them that
21   question.
22        Q.   They just sent a check on your behalf to a
23   lawyer, that's doesn't --
24        A.   Not on behalf of me.  They sent on behalf
25   of Valerie Malfatano.
```

Page 224

                    DAVID GHATANFARD

1

2      Q.    If you need to buy a banana, how do you

3   pay for it?

4      A.    Most of the time, you know, pay with

5   credit card or whatever.

6      Q.    Ms. Kalayjian's credit card?

7      A.    Ms. Kalayjian's credit card.

8      Q.    And Ms. Kalayjian pays for that credit

9   card, she pay American Express from her Citibank

10  account; right?

11     A.    I don't know.

12         MR. SEEMAN:   Objection.

13     Q.    I'd like to show you what is previously

14  marked as Plaintiff's Exhibit 7.  You should have it

15  on your screen.  In bold it says questions and

16  answers in connection with information subpoena and

17  questionnaire.

18              Do you see that?

19     A.    Yes.

20     Q.    Do you recall having to answer certain

21  questions relating to the judgment that was entered

22  in the class action?

23     A.    Yes.

24     Q.    Did you answer those questions?

25     A.    I believe so.

```
                                              Page 225
 1                     DAVID GHATANFARD
 2        Q.   The last pain of this document, it says on
 3    the top, I hereby declare under penalty of perjury,
 4    that I have verified the contents of these responses
 5    to be true.
 6                 Do you see that?
 7        A.   Yes.
 8        Q.   So all your responses are true?
 9        A.   To the best of my knowledge.
10        Q.   Let's go to the first question.  First
11    question asks you, State your full name and address.
12    And then your response, you wrote 9 N. Canterbury
13    Road, Harrison, New York.
14                 Do you see that?
15                 I'll make it a little bigger.  Do you
16    see that?
17        A.   That was wrong information that they
18    filled.
19        Q.   So that's not true --
20        A.   2017, I don't see the last number, I don't
21    see.  I see January 1, 20 -- now I see '17 yes.
22        Q.   Why didn't include your Warburton address.
23        A.   I wasn't living there.
24        Q.   When did you move into Warburton?
25        A.   I don't remember.  Sometime later on
```

```
                                          Page 226
 1                    DAVID GHATANFARD
 2   probably.
 3        Q.   You're sure that when you signed this, you
 4   were not living at Warburton, Mr. Ghatanfard?
 5        A.   I'm not sure.
 6        Q.   You signed this -- you see on the bottom,
 7   the last page, it says 20 September, 2022.
 8             Do you see that?
 9        A.   Yes, I do.
10        Q.   That's about ten months ago, right, eight
11   months ago?
12        A.   Yes.
13        Q.   You have been living at Warburton for more
14   than a year; right?
15        A.   Yes.
16        Q.   So your answer to number one is an
17   incomplete answer; correct?
18        A.   Unfortunately, I didn't see the document.
19        Q.   The document that you signed under penalty
20   of perjury?
21        A.   Okay.
22        Q.   Right?
23        A.   I'm sorry.
24        Q.   Right, the document that you signed under
25   the penalty of perjury; correct?
```

```
                                              Page 227

 1                    DAVID GHATANFARD
 2       A.    I don't answer the question.
 3       Q.    Did you sign at the end of this document
 4   that you were signing it under penalty of perjury
 5   that these -- I don't know want to put words in your
 6   mouth.  I'm going to read from the bottom.  You
 7   signed, You hereby declare under penalty of perjury
 8   that you verify the contents of responses to be
 9   true.  In answer to number 1, it is not true that
10   these are all the addresses that you lived at in
11   2017; correct?
12            MR. NUSSBAUM:  We can't hear you, Mr.
13       Comer.
14            MR.COMER:  He said he's not going to
15       answer that question.
16            MR. NUSSBAUM:  Are you going to seek a
17       protective order?
18            MR.COMER:  He's not going to answer that
19       question.
20            MR. NUSSBAUM:  Why not.
21            MR.COMER:  Because his counsel has advised
22       him not to.
23            MR. SPIELBERG:  And it doesn't say --
24            MR. NUSSBAUM:  Are you going to seek to a
25       protective order?  The only way you can
```

```
 1                      DAVID GHATANFARD
 2         instruct the witness to not answer a question,
 3         is if you plan to seek a protective order.  So
 4         tell me if you are going to seek a protective
 5         order.
 6              MR. SPIELBERG:  The question doesn't say
 7         all addresses.
 8              MR. NUSSBAUM:  It says, State your full
 9         name, addresses and telephone number since
10         January --
11              MR. SPIELBERG:  And he did that.  He did
12         that.
13              MR. NUSSBAUM:  He didn't state his
14         addresses.  He left out an address.  Look, if
15         you want to take it to the court that's fine.
16              MR. SPIELBERG:  You take it to the court,
17         we'll meet you there.
18         Q.   Number two asks you to "identify each
19    person or entity for whom you performed services
20    since January 1, 2017, and state the amount you were
21    paid for your services or the amount you are owed
22    for your services."
23                   Do you see that?
24         A.   Yes, I do.
25         Q.   I'm sorry, I didn't hear your answer.
```

```
                                              Page 229
  1                    DAVID GHATANFARD
  2        A.    Yes.
  3        Q.    And your response is, or was, Laura
  4   Christy, LLC, Laura Christy Midtown, LLC, Valbella
  5   at the Park.
  6                  Do you see that?
  7        A.    Yes.
  8        Q.    But you also worked for One If By Land;
  9   correct?
 10        A.    No.
 11        Q.    You didn't perform any services for One If
 12   By Land?
 13        A.    No.
 14        Q.    Did you perform services for any other
 15   company besides the three companies stated?
 16        A.    No.
 17        Q.    And the amount paid it says, N-O-T and
 18   then S-U.
 19                  Do you know what that means?
 20        A.    No.  I'm not sure.
 21             MR. NUSSBAUM:  Mr. Comer, I see you
 22        talking to him.  I saw you talking to him and
 23        say I'm not sure and that' what he said.
 24        That's completely improper now.  Even for you
 25        guys I would expect more.
```

```
                                                   Page 230

 1                       DAVID GHATANFARD

 2              MR. SPIELBERG:  That was a gratuitous --

 3       Q.    Number three -- number four, I'm sorry.

 4              MR. SPIELBERG:  You are not forgiven.

 5       Q.    Number four asks you to identify by name

 6    address -- withdrawn.

 7                    Going back to number two.  Your

 8    answer was that you're not sure how much you were

 9    paid at Laura Christy, LLC, Laura Christy Midtown,

10    and Valbella at the Park, LLC?

11       A.    One more time.

12       Q.    Your answer was, and is, that you're not

13    sure how much you were paid from those three

14    entities?

15       A.    How much paid, yes.

16       Q.    Again, the question asks you to state the

17    amount you were paid for your services.  And your

18    answer was that you're not sure.

19                    Is that what you're saying?

20       A.    Yes.

21       Q.    Don't you have access to the bank records

22    that would help you know or find out how much you

23    were paid for your services at those entities?

24       A.    I didn't look at it.

25       Q.    But you have access to them; right?
```

```
 1                      DAVID GHATANFARD
 2        A.    I don't know.
 3        Q.    You don't know if you have access to your
 4   bank accounts, Mr. Ghatanfard?
 5        A.    I didn't look at it.  I don't know.
 6        Q.    Number five in instructions on this
 7   document, I'm still on Exhibit 7, says that, and I'm
 8   going to read it quote, "If in answering the
 9   following questions you state in whole or in part,
10   that I do not know or unknown or otherwise indicate
11   any similar lack of knowledge, you shall state in
12   detail all efforts made to obtain the information
13   requested, the nature of any continuing efforts in
14   that regard, and by whom any such efforts were and
15   are being made."
16             Mr. Ghatanfard, what efforts did you
17   take to answer this question?
18        A.    I don't recall.
19        Q.    We asked you to state for us how much you
20   earned at Laura Christy, LLC or Christy Midtown,
21   LLC, and Valbella at the Park, LLC.
22             What steps did you take to try to
23   answer this question?
24        A.    Repeat that question again.
25        Q.    I asked you what steps did you take to
```

1                    DAVID GHATANFARD

2    answer the question in question number two in this

3    information subpoena.

4          A.    I don't know.  I don't recall.

5          Q.    Did you take any steps?

6          A.    I don't recall.

7          Q.    Well, if you took any steps, how is it

8    that you were not able to tell us how much you

9    earned at any of those restaurants in any of the

10   years from 2017 to when you signed this in 2022?

11         A.    I don't remember.

12         Q.    You don't remember what?

13         A.    I don't recall taking any steps.

14         Q.    You don't recall taking any steps to try

15   to find out.

16               Is that what you're saying?

17         A.    Yes.

18         Q.    Number 4 asks you to identify by name,

19   address, and telephone number, each and every

20   domestic and foreign bank and/or financial

21   institution in which you have an account or over

22   which you have signatory authority or other such

23   control, and provide the account number, type of

24   account, and account balance from January 1, 2017 to

25   present.  And then it says, in addition, identify

```
                                            Page 233
 1                    DAVID GHATANFARD
 2    the record owner or title of the account.
 3                 Do you see that, number four?
 4         A.    Yes, I do.
 5         Q.    And in response, you only wrote Bank of
 6    America; right?
 7         A.    Yes.
 8         Q.    Isn't it true that you opened your Bank of
 9    America account in August 2022, one month before you
10    signed this subpoena?
11         A.    Yes.
12         Q.    So you had other accounts between January
13    1, 2017 and the date that you signed the subpoena;
14    correct?
15         A.    Personally?
16         Q.    What was your answer?
17         A.    I said personally, or during that time?
18         Q.    Personally first.
19         A.    I didn't have it personally.
20         Q.    You had a joint account; right?
21         A.    Yes.
22         Q.    So why didn't you identify a joint account
23    here?
24         A.    I didn't know I had to put the joint
25    account.  It doesn't say anything about joint
```

```
                                            Page 234
 1                    DAVID GHATANFARD
 2   account.
 3        Q.   It's very clear that you have to put any
 4   account in which you have any signing authority or
 5   control.  It's very clear in the question, Mr.
 6   Ghatanfard.
 7        A.   Listen, I'm not a lawyer, I didn't
 8   understand it, I'm sorry.
 9        Q.   You had signing authority over at Valbella
10   Midtown accounts; correct?
11        A.   I'm sorry.
12        Q.   You have signing authority, and had
13   signing authority over at Valbella Midtown's bank
14   accounts; correct?
15        A.   Yes.
16        Q.   And you didn't note those here either;
17   correct?
18             MR. SPIELBERG:  Mr. Nussbaum, can you give
19        me a moment please.
20             MR. NUSSBAUM:  How long do you need?
21             MR. SPIELBERG:  A moment.
22             MR. NUSSBAUM:  Off the record or should we
23        wait I'm asking.
24             MR. SPIELBERG:  On the record.
25             I have a commitment at 5:00 p.m.  I'm
```

Page 235

DAVID GHATANFARD

1

2      going to have to end this at 5:00 p.m.  You

3      have all these answers, they are a matter of

4      record.  You can do with these as you see fit,

5      but I would urge you if you have any

6      substantive questions, to ask them now rather

7      than beating on the witness over his answers.

8            MR. NUSSBAUM:  The good news for my

9      clients is that Lenny Spielberg doesn't decide

10     what are considered substantive questions in

11     this deposition.

12           MR. SPIELBERG:  No you --

13           MR. NUSSBAUM:  And thankfully -- and I

14     don't agree with you.  So please step out of

15     the way.  I --

16           MR. SPIELBERG:  I appreciate you giving me

17     the moment.

18           MR. NUSSBAUM:  Great.

19     Q.   Mr. Ghatanfard, why did you not list all

20  the accounts that you had signing authority over in

21  response to number four?

22           MR. SEEMAN:  Objection.

23     A.   I didn't understand it.  I told you, I'm

24  not good with reading.  I only speak the language.

25  I didn't understand.

1                    DAVID GHATANFARD

2        Q.    So now that you understand it better, are

3    you going to amend your responses?

4              MR. SEEMAN:  Objection.

5        Q.    What was the answer?

6              MR. SEEMAN:  Objection.

7        A.    Yes.

8        Q.    Yes, you're going to amend your responses?

9        A.    Yes.

10       Q.    Number 16, asks you to "Have you directly

11   or indirectly transferred, conveyed or disposed of

12   any cash, assets, and/or other items of value with a

13   cost or fair market value of $1,000.00 or more

14   during the period of January 1, 2017 to the present.

15   If your answer to this question is in the

16   affirmative, provide the following information for

17   each such item."

18              Do you understand that?

19       A.    I see it.

20       Q.    Earlier today we saw that in just three

21   separate transactions, you received deposits of more

22   than three and a half million dollars.  In September

23   2020 over 2021 from Valbella Midtown.  And 1.4

24   million dollars from your refinance, right, that's

25   what we saw earlier today?

Page 237

1                    DAVID GHATANFARD

2        A.    Yes.

3        Q.    Why is it that you did note in response to

4    this answer which asks you to note any transfer that

5    you made over $1,000.00, more than 3.5 million.

6    Just in those three transactions?  I'm not talking

7    about any other transactions.

8        A.    I didn't transfer them.

9        Q.    You said earlier you transferred it to

10   your brother?

11       A.    I'm sorry.

12       Q.    You testified earlier, that you

13   transferred it to your brother, Mr. Ghatanfard.

14       A.    I didn't say I transferred it.  I didn't

15   say I transferred it to my brother.  I said my

16   brother helped, and I helped my brother.

17       Q.    How did he get the money?

18       A.    I don't remember how I give it to him.

19       Q.    Who else did you transfer the money to?

20       A.    Maybe my brother.  Maybe, you know --

21   maybe my tax before that.

22       Q.    Maybe who?

23       A.    My taxes.

24       Q.    Besides the taxes, where else did the

25   money go?

1                     DAVID GHATANFARD

2          A.    I don't remember.

3          Q.    Why is it that you did not fully answer

4     this question?

5          A.    I don't know.

6          Q.    What steps did you take to try to answer

7     this question?

8          A.    I don't know.

9          Q.    So when you said in this document, again

10    under the penalty of perjury, that the contents in

11    this document are true, it's not true that you

12    listed every transfer or every transfer you made

13    that was more than $1,000.00; correct?

14             MR.COMER:  Do not answer.

15             MR. NUSSBAUM:  Are you going to seek a

16        protective order, Mr. Comer?

17             I can't hear you.

18             MR.COMER:  I told him not to answer that

19        question.

20             MR. NUSSBAUM:  What's the basis for your

21        direction to not answer?

22             MR.COMER:  I don't owe you any.

23             MR. NUSSBAUM:  Yes, you do.  You're an

24        officer of the court at a deposition, and

25        either you're going to seek a protective order,

```
 1                    DAVID GHATANFARD
 2       or the witness can plead the fifth amendment,
 3       or he has to answer.  Those are the options at
 4       a deposition.
 5            I can't hear you.
 6            MR.COMER:  Okay, thank you for the
 7       lecture.  He's not answering that question.
 8       Q.   So your answer to 16 is not a true answer;
 9   correct?
10            MR.COMER:  He's not going to answer.
11            MR. SEEMAN:  Objection.
12            MR. NUSSBAUM:  I'd like to mark the last
13       two directions to not answer for a ruling by
14       the court.
15            We're marking for a ruling and we're
16       noting for the record, that Mr. Comer is
17       refusing to state the basis for his instruction
18       to the witness to not answer the question.
19            MR.COMER:  Mr. Nussbaum, Mr. Ghatanfard
20       needs a five-minute break.
21            (Recess taken)
22            MR. NUSSBAUM:  Back on the record.
23       Q.   Mr. Ghatanfard, just to remind that you're
24   still under oath.
25                    Do you understand that?
```