# Exhibit 1

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

PAVLE ZIVKOVIC,

                Plaintiff,

     v.

VALBELLA AT THE PARK, LLC

------------------------------------------x

             Zoom Video Conference

             May 4, 2023

             10:06 a.m.

     EXAMINATION BEFORE TRIAL of DAVID GHATANFARD, the Defendant in the above-entitled action, held via Zoom Video Conference taken before ELIZABETH SANTOS, a Notary Public of the State of New York, pursuant to order and stipulations between Counsel.

```
 1
 2   A P P E A R A N C E S:
 3   HAROLDSALANT STRASSFIELD & SPIELBERG
 4   Attorney for David Ghatanfard
 5   81 Main Street
 6   White Plains, New York 10601
 7      BY:   NEAL S. COMER, ESQ.
 8
 9   LAW OFFICES OF FRED SEEMAN
10   Attorneys for Robert Daleo
11   32 Broadway, Suite 1214
12   New York, New York 10004
13      BY:   FRED SEEMAN, ESQ.
14
15   JOSEPH & KIRSCHENBAUM, LLP
16   Attorneys for Plaintiff
17   32 Broadway, Suite 601
18   New York, New York 10004
19      BY:   JOSEF NUSSBAUM, ESQ.
20   Also present:
21   Lucas Buzzard (Sitting in with Mr. Nussbaum)
     Leonard Spielberg (Sitting in with Mr. Comer)
22
23
24
25
```

S T I P U L A T I O N S

    IT IS HEREBY STIPULATED AND AGREED BY AND BETWEEN the parties hereto through their respective counsel that all objections as to the form of the question shall be reserved to the time of trial;

IT IS FURTHER STIPULATED BY AND BETWEEN the parties hereto through their respective counsel that sealing, certification and filing shall be and the same are hereby waived;

IT IS FURTHER STIPULATED AND AGREED that the within examination may be signed and sworn to before any Notary Public with the same force and effect as if signed and sworn to before this Court.

| | |
|---|---|
| 1 | DAVID GHATANFARD |
| 2 | D A V I D   G H A T A N F A R D, |
| 3 | having first been duly sworn by Elizabeth Santos, a Notary |
| 4 | Public of the State of New York, was examined and testified |
| 5 | as follows: |
| 6 | EXAMINATION BY |
| 7 | MR. NUSSBAUM: |
| 8 |     COURT REPORTER:  Please state your name |
| 9 | for the record. |
| 10 |     THE WITNESS: David Ghatanfard. |
| 11 |     COURT REPORTER:  What is your present |
| 12 | address? |
| 13 |     THE WITNESS:  56 Oak Grove Road, private |
| 14 | house, South Hampton, New York. |
| 15 | Q.   Good morning, Ghatanfard. |
| 16 | A.   Good morning. |
| 17 | Q.   I've taken your deposition before, so I |
| 18 | know you have some experience with this.  I'm not |
| 19 | going to go over the details of all the rules since |
| 20 | I know you're familiar with them.  We're taking your |
| 21 | deposition today as part of a lawsuit that was |
| 22 | brought by Pavle Zivkovic against Valbella at the |
| 23 | Park, LLC. |
| 24 | Do you understand that? |
| 25 | A.   Yes, I do. |

```
                                                        Page 38
 1                    DAVID GHATANFARD
 2           MR. SEEMAN:  Objection.
 3      A.   No.
 4      Q.   You never had conversations with anybody
 5   about protecting yourself from a judgment?
 6           MR. SEEMAN:  Objection.
 7      A.   Just to my lawyers.
 8      Q.   Other than your lawyers, did you speak to
 9   anybody else about protecting yourself from a
10   judgment?
11      A.   No.
12      Q.   How long did you live at 9 Canterbury
13   Post?
14      A.   Roughly about 14, 15 years.
15      Q.   And you were the sole owner of that house;
16   right?
17      A.   On paper, yes.
18      Q.   And why did you sell it?
19      A.   Why did I sell it?
20      Q.   Yeah, why did you sell it?
21      A.   Because the house was too big for us.
22      Q.   Did you make money off the sale?
23      A.   We lost money.
24      Q.   You lost money on the sale.
25           How much did you lose?
```

```
                                                      Page 130
 1               DAVID GHATANFARD
 2      Q.   Isn't that date right after you sold your
 3   house at 9 Canterbury?
 4      A.   I don't recall.
 5      Q.   You don't remember when you sold your
 6   house?
 7      A.   I don't remember the date I sold the
 8   house.
 9      Q.   Do you recall receiving this check for
10   $1,059,000?
11      A.   Yes, I do.
12      Q.   And this check was made out to you; right?
13      A.   The check was made out to me.  Yes.
14      Q.   This is your money; right?
15      A.   I'm sorry.  It was my money and
16   Ms. Kalayjian money.
17      Q.   And you could use this money; right?
18      A.   I'm sorry.
19      Q.   And you could use this money; correct?
20      A.   It was my money and Ms. Kalayjian money.
21      Q.   I understand.
22           But you also said it's your money,
23   that means you could use the money; right?
24      A.   It wasn't my money, it was our money.
25      Q.   But you were the only person on the deed
```

Page 131

1          DAVID GHATANFARD
2    of the house at 9 Canterbury; right?
3          A.   But we had an agreement, when we bought
4    the house, it's both of us house.  She invested on
5    it, and I invested on it.  It was our money.
6          Q.   Is there a written agreement?
7          A.   I'm sorry.
8          Q.   Is there a written agreement?
9          A.   It's a handshake agreement.
10         Q.   Isn't it true that you bought the house
11   before you were dating Ms. Kalayjian?
12         A.   No, I was dating --
13         Q.   You bought the house after you started
14   dating her?
15              MR. SEEMAN:  Objection.
16         A.   I bought the house after I meet Ms.
17   Kalayjian.  Ms. Kalayjian was pregnant with two
18   babies, and she lost -- we bought the house.  The
19   reason we need the house.  So she lost the baby.  A
20   year after that we wanted to sell the house.  And we
21   had it on the market for a long time, we couldn't
22   sell.
23         Q.   What year did you buy the house?
24         A.   I don't remember.  I don't recall the
25   exact year, counsel.

```
                                                      Page 134
 1                    DAVID GHATANFARD
 2       Q.   What is this check for?
 3            MR. SEEMAN:  Objection.
 4       A.   Remortgaging the house.
 5       Q.   The Oak Grove Road house?
 6       A.   Yes.
 7       Q.   And on the endorsement of the check, is
 8   that your signature?
 9       A.   I don't know.
10       Q.   You don't know if that's your signature?
11       A.   I don't know.
12       Q.   So it's possible that someone else signed
13   and endorsed the check for $1.4 million for the
14   refinance of your house.
15            Is that your testimony?
16       A.   I don't know.
17       Q.   You don't know?
18       A.   I don't know.
19            MR. SEEMAN:  Objection.
20       Q.   And this check is made out just to you;
21   right?
22       A.   Yes.
23       Q.   And this is your money; right?
24       A.   I'm sorry --
25            MR. SEEMAN:  Objection.
```

```
                                              Page 135
 1                  DAVID GHATANFARD
 2       A.    No, it's our money.
 3             MR. SEEMAN:  Objection.
 4       Q.    This check is made out just to David
 5   Ghatanfard; right?
 6       A.    When she spent so much time and too much
 7   effort in that house.  When we bought the house in
 8   Oak Grove Road, it was two car garage they put
 9   together.  She did other renovations on her money to
10   do the house.  And it was a joint house.
11       Q.    Are there any written agreements to that
12   effect?
13       A.    It was a handshake.
14       Q.    Other than a handshake, there's nothing
15   else that would show --
16       A.    I think between two people live together
17   there shouldn't be a document.
18       Q.    But you put her on the deed of the house;
19   right?
20             MR. SEEMAN:  Objection.
21       A.    I was getting older, and I put her on the
22   deed of the house.  Yes.
23       Q.    But at the time that you got this check
24   for the refinance, she was not on the deed to the
25   house; right?
```

Page 137

1          DAVID GHATANFARD
2          COURT REPORTER:  I couldn't hear him
3     either.
4     Q.   When did you put Ms. Kalayjian on the
5     deed?
6     A.   I don't recall.
7     Q.   But it was after this check; right?
8     A.   I believe I answered that question.
9     Q.   You said you don't recall.  I'm asking
10    you, you put her on the deed after can you got this
11    check; right?
12    A.   I said the lawyer forgot to file all the
13    paperwork document, and we had to go back and do it.
14    Q.   And you did that after you got that check;
15    right?
16    A.   Yes.
17    Q.   Why did you put her on the deed?
18         MR. SEEMAN:  Objection.
19    A.   I already answered that question.
20    Q.   Because you were getting older.  I don't
21    understand that.
22    A.   I said --
23         MR. SEEMAN:  Objection.
24    Q.   What was the reason?
25    A.   I said, she spent a lot of money on the

Page 138

1          DAVID GHATANFARD
2   house.  She paid a lot of the mortgages.  She paid a
3   lot of stuff in that house.  And we decide, I'm
4   getting a little older, and I put her on the deed of
5   the house so that she has security.
6       Q.   What type of security were you looking to
7   provide her?
8       A.   She has someplace to live.
9       Q.   But she lived -- withdrawn.
10           When did you first buy the house?
11      A.   I'm sorry.
12      Q.   When did you first buy the house?
13      A.   I don't recall exactly.
14      Q.   It was more than 15 years before you put
15  her on the deed; right?
16      A.   Whatever it is.  I don't understand why,
17  what's the difference?
18      Q.   But she was living in the house the whole
19  time without her being on the deed; right?
20      A.   It wasn't necessary.  It was an
21  understanding between each other.
22      Q.   My question to you is, what were you
23  looking to change by adding her to the deed?
24           MR. SEEMAN:  Objection.
25      A.   Nothing changed.  The only thing we change

Page 139

1        DAVID GHATANFARD
2  that, you know, if something happen to me, she can
3  have something.
4      Q.   Couldn't you just write a Will, and give
5  it to her in the Will?
6      A.   She spent a lot of money in the house.
7  She spent a lot of time in the house, rebuilding the
8  house, fixing the house, paying the mortgage.  And
9  it was some of her money paying the mortgage.  She
10 deserved to be on the deed of the house.
11     Q.   She was doing a lot of that stuff at the
12 Canterbury house also; right?
13     A.   Yes.
14          MR. SEEMAN:  Objection.
15     Q.   What was the answer?
16     A.   Yes.
17     Q.   But you didn't put her on the deed of that
18 house?
19          MR. SEEMAN:  No question.  Objection.
20     Q.   Right, you didn't put her on the deed of
21 that house?
22          MR. SEEMAN:  Objection.
23     A.   Because we sold the house.
24     Q.   In the year or two years before you sold
25 the house, even though she put in all those work,

Page 229

1              DAVID GHATANFARD
2       A.    Yes.
3       Q.    And your response is, or was, Laura
4  Christy, LLC, Laura Christy Midtown, LLC, Valbella
5  at the Park.
6              Do you see that?
7       A.    Yes.
8       Q.    But you also worked for One If By Land;
9  correct?
10      A.    No.
11      Q.    You didn't perform any services for One If
12 By Land?
13      A.    No.
14      Q.    Did you perform services for any other
15 company besides the three companies stated?
16      A.    No.
17      Q.    And the amount paid it says, N-O-T and
18 then S-U.
19              Do you know what that means?
20      A.    No.  I'm not sure.
21         MR. NUSSBAUM:  Mr. Comer, I see you
22      talking to him.  I saw you talking to him and
23      say I'm not sure and that' what he said.
24      That's completely improper now.  Even for you
25      guys I would expect more.