# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
PAVLE ZIVKOVIC,

PLAINTIFF,

-against- Case No.: 1:22-cv-07344 (GHW)

VALBELLA AT THE PARK, LLC,

DEFENDANT.
----------------------------------------X

DATE: February 8, 2023
TIME: 12:17 P.M.

REMOTE DEPOSITION of ROSEY KALAYJIAN, taken by the respective parties, pursuant to a Notice and to the Federal Rules of Civil Procedure, held via video teleconference, before Diane Buchanan, a Notary Public of the State of New York.

A P P E A R A N C E S:

JOSEPH & KIRSCHENBAUM LLP
Attorneys for the Plaintiff
32 Broadway
New York, New York 10004
BY: JOSEF NUSSBAUM, ESQ.
and LUCAS BUZZARD, ESQ.

LAW OFFICE OF FRED L. SEEMAN
Attorneys for the Defendant and Rosey Kalayjian
32 Broadway
New York, New York 10004
BY: FRED SEEMAN, ESQ.

ALSO PRESENT: PAVLE ZIVKOVIC

* * *

F E D E R A L S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED by and between the counsel for the respective parties herein that the sealing, filing and certification of the within deposition be waived; that the original of the deposition may be signed and sworn to by the witness before anyone authorized to administer an oath, with the same effect as if signed before a Judge of the Court; that an unsigned copy of the deposition may be used with the same force and effect as if signed by the witness, 30 days after service of the original & 1 copy of same upon counsel for the witness.

IT IS FURTHER STIPULATED AND AGREED that all objections except as to form, are reserved to the time of trial.

* * * *

ROSEY KALAYJIAN

R O S E Y K A L A Y J I A N , called as a witness, having been first duly sworn by a Notary Public of the State of New York, was examined and testified as follows:

EXAMINATION BY
MR. NUSSBAUM:

Q. Please state your name for the record.

A. Rosey Kalayjian.

MR. NUSSBAUM: I just want to say before we commence the questioning, for the record, it's 12:19 now or 12:17, the Plaintiff has only put in maybe roughly 20 minutes of questioning. I want that to be clear for the record even though we did have an 11 o'clock start time, we did run into technical issues with the court reporter.

Q. I asked you before if you lived with Mr. Ghatanfard. You lived with him, correct?

A. Yes.

Q. Where do you live?

A. I live in Southhampton. And I live

ROSEY KALAYJIAN

Q. Do you know if the investment in Oak Grove LLC was more or less than 1 and a half million dollars?

A. Say that again.

Q. Do you know if your investment in Oak Grove LLC was more or less than $1.5 million?

A. Approximately around there. I don't recall the exact number.

Q. Okay. And in the last ten years other than your income from Valbella At The Park, Valbella Midtown, Valbella Meatpacking, One If By Land and the Larchmont Restaurant you said, did you have any other sources of income?

A. That would be it.

Q. So no other sources of income in the last ten years?

A. Correct.

Q. What is the most you earned in any year in the last ten years from your work in those restaurants combined?

A. I don't recall.

Q. Did you ever earn more than

ROSEY KALAYJIAN

$200,000?

A. I don't recall.

Q. Now, as director of operations you said you are making about $100,000?

A. Approximately.

Q. Wouldn't that be like a step up from what you were earning before or have you taken a pay cut?

A. I took a pay cut to help my business.

Q. Was there ever a time you earned more than $200,000 in a year?

A. I don't believe so. I don't recall.

Q. Okay. All of the restaurants that you worked at in the last ten years did your income from those restaurants all get deposited in your Citi account and/or Patriot account?

A. Yes.

Q. Are there any other accounts that your income from the restaurant would have been deposited in?

A. No.

ROSEY KALAYJIAN

Q. Where did you get more than $1 million to invest in Oak Grove LLC?

A. I had it in my savings.

Q. Savings from what?

A. My childhood.

Q. How did you save over a million dollars in your childhood?

MR. SEEMAN: Objection.

A. From my father.

Q. What do you mean from your father?

A. My father left me money.

Q. Like an estate?

A. No.

Q. Can you elaborate?

A. There's nothing to elaborate.

Q. He gifted you money, is that what you are saying?

A. My father died.

Q. I asked you an estate and you said --

A. No, it was --

MR. SEEMAN: Objection.

A. He didn't. It wasn't like -- I don't refer to as an estate, but whatever.

ROSEY KALAYJIAN

Q. When did your father pass away?

A. Decades ago.

Q. Decades ago?

A. Decades ago.

Q. After he passed away there was some money he left to you?

A. Correct.

Q. And is it your testimony that all of the money that was invested in Oak Grove LLC is your personal money?

A. Yes. 10 percent of it is David.

Q. Is it your testimony that you invested 90 percent of money that went into Oak Grove LLC is your money?

A. Correct.

Q. And only 10 percent of the investment is David's money; is that your testimony?

A. Correct.

Q. Are you and David the only people who invested money into Oak Grove LLC?

A. Correct.

Q. Was all of the money invested in that LLC then invested to Valbella At The

ROSEY KALAYJIAN

Park LLC?

MR. SEEMAN: Objection. Can you rephrase that.

A. Yes, I'm not following.

Q. Was all of the money that you and David invested in Oak Grove Road LLC then invested in Valbella At The Park LLC?

A. Most, most of it, yes.

Q. Why only most and not all?

A. We put what was needed at each phase the project.

Q. So does Oak Grove Road LLC have money in its accounts?

A. Some.

Q. Where does Oak Grove LLC bank?

A. Bank of America.

Q. Anywhere else?

A. No.

Q. Who has signing authority over Oak Grove Road LLC accounts?

A. Only me.

Q. Anyone else?

A. No.

Q. Now, David refinanced the

ROSEY KALAYJIAN

Southampton house, right?

MR. SEEMAN: Objection.

A. I don't know.

Q. You don't know. He never told you that he did?

A. Not that I recall.

Q. Did you start making the payments on the mortgage for that house?

A. Why did I start making the payments? Because it's my home too. I need to contribute.

Q. In the past you were the one who makes the payments, right?

A. Yes. I've never kept tabs on I pay this, he paid that. I pay this, you paid that. It was -- I didn't keep. I have better things to do than keep tabs who pays Verizon and the mortgage.

Q. Well, David earns a lot more than you in the last ten years, he earned a lot more than you each year, right?

A. He had.

Q. In the last ten years most years he earned a lot more than you do, right?

ROSEY KALAYJIAN

A. I suppose.

Q. So when you say you didn't keep tabs it was because he earned the vast majority of the money in your relationship, right?

MR. SEEMAN: Objection.

A. No.

Q. How much money did your father gift you or give you?

A. I don't recall. I don't recall.

Q. How old were you when he passed away?

A. I don't remember. Over 30 years ago. I don't recall.

Q. So is today the first time you are hearing that David refinanced the Southampton house?

A. No.

Q. When for the first time did you hear about it?

A. I just assumed because the mortgage, the papers in the mail were different.

Q. Did you read the paper?

ROSEY KALAYJIAN

A. I opened it. It was a different bank than what I previously made a payment to. I had to change the payee.

Q. And you never asked him about it?

A. Not really. Mortgage, they sell mortgages all the time, banks, so it happens all the time. As soon as I get a new mortgagee, a new payee, I have to send it to the insurance broker.

Q. So let's recap. You didn't discuss the trial with David, you didn't discuss why he put you on the deed of the Southhampton house and you didn't discuss any refinance even though you saw he refinanced it; is that right?

A. That is right.

Q. Would you be surprised to hear that the proceeds of the refinance of the Southhampton house went into a joint account that you two held together?

A. I don't know. Possibly.

Q. Did you ever review the Patriot Bank statements?

A. Sometimes. Not always.

ROSEY KALAYJIAN

Q. When would you look at them?

A. I don't know.

Q. What would prompt you to sometimes look at them and sometimes not, why sometimes would you look at them?

A. If I needed to see, if I paid somebody.

Q. So as a general rule you didn't review them every month?

A. No.

Q. Okay. Do you know if David reviews his bank statements every month?

MR. SEEMAN: Objection.

A. No.

Q. You don't know if he does?

A. I do not.

Q. I would like to show you a document that I will mark as Plaintiff's Exhibit 1.

(Plaintiff's Exhibit 1, Response, marked for identification, as of this date.)

Q. You should be able to see my screen. You see a document on top, United States District Court?

ROSEY KALAYJIAN

Q. That's referring to Valbella?

A. Yes.

Q. Does Oak Grove LLC own anything else other than Valbella?

A. At this time, no.

Q. Has it invested in anything else other than Valbella?

A. No.

Q. Okay. 3A, the members, it says the members of Oak Grove LLC at the time of adoption of this agreement is David Ghatanfard, do you see that?

A. I see it.

Q. So at the time this agreement was executed or became effective in February 2021 only member of Oak Grove Road LLC was David Ghatanfard, correct?

MR. SEEMAN: Objection. Objection.

A. You answered your own questions, it says it right there on paper, but that's --

Q. It says what?

A. It says right there.

Q. That what?

A. It says member David Ghatanfard, I

ROSEY KALAYJIAN

told you I made a mistake and I had to file an amendment.

Q. Did you draft this agreement?

A. I don't -- no, I didn't. I don't recall.

Q. What does that mean that you made a mistake, you are not the person who drafted this agreement?

MR. SEEMAN: Objection.

Q. Where was the mistake that you made?

A. The mistake is when I opened up the LLC when I did it online myself.

Q. Now, when you opened the LLC that you didn't put yourself as the member; is that what you did?

A. I think I mixed the boxes up. I remember filling out my name and I also put David's name, but when I completed the document online it spit out where David was the member and it was a mistake. And the moment I realized I contacted my accountant for help.

Q. That wouldn't explain why 3A says

Dave is the only member, this is the Department of State, right?

A. I don't --

MR. SEEMAN: Objection.

A. I don't know where this came from.

Q. You don't know where this document came from?

A. I do not remember where this document came from.

Q. Aren't you the person who gave this to the lawyer as part of this lawsuit?

MR. SEEMAN: Objection.

A. Yes. This was done two years ago. I don't remember.

Q. When did you find out you made the mistake?

A. Very fast. I don't recall the date. It was very, very fast after.

Q. Very soon after you opened the LLC?

A. Correct.

Q. So then what did you do?

A. I called my accountant.

Q. Okay. And then what did they do?

A. He gave me instructions how to do

ROSEY KALAYJIAN

an amendment.

Q. So this agreement was amended?

A. I don't remember. I don't know.

Q. I want to understand your testimony. You made a mistake so you contacted your accountant who gave you instructions on how to make an amendment but you don't actually know if the amendment was ever made, right?

A. No, the amendment was made but I don't know about this document.

Q. When was the amendment made?

A. Shortly after. I don't remember the date.

Q. So the document is effective February 2021. I would like to show you another document which starts at Defendant's 304 and goes to 306. And it's called the First Amendment to the Operating Agreement. Do you see that?

A. I do.

Q. Is this the document you are talking about that was the amendment that you made?