NAKQzivD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

PAVLE ZIVKOVIC, et al.

                    Plaintiffs

          v.                              17 Civ. 553 (GHW)

LAURA CHRISTY LLC, d/b/a
Valbella, LAURA CHRISTY
MIDTOWN, LLC, DAVID
GHATANFARD, et al.

                    Defendants

-------------------------------x

                                          New York, N.Y.
                                          October 20, 2023
                                          2:00 p.m.

Before:

                    HON. GREGORY H. WOODS

                                          District Judge

                         APPEARANCES

JOSEPH & KIRSCHENBAUM LLP
     Attorneys for Plaintiffs
LUCAS C. BUZZARD
D. MAIMON KIRSCHENBAUM

HAROLD SALANT STRASSBERG & SPIELBERG
     Attorney for Defendant Laura Christy Midtown LLC
LEONARD I. SPIELBERG

DEALY SILBERSTEIN & BRAVERMAN LLP
     Attorney for Defendant LAURA CHRISTY LLC
MARIA L. BIANCO

NEAL S. COMER, ATTORNEY AT LAW
     Attorney for Defendant Ghatanfard & Luca
NEAL S. COMER

NAKQzivD

1          (The Court and all parties appearing via remote

2     telephone conference)

3          THE COURT:  This is Judge Woods.  Do I have a court

4     reporter on the line?

5          (Replies)

6          THE COURT:  What I'd like to do is start by taking

7     appearances from the parties.  I'm going to ask the principal

8     spokesperson for each side to identify the members of their

9     side rather than having each lawyer introduce themselves

10    individually.

11         I would like to start first with counsel for

12    plaintiff, and then I am going to ask counsel for each of the

13    defendants to identify themselves by name just in order of the

14    appearance of each defendant's name on the docket.

15         So let me start with counsel for plaintiff.  Who is on

16    the line for plaintiff?

17         MR. BUZZARD:  Good afternoon, your Honor.  This is

18    Lucas Buzzard from Joseph & Kirschenbaum for plaintiff.  I

19    believe Maimon Kirschenbaum is on as well.

20         THE COURT:  Thank you.

21         Let me hear who is on the line for each of the

22    defendants.  Counsel, I will ask you to introduce yourselves in

23    order of the appearance of your client on the docket.

24         Go ahead.

25         MS. BIANCO:  Good afternoon.  Maria Louisa Bianco for

NAKQzivD

```
1    Laura Christy LLC.

2              THE COURT:  Thank you.

3              MR. SPIELBERG:  Leonard Spielberg, your Honor.  Laura

4    Christy Midtown LLC, and movant.

5              THE COURT:  Thank you.

6              MR. COMER:  Good afternoon, your Honor.  Neal Comer

7    for defendants Ghatanfard and Luca.

8              THE COURT:  Thank you very much.  Thank you all for

9    being here.

10             Let me just begin with a few brief introductory

11   remarks about the rules that I would like the parties to follow

12   during today's conference.

13             At the outset, let me just remind the parties that

14   this is a public proceeding.  As a result, any member of the

15   public or the press is welcome to dial in to today's conference

16   and to audit it.  I am not now monitoring whether third parties

17   are auditing the conference.  But because they are welcome to

18   do so, I just wanted to remind you of that fact.

19             Second, please keep your lines on mute at all times

20   except when you are intentionally speaking to me or to the

21   representative of a party.  I ask you please do that even if

22   you don't think there is background noise wherever you may be.

23   Sometimes people are wrong about that, and we will hear the

24   sound of people moving papers or the like in the background.

25   If you can, please place your phones on mute so we can avoid
```

NAKQzivD

1  that kind of disruption.

2       Third, please state your name each time that you speak

3  during the conference.  You should do that each time you speak,

4  regardless of whether or not you have spoken previously to

5  serve the court reporter in keeping a clear transcript of the

6  proceedings today.

7       Fourth, please abide by instructions by our court

8  reporter that are designed to help her do her job.

9       And, finally, I am ordering there be no recording or

10  rebroadcast of all or any portion of today's proceeding.

11       Counsel, I scheduled this in response to the

12  application for an emergency stay of the enforcement

13  proceedings with respect to the judgment in the case.

14       I have reviewed the parties' submissions in connection

15  with that application.  I am happy to hear from either side if

16  there is anything you would like to add to your written

17  submissions.  However, again, I have reviewed the materials

18  that have been submitted on the docket to date, and I am aware

19  of them.

20       So let me hear first from counsel for the movant.

21  Counsel, is there anything you would like to add to your

22  written submissions to the Court as oral argument before I turn

23  to counsel for plaintiff the same question.

24       Counsel for movant, anything from you?

25       MR. SPIELBERG:  Thank you, your Honor.  Leonard

NAKQzivD

1   Spielberg, movant.

2             Judge, you should be brought up to date on defendant's

3   application to the Second Circuit for an expedited appeal.

4   That application has been granted in part.  Notwithstanding

5   plaintiff's opposition to it, the Circuit has granted a limited

6   expedited appeal by not contracting plaintiff's time to file an

7   opposition brief but beyond the filing of this, the Circuit has

8   agreed to expedite the appeal.

9             We believe that this is a factor that your Honor

10  should consider today.  It results in an even shorter period of

11  stay that we would be requesting since our stay request is only

12  pending appeal.  And we believe that to be significant, Judge.

13  I can't -- I won't guess at the Circuit's calendar for this

14  appeal, but I believe based upon general experience, the appeal

15  should be heard early in 2024.  And since it is an expedited

16  appeal, we would expect the circuit to render a decision in an

17  accelerated fashion.

18            We believe that further, and while this is addressed

19  in our motion, Judge, I believe it bears repeating, two brief

20  facts.

21            One is that the nuclear basis for this motion is that,

22  unfortunately, our principal, our defendant, Mr. Ghatanfard,

23  has been diagnosed with stage four metastatic cancer and has

24  begun already a course of treatment involving hormone therapy

25  and chemotherapy, which your Honor must know, and hopefully not

NAKQzivD

1    some experience near your Honor but from general knowledge,

2    that it's an extremely debilitating circumstance.  It is

3    extremely unlikely that Mr. Ghatanfard will be able to

4    participate in the proceedings in this case in any significant

5    and productive fashion whether or not your Honor grants this

6    motion.  And one wonders what will happen in the circumstance

7    that you don't grant the stay and Mr. Ghatanfard is in a

8    position, let's say, to defend the contempt motion pending

9    against him brought by the plaintiffs to punish him as a result

10   of his alleged refusal or inability to respond to their

11   discovery measures.  This in a way is the cloud that hangs over

12   the motion is this not all a moot discussion anyway.  And I

13   urge your Honor to consider that in your consideration of this

14   motion.

15          And further, your Honor, if there is one other fact

16   that needs to be stressed, it's that plaintiff has more or less

17   conceded that Mr. Ghatanfard has no significant assets that

18   they can attach in an effort to collect the judgment that is

19   still extant to the pending appeal.  The only source of

20   collection that plaintiffs may have that we are aware of is

21   their alleged claims against Rosey Kalayjian for her being a

22   transferee from Mr. Ghatanfard.

23          Plaintiffs already have a temporary restraining order

24   against Mr. Kalayjian —— Ms. Kalayjian, rather —— which further

25   tie the assets that they have enumerated.  We know that a

NAKQzivD

1   hearing is scheduled on the attachment of her assets a week

2   hence.  What then will they do beyond that between now and what

3   will ultimately be the time that the appeal will be decided and

4   there is, I submit to you, your Honor, a real question about

5   whether this stay is going to actually slow the plaintiffs down

6   or interfere with their collection efforts.

7         Thank you, Judge.

8         THE COURT:  Good.  Thank you very much, counsel.

9   That's very helpful.

10        Let me turn to counsel for plaintiff.  Counsel, again

11   I have read the parties' submissions, but I will hear from you

12   if there is anything that you would like to add or that you

13   would like to say in response to the thoughts shared by

14   Mr. Spielberg.

15        MR. BUZZARD:  Thank you, your Honor.  This is Luca

16   Buzzard for plaintiff.

17        I think just a very brief couple points.  I just want

18   to reiterate that the defendants are bringing this motion under

19   Rule 62(b) and the plain language much that rule requires a

20   bond or other security for a stay to issue under it.  There is

21   simply no other way to read that rule other than requiring a

22   bond or other security, and defendants have offered neither one

23   of those.  So under the plain language of Rule 62(b), there is

24   no basis for a stay here.  And that is supported by **Nassau**

25   **County** which considered whether to waive the bond requirement

NAKQzivD

1    in the event that an appellant provides an acceptable alternate

2    means of securing the judgment, which, again, is not present

3    here.  So there is just no basis for a stay here under Rule

4    62(b).  There is no security.  There is no bond.  And I am

5    happy to answer any other questions with respect to any of our

6    papers.  But that is simply the facts here.

7          The TRO referenced by Mr. Spielberg is not any form of

8    security.  In order to get anything from that TRO, plaintiff

9    must exercise numerous steps.  They must obtain -- prevail on

10   fraudulent conveyance claims but, that is simply not equivalent

11   of a bond of a security contemplated by Rule 62(b).

12         And, finally, just to stress, plaintiffs are, you

13   know, well aware that Mr. Ghatanfard has health issues, and we

14   sympathize with him, but there are 300 other class members who

15   have been waiting for this judgment for -- now since 2017.

16   They have an interests too as well, and those interests would

17   not be furthered by a stay in this matter.

18         So I'm happy to answer any other questions, but I

19   think we will just leave it to our papers for the rest of this.

20         THE COURT:  Thank you.

21         Any response counsel for the movant?

22         MR. SPIELBERG:  Thank you, your Honor.

23         I think that it is -- since Mr. Buzzard has brought up

24   the situation of the members of the class, I would say again

25   that there is, and has never been, any indication that any

NAKQzivD

1    single class member lost any money by reason of the wrongs that

2    were alleged in this lawsuit.  Only that.  And anything that

3    they will ultimately receive as a result of this lawsuit and

4    the collection of this judgment is just a pure windfall.

5              Thank you, Judge.

6              THE COURT:  Thank you.  Understood.

7              So let me do this:  I am prepared to rule on the

8    motion.  I am going to ask the parties to place your phones on

9    mute as I read you my decision and the reasons for it.  I do

10   want to say one thing that I will come back to at the end,

11   which is that I am responding to the application under Rule 62.

12             I say that because I expect that although, as you are

13   about to hear, I am going to deny the request to enter a stay

14   of the enforcement actions generally, I expect that in the same

15   way that I have worked on the scheduling of the contempt

16   proceedings mindful of Mr. Comer's health condition, I expect

17   that I will continue to take the parties' and their counsel's

18   health conditions into account as I am determining what the

19   appropriate schedule is and the structure is for the contempt

20   proceedings against Mr. Ghatanfard.

21             Let me just say that while, as you are about to hear,

22   I am going to deny the request to stay all enforcement

23   proceedings in the case as a whole, which would include staying

24   the action against Ms. Kalayjian, I just emphasize that I am

25   willing to, and I will, work with the parties to structure or

NAKQzivD

1    time the contempt proceeding as to Mr. Ghatanfard mindful of

2    his health condition.  So let me just put that aside because

3    that is not exactly the question presented here, and I want to

4    just signal my inclination to be considerate when it comes to

5    that question in particular.

6         Let me respond first to the broader application that

7    was brought to me here, which was to stay all enforcement

8    proceedings pursuant to Rule 62(b), I will begin with an

9    introduction.

10        I.    INTRODUCTION

11        I scheduled this conference to discuss defendants'

12   September 1, 2023 order to show cause as to why an emergency

13   stay on all judgment enforcement proceedings should not be

14   issued in this case.  Dkt. No. 479.

15        The defendants in this action are Laura Christy LLC

16   (doing business as "Valbella"), Laura Christy Midtown LLC,

17   David Ghatanfard, and Genco Luca.  See Dkt. No. 424 (partial

18   judgment).  The plaintiffs in this case are Mr. Pavle Zivkovic

19   and a class of plaintiffs who are similarly situated.  See Id.

20   For the purposes of today's conference, when I refer to

21   "plaintiff" in the singular, I am referring to Mr. Zivkovic.

22   When I refer to "defendants," I am referring to the defendants

23   I just listed except Mr. Luca, who has not joined in the motion

24   currently before me.

25        Defendants filed their order to show cause on

NAKQzivD

September 1, 2023, which the Court issued later that same day.
See Dkt. Nos. 474, 479.  Plaintiff opposed the show-cause order
on September 22, 2023.  Dkt. No. 498.  Defendants filed a reply
letter on October 2, 2023.  Dkt. No. 506.  I have reviewed the
parties' briefing on this motion and other relevant portions of
the record, and I have heard the parties' arguments here today.
I will rule on defendants' motion for a stay of the judgment
enforcement proceedings today.  After a week-long trial,
defendants were found to be liable to hundreds of individuals
who, over a year since trial, have yet to receive a penny of
their award.  Because defendants fail to show that any attempt
by plaintiff to enforce the judgment should be immediately and
indefinitely stayed pending the resolution of the appeal, I am
going to deny defendants' motion.

II.  BACKGROUND

As the parties are familiar with the underlying facts
and procedural history, I will not recite them here in full.
The facts and procedural history that are particularly relevant
to my decision are embedded in my analysis, but I would like to
briefly highlight some of the procedural history of this case
that is particularly relevant to this motion.

Following a jury verdict in favor of plaintiffs on
April 11, 2022 and plaintiffs' subsequent motion for the entry
of partial judgment under Federal Rule of Civil Procedure
54(b), the Court entered partial judgment on July 4, 2023 as to

NAKQzivD

1    plaintiffs' wage-and-hour claims under the New York Labor Law

2    ("NYLL") on behalf of Mr. Zivkovic and a proposed class.    Dkt.

3    No. 283 (jury verdict); Dkt. No. 421 (order granting motion for

4    partial judgment); Dkt. No. 424 (partial judgment).    I will

5    refer to these claims as the "Class Claims."    The partial

6    judgment as to the Class Claims was entered against Defendants

7    Laura Christy LLC, Laura Christy Midtown LLC, and Mr.

8    Ghatanfard, jointly and severally, in the amount of

9    $5,092,017.85.    Dkt. No. 424, at 3.

10            I will briefly also note, as it is relevant to today's

11    discussion, that plaintiffs have been pursuing enforcement

12    proceedings to recover on the partial judgment.    According to

13    defendants, these efforts have included "restraining notices

14    against [Mr. Ghatanfard] and others," discovery from third

15    parties and related litigation, and moving for an attachment

16    against non-party and Mr. Ghatanfard's partner, Rosey

17    Kalayjian.  Dkt. No. 475, at 1-2.  I have already issued a

18    temporary restraining order ("TRO") against Ms. Kalayjian to

19    temporarily attach the assets she purportedly received from Mr.

20    Ghatanfard.  Dkt. No. 438.  In doing so, I found that

21    Plaintiffs had demonstrated both a likelihood of success on

22    pursuing turnover proceedings for those assets and irreparable

23    injury if the TRO was not granted.  Id.

24            Not included in this partial judgment are Mr.

25    Zivkovic's individual claims of discrimination against Mr.

NAKQzivD

Ghatanfard and his claim for punitive damages against defendant
Laura Christy Midtown, LLC.  In my May 10, 2023 decision, I
granted a new trial as to these claims, with the caveat that
Mr. Zivkovic was provided the option to accept remittitur of a
reduced punitive damages award.  Dkt. No. 381.  Mr. Zivkovic
chose to proceed to a new trial on the punitive damages claim.
Dkt. No. 396.  Accordingly, these claims are ripe for a new
trial, assuming that Mr. Zivkovic still wants to pursue them.
I will discuss setting a trial on these claims later in this
hearing.

III.  ANALYSIS

Defendants seek, under Federal Rule of Civil Procedure
62(b), a stay of all proceedings in this action to enforce the
judgment in this matter pending the outcome of their appeal.
Dkt. No. 475.

Federal Rule of Civil Procedure 62(b) provides the
following:  "At any time after judgment is entered, a party may
obtain a stay by providing a bond or other security.  The stay
takes effect when the court approves the bond or other security
and remains in effect for the time specified in the bond or
other security."  "The purpose of the rule is to ensure that
the prevailing party will recover in full, if the decision
should be affirmed, while protecting the other side against the
risk that payment cannot be recouped if the decision should be
reversed."  *In re Nassau Cnty. Strip Search Cases*, 783 F.3d

NAKQzivD

414, 417 (2d Cir. 2015) (per curiam) (internal quotation marks omitted) (quoting *Cleveland Hair Clinic, Inc. v. Puig*, 104 F.3d 123, 125 (7th Cir. 1997)). Accordingly, a district court "may, in its discretion, waive the bond requirement if the appellant provides an acceptable alternative means of securing the judgment." *Id.* (internal quotation marks omitted) (quoting *FDIC v. Ann-High Assocs.*, 1997 WL 1877195, at *1 (2d Cir. Dec. 2, 1997) (per curiam)).

A.   The Nassau County Factors Do Not Weigh in Favor of Waiving the Bond Requirement in Rule 62(b).

To determine whether the supersedeas bond requirement provided for in Rule 62(b) should be waived, I am directed to evaluate the following non-exclusive list of factors: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position. *Nassau Cnty.*, 783 F.3d at 417–18.

Defendants have not offered a bond or any other type of alternative security in support of their request. They

NAKQzivD

argue that the Court should exercise its discretion to waive

any obligation to post a bond or other security based on an

application of the five-factor test adopted in *Nassau County*,

and based on other equitable considerations.  In support of

their request, Defendants have presented evidence that Mr.

Ghatanfard was recently diagnosed with stage-four metastatic

cancer and is undergoing intensive cancer treatments, which are

debilitating and negatively impact Mr. Ghatanfard's ability to

fully participate in this litigation.  Dkt. No. 475, at 2; Dkt.

No. 476 (Spielberg Decl.); Dkt. No. 477 (Ghatanfard Decl.).

Defendants also remind the Court that Mr. Neal Comer, Mr.

Ghatanfard's "personal attorney" in this action, is suffering

from a severe concussion that significantly restricts his

ability to read, write, and otherwise represent Mr. Ghatanfard

in this matter.  Dkt. No. 476 (Spielberg Decl.).  Finally,

defendants note that they are pursuing an appeal of the Court's

partial judgment as to the Class Claims and represent that they

anticipate doing so on an expedited basis.  Dkt. No. 475, at

4-5; see also Dkt. No. 476 (Spielberg Decl.).  During today's

conference, I received an update regarding the status of the

appeal.

          Before I proceed further with my analysis, I just want

to express my sympathy for Mr. Ghatanfard.  I am sorry to hear

about his diagnosis, and I wish him a speedy and successful

recovery.  I have previously expressed my sympathies to Mr.

NAKQzivD

Comer for his serious injury, and I do so again today.

Unfortunately, I do have personal experience in my family with both of those conditions, and so I am very sympathetic. I have adjourned the briefing schedule and related hearing on plaintiffs' motion to hold Mr. Ghatanfard in contempt to accommodate Mr. Comer's injury. Dkt. Nos. 469, 482, 511, 513. As an initial matter, plaintiffs raise as a threshold question whether the Court can grant a stay given that defendants have offered neither a bond nor any alternative security. Their argument is based on the text of the rule, which, as I described earlier, states that "a party may obtain a stay by providing a bond or other security." The text of the rule does not encompass the prospect of the grant of a stay where no alternative security of any type has been offered. I think that is a fair reading of the statute. And, as plaintiffs note in their brief, some district courts have concluded that no stay may be granted when no alternative security has been offered. *See Blue Citi, LLC v. 5Barz Int'l Inc.*, 2019 WL 10890126, at *3 (S.D.N.Y. Feb. 6, 2019) ("'When a party fails to offer an alternative form of security,' however, 'courts do not hesitate to deny motions to stay execution pending appeal.'" (quoting *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 2009 WL 1834505, at *1 (S.D.N.Y. June 19, 2009)); *Hernandez v. Sub Enters. Inc.*, 2023 WL 23905432, at *7 n.7 (E.D.N.Y. Mar. 7, 2023) ("Because Defendants did not raise the

NAKQzivD

possibility of providing a bond or other means of securing the

judgment, the Court need not consider whether to grant a stay

under Rule 62(b)").  Plaintiffs are correct that no alternative

security has been offered here.  That the Court has temporarily

restrained the assets of Mr. Ghatanfard's partner does not

suffice.  First, she is not a defendant.  Moreover, the freeze

of those assets is provisional, and the issue of whether the

assets can be seized must be litigated.  Defendants neither

offer any response to the argument that they have failed to

satisfy this threshold requirement for relief under Rule 62 in

their reply brief; nor do they argue that the temporary

constraint of Ms. Kalayjian's assets constitutes an offer of

alternative security by them.  I understand, as a result, that

they concede this point.

        Still, I note that the Seventh Circuit's opinion upon

which the Second Circuit relied in Nassau County, *Dillon v.*

*Chicago,* 866 F.2d 902 (7th Cir. 1988), concluded following

application of their test that no alternative security needed

to be provided.  So there is at least some out-of-circuit

support for the concept that a court applying the Nassau County

test is permitted to stay a case without requiring a bond or

any alternative security.  I do not need to decide as a matter

of law whether Rule 62 permits the entry of a stay where a

party offers no bond and no alternative security under all

circumstances.  It is clear on the facts of this case that a

NAKQzivD

 1    stay without any bond or alternative security is not

 2    appropriate.

 3         For I find that the Nassau County five factors do not

 4    support waiving the bond requirement of Rule 62(b) for

 5    defendants.  In defendants' own words, "the only Nassau County

 6    factors that support the requested stay of enforcement are the

 7    first two . . ."  Dkt. No. 475, at 3.  Defendants concede that

 8    three out of the five Nassau County factors do not support

 9    waiving the bond requirement and granting a stay.

10         Although they are not contested here, I will touch

11    briefly on these three non-contested factors, which are:  the

12    court's confidence in the availability of funds to pay the

13    judgment; whether the defendant's ability to pay the judgment

14    is so plain that the cost of a bond would be a waste; and

15    whether the defendant is in such a precarious financial

16    situation that a bond would place other creditors of the

17    defendant in an insecure position.

18         But there is substantial reason for me to find that

19    the third and fourth of the five Nassau factors do not weigh in

20    favor of a stay.  The Court has no confidence in the

21    availability of funds to pay the judgment.  I believe that

22    there is a substantial concern about the ability of the

23    defendants to satisfy a judgment.  I note again that in order

24    to grant a temporary restraining order against Ms. Kalayjian, I

25    was required to find that there was a likelihood of success on

NAKQzivD

the merits of plaintiffs' anticipated turnover proceedings.
Dkt. No. 438, at 2 (TRO).  I also understand that Mr.
Ghatanfard has testified that he is essentially insolvent and
does not have the funds to pay the judgment.  Dkt. No. 420-11,
at 6 (Ghatanfard Deposition Tr.).  I understand that another of
the defendant corporate entities has ceased operations.
Therefore, the evidence before me has shown reason to be
seriously concerned that, in plain terms, Mr. Ghatanfard may
have taken steps to transfer substantial assets to another in
order to avoid having to satisfy the judgment against him.  I
am therefore concerned that, if plaintiffs are not permitted to
pursue their enforcement efforts, the assets that might be
otherwise available to satisfy the judgment will be dissipated.
The third factor weighs heavily against granting the requested
stay without a bond.  For the same reasons, defendants do not
so clearly have sufficient wealth such that posting a bond
would be a waste of money.

As for the fifth factor, I do not have any facts
before me on defendants' creditors and their financial
positions, and so that factor is neutral in my analysis.

Now going back to the first two factors, which are the
complexity of the collection process and the amount of time
required to obtain a judgment after it is affirmed on appeal,
these factors do not weigh in favor of a stay.  The collection
process has been very complex.  Plaintiffs have been pursuing

NAKQzivD

enforcement of the judgment for an extended period.  Their
efforts have been substantial -- they have conducted discovery
regarding Mr. Ghatanfard's assets, they have sought the
attachment of his assets, and now assets that they assert to
have been transferred to Mr. Ghatanfard's partner.  They have
filed a separate action against a new restaurant that they
assert to be a successor-in-interest to one of the judgment
debtors.  So the efforts to enforce the judgment have been and
will continue to be, I fear, complex.  Defendants argue that
the collection process will neither be significantly delayed
nor further complicated by granting the requested stay.  Dkt.
No. 475 at 3.  But this is belied by plaintiffs' extensive
efforts to collect on the judgment to date.  Also, while
defendants assert that a stay will maintain the status quo, the
stay requested would only restrain plaintiff's ability to
pursue enforcement of the judgment -- would not stop Defendants
from doing anything to spend, or, as plaintiffs assert, secret
their assets.  As a result, a stay will not maintain the status
quo, but may permit the dissipation of assets that could be
used to satisfy the judgment.  The enforcement process would be
lengthy.  Unfortunately, Mr. Ghatanfard's and Mr. Comer's
serious health concerns, which I do not take lightly, will only
further complicate and lengthen the collection process.
Therefore, my evaluation of the non-exclusive factors
identified in Nassau County do not lead me to conclude that the

NAKQzivD

bond requirement of Rule 62(b) should be waived.

        B.  Other Factors Also Do Not Weigh in Favor of
Waiving the Bond Requirement.

        The Nassau County five factors are non-exclusive
factors, and the Court has the discretion to consider other
factors.  See 783 F.3d at 417 (adopting the five-factor
analysis as "non-exclusive factors").  Defendants particularly
emphasize this and point to certain equitable considerations
that they ask me to consider, including the health of Mr.
Ghatanfard and Mr. Comer, as mentioned, as well as the
likelihood of success on their appeal of the partial judgment
and irreparable harm.  See Dkt. No. 475, at 3; Dkt. No. 506, at
1.

        Because a Rule 62(b) stay is a stay of a monetary
award, the traditional equitable factors for stays of
injunctive relief, including the likelihood of success on
appeal or irreparable harm, are not applicable here.  See,
e.g., *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F.
Supp. 3d 606, 649 (S.D.N.Y. 2018) ("This Court agrees . . . the
traditional four factors 'apply only when the judgment sought
to be stayed is for injunctive or equitable relief.'"
(alteration in original) (quoting *Moore v. Navillus Tile, Inc.*,
2017 WL 4326537, at *4 (S.D.N.Y. Sept. 28, 2017)).  Indeed, the
Second Circuit in Nassau County explicitly stated that its
five-factor analysis stands "in contrast to the traditional

NAKQzivD

stay factors."  783 F.3d at 418; *see also Moore v. Navillus Tile, Inc.*, 2017 WL 4326537, at *3-4 (S.D.N.Y. Sept. 28, 2017) (noting most cases in this District applying a four-factor equitable test predate Nassau County and distinguishing itself from the post-Nassau County cases).

        But I accept for purposes of this application that the equitable factors are among the type of other non-exclusive factors that the Court can consider in the wake of Nassau County:  They do not weigh in favor of granting the requested stay here.

        Defendants argue that the "driving factor" in support of granting the requested stay is their likelihood of success on appeal, asserting that "the partial judgment is almost certainly invalid . . ."  Dkt. No. 506, at 1.  They incorporated by reference a copy of their appellate brief to their motion, requiring that I read it.  And they have asked me to give its likelihood of success substantial weight in evaluating this motion.  I am disinclined to handicap what the Second Circuit is likely to do with the appeal, even though I understand defendants' request to be that I do just that.  I am not going to provide an overview of my response to the briefing on it.  I note as an aside that the first plank of the appeal relates to an issue that was not presented to the Court; namely, whether I should have analyzed whether or not to decline supplemental jurisdiction after we decided to try only

NAKQzivD

1   the New York Labor Law claims.  It is unclear to me that the

2   argument has much substance, given that the FLSA claims were

3   not dismissed from the case -- streamlining the issues

4   presented to the jury for trial is substantially different,

5   arguably, from dismissing the claims.  Whether or not the

6   Second Circuit will accept as a matter of fact that the claims

7   were "withdrawn" on this record is up to them; so too is the

8   question of whether or not "withdrawal" of claims is the same

9   as dismissing them is also something that they will determine.

10  I do not recall dismissing the FLSA claims before trial, so it

11  may prove that defendants' first argument rests on a factual

12  misrepresentation of the record.

13          With respect to the second plank of the argument on

14  appeal, I will only say that I believe that the interpretation

15  of the statute is a useful argument to take up on appeal --

16  that is part of the reason why I allowed the entry of partial

17  judgment so that the issue could be considered by the court of

18  appeals -- their view will provide clarity regarding the law.

19  I will observe just two things about that part of the appeal,

20  however.  First, I do not think that district courts can avoid

21  deciding tricky issues of state law.  That is part of my job, I

22  think, even though defendants appear to believe that by

23  deciding an issue of state law I overstepped my role.  I make

24  this observation in furtherance of my second comment, which is

25  that the Second Circuit has a mechanism available to it that I

NAKQzivD

1    do not -- it can certify questions to the New York State Court

2    of Appeals.  If the Circuit concludes that this is an important

3    issue of state law, they may decide to certify the question to

4    the Court of Appeals.  If they do so, the resolution of the

5    appeal may take more time.  In any event, while I do not

6    handicap what the Second Circuit will do with respect to the

7    appeal, I do not believe that the arguments presented by

8    plaintiffs regarding the strength of their argument on appeal

9    justifies the imposition of a stay in the absence of a bond or

10   alternative security.  Again, plaintiffs assert that certain

11   defendants have dissipated and hidden assets.  Some security is

12   important in these circumstances to stay enforcement

13   proceedings.  Defendants have offered none.  In any case, the

14   enforcement proceedings that defendants seek to stay are

15   essentially efforts by plaintiff to make sure that defendants'

16   assets remain available in the case that plaintiffs collect on

17   the partial judgment.  Defendants do not present any persuasive

18   argument as to why this process must be stayed.

19          Defendants also argue that they are "likely suffer

20   irreparable harm" because, in their words, it would be

21   difficult to get back the damages award from the Class

22   plaintiffs if the judgment is enforced and defendants prevail

23   on appeal.  Dkt. No. 475, at 4.  I recognize that is one of the

24   concerns behind Rule 62(b). See *Nassau Cnty.*, 783 F.3d at 417.

25   But again, the enforcement proceedings at issue are focused on

NAKQzivD

ensuring that the funds remain available for plaintiff to
collect -- therefore, this argument is premature, speculative,
and therefore ultimately unpersuasive.  I will briefly note
that, at least in the preliminary injunction context,
"irreparable harm" must be "certain and imminent."  See, e.g.,
*Stewart v. Metro. Transp. Auth.*, 566 F. Supp. 3d 197, 214
(E.D.N.Y. 2019); see also *U.S. S.E.C. v. Daspin*, 557 F. App'x
46, 48 (2d Cir. 2014) (denying stay of appeal for failure to
show equitable factors).  Even if defendants are correct on the
difficulty of re-collecting the judgment award back from
plaintiffs after disbursement, such injury is neither certain
nor imminent for the reasons I have already described:
Plaintiffs have not yet been successful in recovering any
assets.  I may be willing to consider this issue again when the
issue is more imminent.

As for any other factors before me in making this
ruling, I again stress that defendants offer no alternative to
a Rule 62(b) bond or other assurance that plaintiffs can
recover on the judgment if they, in fact, prevail on appeal.
See, e.g., *EMA Fin. LLC v. Joey N.Y. Inc.*, 2022 WL 2399754, at
*3 ("The fact that [defendants] do not offer any assurances
that they could secure the judgment if plaintiff prevails on
appeal counsels against waiving the bond requirement.").
Reconsideration denied, 2022 WL 4611949 (Sept. 30, 2022).
Defendants argue that Plaintiffs "already have the additional

NAKQzivD

1    financial protection provided by the temporary restraining

2    order that the Court has already issued against Kalayjian."

3    Dkt. No. 475, at 3.  A temporary restraining order is just

4    that -- temporary.  Defendants assume that the TRO will remain

5    in place during the duration of their requested stay.  But that

6    is not necessarily a foregone conclusion, especially given that

7    defendants do not purport to speak on behalf of Ms. Kalayjian,

8    who is actively contesting the motion for attachment against

9    her.  Nor is the TRO itself, even if it remains in place, a

10   sufficient alternative to a bond, as would be required under

11   Rule 62(b).

12           As for Mr. Ghatanfard's health, again I express my

13   serious sympathies.  But the factor does not weigh heavily

14   enough in favor of a stay.  Indeed, his precarious health

15   arguably weighs in favor of efficiently resolving all issues as

16   to his and other defendants' ability to satisfy the judgment.

17   Defendants arguably recognize as much by representing that,

18   "because of Ghatanfard's medical condition, movants intend to

19   seek an expedited appeal in the Second Circuit."  Dkt. No. 475,

20   at 4.  While I am very sympathetic to his health concerns, it

21   may be the case that they make it all the more important for

22   plaintiffs to be able to collect information from him now about

23   the location of his assets in order to secure any judgment.

24   Mr. Comer's health also does not warrant a stay.  I'm happy

25   that Mr. Comer has joined us today.  I hope that this is a

NAKQzivD

1    signal that he is better.  Again, I will continue to take into

2    account Mr. Comer's and Mr. Ghatanfard's health as we schedule

3    proceedings directed at him specifically.

4           Accordingly, I find that defendants have not shown

5    that waiving the bond requirement of Rule 62 is warranted here.

6    And, because defendants do not offer a bond, defendants' motion

7    for an emergency stay is denied.

8           IV.   CONCLUSION

9    For these reasons, defendants' motion for an emergency stay of

10   the enforcement proceedings is denied.

11          Now before we conclude, let me just come back as a

12   coda to something that I said at the outset, which is that I am

13   acting on the request to stay all enforcement proceedings in

14   this case pursuant to Rule 62 that would extend to the

15   enforcement action as to the assets of Ms. Kalayjian which I

16   should note that we are having a conversation about next week.

17          But I again am happy to and I will take into account

18   the health concerns regarding Mr. Ghatanfard as we discuss how

19   to structure and proceed with the contempt proceedings against

20   him.  So I am ruling on the request to stay all enforcement

21   proceedings.  I am not saying that I will do anything but think

22   thoughtfully about the impact of Mr. Ghatanfard's health

23   conditions on his ability to participate in court proceedings

24   as any enforcement actions move forward before me.

25          So I want to turn to talking about the other issue,

NAKQzivD

1    which is the trial question.  Again, this is one where

2    Mr. Ghatanfard's health condition is a real concern.  Counsel

3    for plaintiff, I understand that Mr. Zivkovic thinks that it is

4    important to pursue a trial against Mr. Ghatanfard on these

5    remaining claims notwithstanding the amount of work involved

6    and the issues that you already confronted in attaining money

7    from him for the claims as to which you have a present

8    judgment.  I really do continue to encourage you and

9    Mr. Zivkovic to think over this question that is whether or not

10    this is something that you want to spend your time on.  But at

11    this point I understand that that is indeed your goal, and that

12    I am going to need to schedule another trial of the case.  I

13    have looked at my calendar for potential trial dates.  I will

14    try to set a date for the trial assuming, counsel, that you,

15    again, want to try this and bring Mr. Zivkovic back to the

16    states to do it.

17         So let's talk about how we are going to progress on

18    that front.  We've got the lawyers who need to be involved in

19    scheduling matters on the phone.  You may wish to confer

20    amongst yourselves about potential trial dates.  My inclination

21    would be to direct the parties to submit a letter to the Court

22    with proposed trial dates.  I think most likely we will be

23    looking at dates in the summer, the earliest may be sometime in

24    April.

25         What I would like to do is hear from the parties about

NAKQzivD

```
1    when you would like to schedule the trial, and I would like to

2    hear from you about how you would like for me to ask you to

3    working together to (A) discuss seriously whether or not that

4    this is worth it; and (B) assuming that it is, set a trial date

5    and deadlines for submissions of all of the appropriate

6    pretrial submissions for our new trial.

7        So I am going to ask each party how you would like to

8    proceed.  Again, my inclination is to ask you to meet and

9    confer about a topic and send me a letter.  I propose the

10   letter be sent to me by a week from today.  That is a proposal.

11   I'm happy to hear other alternative proposals, or other ideas

12   from all of you.  I just set that out as a possible

13   alternative.

14       Let me start with counsel for plaintiff.  Counsel, how

15   would you propose to proceed?  Is that an acceptable approach?

16   If not, what alternative would you like to suggest?

17       MR. BUZZARD:  Good afternoon, your Honor.  Lucas

18   Buzzard for plaintiff.

19       I think the Court's proposal makes sense.  I think

20   that will give us a chance to go back to Mr. Zivkovic and

21   discuss his options, particularly in light of the change in

22   circumstances to Mr. Ghatanfard's health.  (Inaudible) of that

23   issue, and I'm happy to work with defendants on coming into the

24   States in the event that he cannot otherwise resolve it.

25       THE COURT:  Good.  Thank you.  I appreciate your
```

NAKQzivD

 1    willingness to revisit these questions in light of the change

 2    in circumstances.

 3              So let me hear from counsel for Midtown.  Is that an

 4    acceptable approach for you or do you have any alternatives

 5    that you would like to suggest?

 6              MR. SPEILBERG:  Thanks, Judge.  Leonard Spielberg.

 7              Judge, I've just got nothing to offer.  Yeah.

 8              what I can say is that before we could have a trial in

 9    those remaining claims, I believe that there is a need for some

10    motion practice in light of the *Blumberg* case that escaped our

11    consideration prior to the trial.  I think --

12              THE COURT:  Let me pause you on that, counsel.  I

13    appreciate that.  Please think about that.  I think it is fair

14    to say that in this case there are collective considerations.

15    I would ask you to consider that question.  My hope is that the

16    parties will consider that question.  In other words, I'm sure

17    that plaintiff will consider whether in light of the Court of

18    Appeals' decision in that case, they have substantial

19    likelihood of success on the merits of the claims that will be

20    retried.  I expect that that will be part of the conversation

21    that they will be having with their client about how they wish

22    to proceed.  I expect that that issue will be percolated

23    between the parties as you talk about whether and if, and if so

24    how, you want to schedule a trial date.  I appreciate that.

25    That is a reasonable comment.  It is a consideration that I

NAKQzivD

1    would expect to be taken into account as the parties are

2    choosing how to proceed.

3          If we are in the position of having to schedule a

4    trial, and if the application is for leave to file a motion for

5    summary judgment or some such in order to determine whether or

6    not plaintiff's evidence would suffice, I am happy to do that,

7    and you can ventilate that in your letter.

8          Anything else, counsel for Midtown?

9          MR. SPEILBERG:  This is Leonard Spielberg again.

10          Also, your Honor, I think that it would make sense for

11   us to schedule or discuss a schedule that would begin upon the

12   decision on the appeal.

13          THE COURT:  Thank you.  I'm happy for the parties to

14   discuss that as one of the options.  I will leave it to you to

15   let me know what proposals the parties would like to present.

16   And I won't comment further about what considerations may play

17   into your strategic thinking on these issues.  I appreciate

18   that that is among the options the parties may wish to present

19   to the Court.

20          Counsel for Meat Packing, anything you would like to

21   say?

22          MS. BIANCO:  Maria Bianco.  Nothing, your Honor.

23          THE COURT:  Counsel for Mr. Ghatanfard.

24          MR. COMER:  Neal Comer, your Honor.

25          Judge, my concern really is Mr. Ghatanfard's

NAKQzivD

1  condition, whether he would be able to participate in getting

2  ready for trial much less a trial itself.  I know that he had

3  expressed a desire to be here in my office today to listen in

4  on this conference, but he had a chemo treatment today rather

5  intensely, and what I am told is that he was too ill to get

6  here.  So I'm nervous about the idea of fixing a trial date not

7  knowing what his ability would be to prepare for it, much less

8  participate in it.  So with that, your Honor, I don't know what

9  else to say.

10        THE COURT:  Thank you.  I appreciate that.  I am sure

11  those are all issues that the parties will talk about and that

12  will, among other things, inform plaintiff's decision about

13  whether these are claims that need be pursued.

14        MR. SPEILBERG:  Judge, I'm sorry to interrupt.

15  Leonard Spielberg, Judge I.  Believe your suggestion defendants

16  providing a joint letter by a week from today, I think that's a

17  zealous thing.

18        THE COURT:  I'm sorry?

19        MR. SPEILBERG:  I think that a week from today is

20  unrealistic for a joint response from defendants.  I think at a

21  minimum it should be two weeks from today.

22        THE COURT:  Thank you.  That's fine.  The request is

23  that the parties send me proposal regarding scheduling, but I

24  think that two weeks as opposed to one is fine.  So I look

25  forward to seeing that from the parties no later than

NAKQzivD

1    November 3.

2              Very good.  Thank you can all very much for your time.

3    This proceeding is adjourned.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25