JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

Charles Joseph
D. Maimon Kirschenbaum
Denise Schulman
Josef Nussbaum
Lucas C. Buzzard
Michael DiGiulio
Leah M. Seliger

45 Broadway, Suite 302
New York, NY 10006
Phone (212) 688-5640
Fax (212) 688-2548
www.jk-llp.com

October 20, 2026

**VIA ECF**

Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

***Re: Zivkovic v. Laura Christy LLC, et al.,***
**No.: 17-cv-553 (GHW)**

Dear Judge Woods,

We represent Plaintiffs and the Fed. R. Civ. P. Rule 23 Subclasses ("Plaintiffs") in the above referenced action. We write to inform the Court of Plaintiffs' proposed process for distributing the proceeds of the parties' settlement that was approved by the United States Bankruptcy Court for the Southern District of New York. By this letter, we respectfully request that the Court approve Plaintiffs' proposed: (1) allocation of the settlement funds to class members and class counsel; (2) retention of a claims administrator to facilitate distribution; (3) notice and distribution periods; and (4) mechanism for redistributing any unclaimed funds.

## I. Background

In July 2023, following a jury verdict in Plaintiffs' favor, this Court entered a partial judgment in favor of the Subclasses and against Defendants in the amount of $5,092,017.85, inclusive of attorneys' fees and costs (the "Partial Judgment"). *See* ECF Dkt No. 424. Following lengthy collections efforts, Defendants David Ghatanfard and Valbella Midtown filed for bankruptcy. As a result of this Court's outstanding Partial Judgment, both the Subclasses and Class Counsel (the "Judgment Creditors") were identified as creditors in those bankruptcies. In May 2026, the parties reached a settlement in the bankruptcy proceedings under which Defendants agreed to pay a gross amount of $3,500,000 to resolve all matters. A copy of the parties' settlement agreement is attached hereto as Exhibit A. On August 13, 2026, the Bankruptcy Court approved the parties' settlement agreement. *See* SDNY Bankr. ECF Dkt No. 23-22840, Doc. No. 215 Currently, the parties are awaiting final distribution from the bankruptcy estates, which is pending applications by the bankruptcy trustees for compensation from those estates for the trustees and their associated professionals. *See, e.g.*, *id.* Doc. No. 217. Following deductions for such compensation and to satisfy the claims of several other creditors, the remaining net settlement

amount will be distributed to the Judgment Creditors to resolve their claims resulting from this Court's July 2023 Partial Judgment.

As relevant here, the settlement agreement provides that, upon Bankruptcy Court approval of the settlement, Plaintiffs shall apply to this Court "to appoint a third-party claims administrator and disburse the funds via that claims administrator." Ex. A ¶ 16. It further provides that Plaintiffs would propose to this Court their (a) method of calculation of individual awards for Class members, (b) claim distribution mechanism, and (c) proposal for the treatment of any surplus funds. *Id.* Accordingly, pursuant to the approved settlement agreement, Plaintiffs now submit their proposals as to the above topics.

## II. Plaintiffs' Proposed Method for Calculating Individual Awards

As outlined in earlier communications with the Court, although the Court entered the Partial Judgment in favor of the Subclasses in general, the specific amounts that each Subclass Member is entitled to from that Partial Judgment were never determined. Accordingly, our office prepared calculations as to the *pro rata* amounts that Judgment Creditors are entitled to from the Partial Judgment, which we intend to use to apply to distributions that are made from the bankruptcy settlement. Attached hereto as Exhibit B is a declaration from Josef Nussbaum with exhibits, which details how the Partial Judgment should be broken down for each Judgment Creditor and thereby what each Judgment Creditor's proportional share of the Partial Judgment is.[1] Plaintiffs respectfully request that the Court adopt the calculations in that declaration and order that all sums recovered from the bankruptcy settlement be disbursed to Judgment Creditors in accordance with the *pro rata* calculations set forth in the declaration.

## III. Plaintiffs Request that the Court Appoint Rust Consulting Inc. as Claims Administrator and Authorize $15,000 from the Settlement Process to Cover Claims Administration Costs

Plaintiffs have obtained three quotes from potential claims administration companies for the distribution of the settlement proceeds. *See* Ex. C (Quotes). The quotes were all fairly similar – roughly $10,000 - $11,700 each before discounts. *See id.* The quotes each cover: (1) skip tracing services to attempt to ascertain Subclass members' current addresses; (2) an initial distribution of checks; (3) a second distribution of any unclaimed funds; and (4) preparation and distribution of tax forms for the Judgment Creditors. Plaintiffs respectfully request that the Court appoint Rust Consulting as the claims administrator for this matter because Class Counsel has had prior positive experiences with that company.

In connection with appointing Rust Consulting as claims administrator, Plaintiffs respectfully request that the Court approve the use of up to $15,000 of the settlement funds for claims administration costs. This amount will cover the initial quote, as well as any unforeseen supplemental charges that may be required to facilitate the complete distribution of all settlement funds.

[1] Exhibits 2 and 3 to the Nussbaum Declaration are large spreadsheets that may be viewed by zooming in on the documents. If the Court would prefer that Plaintiffs submit native Excel versions of these spreadsheets, we will do so immediately upon request.

### IV. Plaintiffs' Proposed Distribution Method & Schedule

With respect to the mechanics of the distribution, Plaintiffs propose that settlement checks be mailed to the individual Judgment Creditors within 15 days after the claims administrator receives the total settlement fund from the bankruptcy trustees. Plaintiffs further propose that settlement checks be valid for 90 days following that initial mailing, and that Judgment Creditors members be able to request new settlement checks up to 180 days from the initial distribution. Finally, as discussed below, Plaintiffs propose that any funds still remaining on the later of 181 days after the initial mailing or 90 days after the last reissued settlement check be distributed on a pro rata basis to those Judgment Creditors who have cashed checks.

This method of distribution is effective and fair. Checks will be mailed to all individual Judgment Creditors without requiring them to submit claim forms and they may request reissued checks up to 180 days after the initial mailing. This leaves ample time for any members of the Subclasses who do not receive their checks (due to, for example, a change in address or USPS issue) to claim their checks. Mailing checks to all individual members of the Subclasses is self-evidently a highly effective method of distributing relief. Finally, as discussed below, redistributing any remaining unclaimed funds to those Judgment Creditors who have cashed their checks is the most equitable solution under the circumstances here.

### V. Any Unclaimed Funds Should be Redistributed to Participating Judgment Creditors

Finally, Plaintiffs request that, after the initial checks have been distributed to Judgment Creditors and the period for cashing those checks has passed, any funds remaining resulting from uncashed checks be redistributed on a pro rata basis to those Judgment Creditors who have cashed checks (the "Participating Judgment Creditors"), not exceeding those Participating Judgment Creditors' individual judgment amounts.

This Court has discretion concerning the allocation of funds derived from class settlements. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 435 (2d Cir. 2007). "Most class actions result in some unclaimed funds," thus requiring the court to "formulate a procedure for distributing unclaimed funds." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). If a settlement "involves individual distributions to class members" and "funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members" unless "specific reasons exist that would make such further distributions impossible or unfair." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173 (3d Cir. 2013) (quoting American Law Institute, Principles of the Law of Aggregate Litig. § 3.07(b) (2010)).

Given the passage of time (the statute of limitations in this case stretches back to 2011, it was filed in 2017, and the jury verdict came in 2022), as well as the transient nature of the food service industry, Plaintiffs anticipate that there will be unclaimed funds resulting from individuals who cannot be located and/or do not cash their checks within the applicable time period. While the Second Circuit has rejected proposals to redistribute unclaimed funds on a pro rata basis to

beneficiaries who "already recovered their losses in full," *In re Agent Orange Product Liability Litigation*, 818 F.2d 179, 185 (2d Cir. 1987) (citing *Van Gemert v. Boeing Co.*, 553 F.2d 812, 815 (2d Cir. 1977), it has urged district courts to consider such redistribution to participating beneficiaries where damages remain available, *see Masters*, 473 F.3d at 434-36 (instructing the district court to consider whether excess funds should be redistributed to class members as a treble damages award under the Clayton Act, even where those class members had been "fully compensated for their actual losses").

In this case, because the total amount to be distributed to all Judgment Creditors resulting from the Settlement Agreement ($3.5 million before trustees' fees, professional fees and distributions to other creditors) is significantly less than the Court's judgment resulting from the jury's verdict and the Court's award of fees and costs ($5,092,017.85), the initial amount distributed to each Judgment Creditor will necessarily be much less than each Judgment Creditor's individual judgment amount. Accordingly, Plaintiffs propose that any and all unclaimed funds be redistributed on a pro rata basis to those Participating Judgment Creditors who do cash their initial checks, but not in amounts exceeding those which each Judgment Creditor would have received from the Court's original judgment. This proposal will ensure that Participating Judgment Creditors (a) receive the maximum possible benefit from the settlement, *see In re Baby Prods. Antitrust Litig.*, 708 F.3d at 173 (noting that "direct distributions to the class are preferred" over other distribution methods) but (b) do not receive a "windfall" by obtaining more from the settlement than they would otherwise be entitled from the Court's original judgment.[2]

We thank the Court for its attention to this matter. We are available for a conference at the Court's convenience if the Court would like to discuss any of the above.

Respectfully,

_/s/Lucas C. Buzzard__________
Lucas C. Buzzard

[2] In the highly unlikely event that unclaimed funds remain after this redistribution process (which would occur only if all Participating Judgment Creditors are paid their full individual judgment amount), Plaintiffs will return to this Court with a proposal for the allocation of such remaining funds.